**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HELFERICH PATENT LICENSING, LLC, | ) | |
| an Illinois Limited Liability Company, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:11-cv-9143 |
| | ) | |
| | ) | |
| J.C. PENNEY COMPANY, INC., | ) | |
| a Delaware Corporation, | ) | |
| Defendant. | ) | (Jury Trial Demanded) |

Plaintiff Helferich Patent Licensing, LLC ("HPL"), by and through its undersigned counsel, complains against Defendant J.C. Penney Company, Inc. ("J.C. Penney") as follows:

## NATURE OF THE ACTION

1.    This is an action for patent infringement arising under the United States Patent Act, 35 U.S.C. §§ 101-376, including 35 U.S.C. § 271. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) in that this is a civil action arising out of the patent laws of the United States of America.

## JURISDICTION AND VENUE

2.    This Court has personal jurisdiction over Defendant because Defendant conducts substantial and continuous business in the State of Illinois and in this District, including operating a store in the North Riverside Park Mall of Riverside, Illinois, and

1

purposefully directing its infringing activities to residents of this State and District by causing infringing messages to be sent to residents of this State and District, as described more fully in the paragraphs hereafter.

3.     Venue is appropriate pursuant to 28 U.S.C. §§ 1391(c) and 1400(b) because, among other reasons, Defendant is subject to personal jurisdiction in this District, and has caused infringing messages to be sent to residents of this State and District.

## PLAINTIFF

4.     HPL is an Illinois limited liability company with a principal place of business at 70 W. Madison St., Three First National Plaza, Suite 1400, Chicago, IL 60602.  HPL is the exclusive licensee of twenty-five (25) U.S. patents, eleven (11) pending U.S. applications, and over a dozen related foreign patents and patent applications relating to mobile wireless communication devices and the provision of media and content to such devices (collectively the "HPL Portfolio").  The HPL Portfolio includes the patents and applications listed in Exhibit A.

5.     On November 16, 2010, the United States Patent and Trademark Office ("Patent Office") issued Patent No. 7,835,757 entitled "System and Method for Delivering Information to a Transmitting and Receiving Device" (the "'757 patent"). HPL is the exclusive licensee of all right, title, and interest in the '757 patent.

6.     On March 3, 2009, the Patent Office issued Patent No. 7,499,716 entitled "System and Method for Delivering Information to a Transmitting and Receiving Device" (the "'716 patent"). HPL is the exclusive licensee of all right, title, and interest in the '716 patent.

7.     On October 9, 2007, the Patent Office issued Patent No. 7,280,838 entitled "Paging Transceivers and Methods for Selectively Retrieving Messages" (the "'838 patent"). HPL is the exclusive licensee of all right, title, and interest in the '838 patent.

8.     The '757, '716, and '838 patents variously and in general relate to systems and methods used by content providers to create, store, and cause delivery of electronic messages and related content to mobile phones. The content provider stores its content (such as news, coupons, specials, media, etc.) on an internet accessible website and creates a short description of the content (of the type intended for placement into an SMS or MMS message). The content provider also selects and inserts a unique identifier of the content, such as a URL "link" in the message. The content provider uses an interface with a notification system (such as various social media sites or messaging services) to disseminate its messages to its customers', followers' and fans' mobile phones via SMS or MMS. Thereafter, the content provider receives a request for the content identified by the link and delivers the requested content to the user's mobile phone. The patents also variously relate to providing or using: (1) shortened URLs received from a link shortening service; (2) URLs that identify dynamic content such as changing product

3

prices, promotions, events, reviews, or comments; (3) information to inform the recipient of the identifier of the time that the content is available such "24 hour sale"; (4) a request for a delivery confirmation of an MMS message; and/or (5) MMS messages from which users can request—and content providers receive—commands regarding the content such as to delete, reply to, or forward the content.

9.    On July 14, 2010, HPL filed suit against the New York Times Company asserting infringement of the '757, '716, and '838 patents asserted herein. Approximately six months later (in late February 2011), the New York Times Company filed three *ex parte* reexaminations in the Patent Office, one for each of the '757, '716, and '838 patents.   Shortly thereafter, and after consideration of all of the art and arguments presented in the *ex parte* reexaminations as well as three later-filed *inter partes* reexamination requests (discussed below), the Patent Office ***confirmed as patentable*** a total of 203 claims as a result of the *ex parte* reexaminations of the '716 and '757 patents.

(a) With respect to the '716 patent, on December 13, 2011, the Patent Office issued a "Reexamination Certificate" ***concluding the reexamination*** and ***confirming as patentable*** 16 original claims, including claims 2, 16, 19, 20, 22, 23, 31, 34, 35, 38, 39, 43, 48, 49, 52, and 58; 53 claims with minor clarifying amendments, including claims 1, 3-15, 17, 18, 21, 24-30, 32, 33, 36, 37, 40-42, 44-47, 50, 51, 53-57, and 59-69; and  65 new claims, including claims 70-134.

(b)  With respect to the '757 patent, on December 9, 2011, the Patent Office issued a "Notice of Intent to Issue Reexamination Certificate" and ***confirmed as patentable*** 6 original claims, including claims 1, 6, 11, 18, 19, and 20; 14 claims with minor clarifying amendments (as agreed by the Examiner), including claims 2-5, 7-10, and 12-17; and 49 new claims, including claims 21-69.

(c)  With respect to the '838 patent, the Patent Office has issued a Non-Final Office Action to which HPL recently responded.  HPL likewise expects additional claims to be confirmed in the '838 reexamination.

10.  On September 6, 2011, ***after*** the Patent Office confirmed as patentable numerous infringed claims of HPL's patents and applications over the New York Times Company's *ex parte* reexamination requests, the New York Times Company joined with several other companies and filed a second round of reexamination requests—this time the New York Times Company along with several other companies filed *inter partes* reexamination requests for each of the '757, '716, and '838 patents.

(a)  On October 28, 2011, the Patent Office issued a non-appealable order denying the request for *inter partes* reexamination of the '838 patent in its entirety, stating repeatedly that "None of the above cited art [referring to the references newly asserted in the *inter partes* requests] provides any new technological teachings that were not present in the art cited in the previous reexamination."

(b)  On November 4, 2011, the Patent Office issued non-appealable orders fully denying the requests for *inter partes* reexaminations of the '757 and '716 patents for similar reasons.

(c) Prior to the Patent Office issuing a "Reexamination Certificate" for each of the '716 and '757 patents, HPL filed IDSs in the above referenced *ex parte* reexaminations citing the art and arguments presented in the *inter partes* reexamination requests.  Consequently, in confirming the claims in the *ex parte* reexamination requests, the Patent Office also considered the art and arguments presented in the *inter partes* reexamination requests.

Thus, in less than nine months, the Patent Office disposed of 5 of 6 reexamination requests (including denying outright all three *inter partes* reexaminations) filed by the New York Times Company and its defense group against HPL's patents.

11.    Additionally, during the same period, the Patent Office allowed and re-allowed three related pending patent applications (Application Nos. 11/598,202; 12/167,971; and 12/367,358) after express consideration of the New York Times Company's *ex parte* and *inter partes* reexamination requests, art, and arguments.  These allowed applications include at least 51 additional claims that HPL believes are infringed by content providers, such as the Defendant.

12.    To date, ninety-two (92) of the world's most sophisticated companies have acquired licenses to the HPL Portfolio.  Licensees include: ABInBev (Anheuser Busch),

Adidas/Reebok, ADT Securities, Advanced Publications (Condé Nast), Ally Bank, Amazon, American Eagle Outfitters, American Greetings, Apple, Carnival Cruise Lines, Coinstar, Dairy Queen, Dell, DIRECTV, Disney, eBay, Epitaph Records, Genesco, Glu Mobile, GSI Commerce (owned by eBay), Hair Cuttery,  Hewlett-Packard (and Palm), H&R Block, KGB, Macy's, McDonald's, MGM Resorts International, Microsoft, Motorola Mobility, the National Football League, the National Hockey League, Newegg.com, PGA Tour, Qdoba Restaurants, Redbox, Research in Motion, Sears Holding Corporation, Shoptext, Starbucks, Steve Madden, Taco Bell,  Walgreens, Zuffa/UFC and numerous other companies including those whose identities HPL has agreed to keep confidential.

## **DEFENDANT**

13.   Defendant J.C. Penney Corporation, Inc. is a Delaware corporation with its principal place of business in Plano, Texas.  J.C. Penney sells apparel, home furnishings, and other retail items at over 1,100 department stores throughout the United States and Puerto Rico, including in Illinois and in this District.  In addition, J.C. Penney sells its goods through jcp.com, one of the largest apparel and home furnishing sites on the Internet, to customers in the United States including customers in Chicago, Illinois. Moreover, J.C. Penney purposefully directs its infringing activities (described below) to residents of this State and District by causing infringing messages to be sent to residents of the State of Illinois and this District.

7

14.     Within the last six (6) years, J.C. Penney has created, initiated, and caused numerous infringing messages and identified content to be sent to its customers' mobile phones via SMS or MMS messaging, including through various short-code and social media-based marketing efforts.  For example, Defendant operates several social media sites, pages, and feeds (such as those maintained with Twitter, Facebook, and Google+) that are branded by J.C. Penney and promoted by J.C. Penney on its various websites, such as www.jcp.com and www.jcpenney.com.   A few of J.C. Penney's social media sites, pages, and feeds include: @jcpenney, @JCPenneyOptical, @jcpPRIDE, and @jcpportraits (as maintained with Twitter), and facebook.com/jcpenney (as maintained with Facebook).  J.C. Penney drafts messages with links and submits them to these sites, pages, and feeds for dissemination to its customers, followers, and fans.  J.C. Penney intentionally uses its various social media sites, pages, and feeds to create, post, and store messages and/or content intended for delivery to J.C. Penney customers, followers, and fans, with the ultimate goal of driving customers to purchase J.C. Penney merchandise. J.C. Penney also operates several short-code services, such as the "JCP Rewards" mobile service that it uses to similarly create, post, and store messages and/or content intended for delivery via SMS and/or MMS to J.C. Penney customers, followers, and fans, with the ultimate goal of driving customers to purchase J.C. Penney merchandise.

15.     By its own choice, J.C. Penney specifically ensures that the aforementioned messages include specific identifiers as described and covered by HPL's claims (such as

a URL or shortened link).  Additionally, in many cases, the identified J.C. Penney content is changed between the time of the message and the time the content is requested, and/or is available for a limited time as indicated in the text of J.C. Penney's messages.  As a result of the above, it is J.C. Penney—and not the social media websites or short code services—that performs each and every element of the asserted claims.  Moreover, it is J.C. Penney that obtains the benefit from the infringing messages by increasing its sales, brand awareness, and good will with resulting financial gain to J.C. Penney.

16.    On or about March 8, 2010, HPL gave written notice to Defendant of its infringement of the '716, and '838 patents.  The notice letter provided Defendant with a description of the patent claims as well as infringement charts demonstrating infringement of the claims.  Thereafter, on or about January 12, 2011, HPL advised Defendant of its infringement of the '757 patent (which issued after HPL's initial notice letter).

17.    For the past twenty-one months, J.C. Penney has continued to infringe HPL's patents while repeatedly refusing to accept a license on HPL's highly favorable settlement licensing terms.  J.C. Penney refused a license even in the face of the Patent Office both confirming existing claims and allowing new claims over express consideration of the art and arguments proffered by the New York Times Company and others now cooperating with the New York Times Company.  More specifically:

(a)     <u>J.C. Penney Refused a License and Continued to Infringe the Patents</u> <u>After the New York Times Filed its Ex Parte Reexaminations</u>:  As discussed above, in late February 2011, the New York Times Company filed its three *ex parte* reexaminations on the '757, '716, '838 patents.  HPL's May 24, 2011 letter advised Defendant of the reexaminations and provided Defendant with analysis explaining why HPL believed a large number of claims were likely to be confirmed.  Notwithstanding, J.C. Penney refused a license on HPL's highly favorable settlement licensing terms and continued to infringe HPL' patents.

(b)     <u>J.C. Penney Refused a License and Continued to Infringe the Patents</u> <u>After the Patent Office Confirmed Claims</u>:  As previously mentioned, the Patent Office confirmed as patentable numerous infringed claims in two of the pending *ex parte* reexamination proceedings over express consideration of the New York Times Company's invalidity arguments, including many of the claims asserted to be infringed in this Complaint.  Thereafter, on November 9, 2011, HPL wrote a letter to Defendant advising it of HPL's ongoing licensing, litigation, and patent prosecution successes, and again offered a license to Defendant on HPL's highly favorable settlement licensing terms.  Notwithstanding the Patent Office confirming many of the claims asserted in this Complaint, J.C. Penney continued to refuse a license and to infringe HPL's patents.

10

(c)    J.C. Penney Refused a License and Continued to Infringe the Patents After the Patent Office Denied Outright All Three Inter Partes Reexaminations: The Patent Office issued non-appealable orders fully denying all three of the New York Times Company's (and the defense group's) requests for *inter partes* reexamination on October 28, 2011 and November 4, 2011, respectively. Thereafter, on November 9, 2011, HPL promptly sent a letter to Defendant advising it of HPL's ongoing licensing, litigation, and patent prosecution efforts, and again offering a license to Defendant on HPL's highly favorable settlement licensing terms.  Notwithstanding the outright denial of all three *inter partes* reexamination requests, J.C. Penney continued to refuse a license and to infringe HPL's patents.

(d)    Defendant Refused a License and Continued to Infringe the Patents after the Patent Office Allowed Three Applications Over the Art and Arguments presented in the *Ex Parte* and *Inter Partes* Reexamination Requests: As noted above, HPL has three additional pending patent applications (Application Nos. 11/598,202; 12/167,971; and 12/367,358) that were first allowed by the Patent Office after express consideration of the New York Times Company's *ex parte* reexamination requests, art, and arguments, and then allowed again after express consideration of the *inter partes* reexamination requests.  As a result, at least 51 additional claims will issue that HPL believes to be infringed by Defendant.

11

Notwithstanding the recent allowance of the '358, '971, and '202 applications, J.C. Penney continues to refuse a license and to infringe HPL's patents.

### COUNT I
### (Infringement of United States Patent No. 7,835,757 via SMS)

18.     HPL incorporates by reference Paragraphs 1 through 17 of this Complaint and realleges them as though fully set forth herein.

19.     HPL is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '757 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of claims 1-13, and 15-20 of the '757 patent.    Additionally, upon the Patent Office's issuance of the forthcoming Reexamination Certificate regarding the '757 patent, Defendant likewise will be infringing one or more of claims 21-39, 41-62, and 64-69.    As mentioned previously, all of these claims have been confirmed patentable by the Patent Office over the New York Times Company's *ex parte* and *inter partes* reexamination requests.

20.     HPL is informed and believes, and thereon alleges, that Defendant infringes the '757 patent in connection with at least the specific product offerings and services described in Paragraphs 14 and 15, above.

21.     In the alternative, HPL is informed and believes, and thereon alleges, that Defendant has actively induced and is currently inducing the infringement of the '757 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '757 patent in violation of 35 U.S.C. § 271(c)

12

because numerous messages of the type described in Paragraphs 14 and 15 have been, and continue to be, sent to its subscribers' mobile devices.

22.     More specifically, J.C. Penney has been on notice of its infringement of the '757 patent since at least January of 2011, and since that time Defendant has offered at least some of the product offerings and services described in Paragraphs 14 and 15, above.  HPL is informed and believes, and thereon alleges, that if it is not Defendant that creates and causes the infringing messages and content to be delivered as alleged in Paragraphs 14 and 15, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to the actions of third parties to create and cause such messages and content to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '757 patent.

23.     In addition, with J.C. Penney being on notice of infringement of the '757 patent since January of 2011, HPL is informed and believes, and thereon alleges, that Defendant's infringement of the '757 patent has been and continues to be willful.

24.     As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## COUNT II
### (Infringement of United States Patent No. 7,499,716 via SMS)

25.     HPL incorporates by reference Paragraphs 1 through 17 of this Complaint and realleges them as though fully set forth herein.

26.     HPL is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '716 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of at least claims 15, 17, 18, 21, 22, 23, 24, 25, 26, 27, 30, 32, 33, 36, 37, 38, 39, 40, 41, 83, 85, 86, 89, 90, 91, 92, 93, 94, 97, 99, 100, 103, 104, 105, 106, and 107 of the '716 patent.  As mentioned previously, the Patent Office has issued a Reexamination Certificate confirming all of these claims in connection with the New York Times Company's *ex parte* and *inter partes* reexamination requests.

27.     HPL is informed and believes, and thereon alleges, that Defendant infringes the '716 patent in connection with at least the specific product offerings and services described in Paragraphs 14 and 15, above.

28.     In the alternative, HPL is informed and believes, and thereon alleges, that Defendant has actively induced and is currently inducing the infringement of the '716 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '716 patent in violation of 35 U.S.C. § 271(c) because numerous messages of the type described in Paragraph 14 and 15 have been, and continue to be, sent to its subscribers' mobile devices.

14

29.     More specifically, J.C. Penney has been on notice of its infringement of the

'716 patent since March  of 2010, and since that time Defendant has offered at least some

of the product offerings and services described in Paragraphs 14 and 15, above.  HPL is

informed and believes, and thereon alleges, that if it is not Defendant that creates and

causes the infringing messages and content to be sent as alleged in Paragraphs 14 and 15,

then Defendant has actively induced or contributed to, and is currently actively inducing

or contributing to the actions of third parties to create and cause such messages and

content to be sent on its behalf, and knew or should have known that its actions would

cause actual infringement of the '716 patent.

30.     In addition, with J.C. Penney being on notice of infringement of the '716

patent since at least March of 2010, HPL is informed and believes, and thereon alleges,

that Defendant's infringement of the '716 patent has been and continues to be willful.

31.     As a direct and proximate result of Defendant's conduct, HPL has suffered

and will continue to suffer irreparable injury, for which it has no adequate remedy at law.

HPL has also been damaged and, until an injunction issues, will continue to be damaged

in an amount yet to be determined.

## <u>COUNT III</u>
### <u>(Infringement of United States Patent No. 7,280,838 via SMS)</u>

32.     HPL incorporates by reference Paragraphs 1 through 17 of this Complaint

and realleges them as though fully set forth herein.

15

33.     HPL is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '838 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of at least claims 9, 10, 12, 13, 15, 16, 18, 19, and 20 of the '838 patent . HPL expects that additional claims will be asserted upon completion of the pending *ex parte* reexamination.

34.     HPL is informed and believes, and thereon alleges, that Defendant infringes the '838 patent in connection with at least the specific product offerings and services described in Paragraphs 14 and 15.

35.     In the alternative, HPL is informed and believes, and thereon alleges, that Defendant has actively induced and is currently inducing the infringement of the '838 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '838 patent in violation of 35 U.S.C. § 271(c) because numerous messages of the type described in Paragraphs 14 and 15 have been, and continue to be, sent to its subscribers' mobile devices.

36.     More specifically, J.C. Penney has been on notice of its infringement of the '838 patent since at least March of 2010, and since that time Defendant has offered at least some of the product offerings and services described in Paragraphs 14 and 15, above. HPL is informed and believes, and thereon alleges, that if it is not Defendant that creates and causes the infringing messages to be sent as alleged in Paragraphs 14 and 15, then Defendant has actively induced or contributed to, and is currently actively inducing

or contributing to the actions of third parties to create and cause such messages and content to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '838 patent.

37.    In addition, with J.C. Penney being on notice of infringement of the '838 patent since at least March of 2010, HPL is informed and believes, and thereon alleges that Defendant's infringement of the '838 patent has been and continues to be willful.

38.    As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

WHEREFORE, for the foregoing reasons, Helferich Patent Licensing, LLC, prays for:

(a)    Judgment that Defendant has infringed, actively induced others to infringe, or contributed to the infringement by others of one or more of the claims of the '757 patent, '716 patent, and '838 patent;

(b)    A permanent injunction to be issued enjoining and restraining Defendant and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, assigns, and those in active concert and participation with them, and each of them, from making, using, selling, offering for sale, or importing any products, systems or methods which fall within the scope of one or more of the claims of the '757 patent,

'716 patent, and '838 patent and from inducing or contributing to infringement of any such claims by others;

(c)     An award of damages against Defendant adequate to compensate HPL for past infringement of one or more of the claims of the '757 patent, '716 patent, and '838 patent together with interest and costs as fixed by the Court, such damages to be trebled because of the willful and deliberate character of the infringement;

(d)     Judgment that this case is "exceptional" under 35 U.S.C. § 285, and that HPL is entitled to an award of its reasonable attorneys' fees in the prosecution of this action; and

(e)     Such other and further relief as the Court may deem just and proper.


RESPECTFULLY SUBMITTED this 23rd day of December, 2011.

LAW OFFICES OF STEVEN G. LISA, LTD.


By:   */s/ Timothy Sperling*
          Timothy D. Sperling
          Attorney for Plaintiff

Steven G. Lisa (Ill. State Bar # 6187348)
Timothy Sperling (Ill. State Bar # 6283854)
Jon E. Kappes (Ill. State Bar # 6291678)
James D. Busch (Ill. State Bar # 6299217)
Mildred E. Park (Ill. State Bar # 6293523)
Donald J. Lisa (Ill. State Bar # 1673998)
Justin J. Lesko (Ill. State Bar # 6306428)
Law Offices of Steven G. Lisa, Ltd.

55 West Monroe Street, Suite 3210
Chicago, Illinois 60603
Tel. & Fax: (312) 752-4357

Victoria Curtin (NDIL ID #010897)
Victoria Gruver Curtin, P.L.C.
14555 N. Scottsdale Rd., Ste. 160
Scottsdale, Arizona  85254
Tel.:  (480) 998-3547
Fax:  (480) 596-7956

Gerald D. Hosier (Ill. State Bar # 7059)
Law Offices Of Gerald D. Hosier, Ltd.
P.O. BOX 12354
ASPEN, CO 81612
Tel: (970) 920- 3475
Off: (970) 920-3475

## Exhibit A

1. U.S. Patent No. 7,957,695, entitled "Method for Integrating Audio And Visual Messaging;" issued June 7, 2011.

2. U.S. Patent No. 7,843,314, entitled "Paging Transceivers and Methods for Selectively Retrieving Messages;" issued November 30, 2010;

3. U.S. Patent No. 7,835,757 entitled "System and Method for Delivering Information to a Transmitting and Receiving Device,"  issued November 16, 2010;

4. U.S. Patent No. 7,627,305, titled "Systems and Methods for Adding Information to a Directory Stored in a Mobile Device" issued December 1, 2009.

5. U.S. Patent No. 7,499,716, titled "System and Method for Delivering Information to a Transmitting and Receiving Device" issued March 3, 2009.

6. U.S. Patent No. 7,403,787, titled "Paging Transceivers and Methods for Selectively Retrieving Messages" issued July 22, 2008.

7. U.S. Patent No. 7,376,432, titled "Paging Transceivers and Methods for Selectively Retrieving Messages" issued May 20, 2008.

8. U.S. Patent No. 7,280,838, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued October 9, 2007.

9. U.S. Patent No. 7,277,716, titled "Systems and Methods for Delivering Information to a Communication Device," issued October 2, 2007.

10. U.S. Patent No. 7,242,951, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued July 10, 2007.

11. U.S. Patent No. 7,155,241, titled "Systems and Methods for Enabling a User of a Communication Device to Manage Remote Information," issued December 26, 2006.

12. U.S. Patent No. 7,146,157, titled "Systems and Methods for Downloading Audio Information to a Mobile Device," issued December 5, 2006.

13. U.S. Patent No. 7,039,428, titled "System and Method for Delivering Information to a Transmitting and Receiving Device," issued May 2, 2006.

14. U.S. Patent No. 7,003,304, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued February 21, 2006.

15. U.S. Patent No. 6,983,138, titled "User Interface for Message Access," issued January 3, 2006.

16. U.S. Patent No. 6,826,407, titled "System and Method for Integrating Audio and Visual Messaging," issued November 30, 2004.

17. U.S. Patent No. 6,696,921, titled "Transmitting and Receiving Devices and Methods for Transmitting Data to and Receiving Data from a Communications System," issued February 24, 2004.

18. U.S. Patent No. 6,636,733, titled "Wireless Messaging Method," issued October 21, 2003.

19. U.S. Patent No. 6,462,646, titled "Transmitting and Receiving Devices and Methods for Transmitting Data to and Receiving Data from a Communication System," issued October 8, 2002.

20. U.S. Patent No. 6,459,360, titled "Networks, Communication Systems, Transmitting and Receiving Devices and Methods for Transmitting, Receiving, and Erasing Stored Information," issued October 1, 2002.

21. U.S. Patent No. 6,259,892, titled "Pager Transceivers and Methods for Performing Action on Information at Desired Times," issued July 10, 2001.

22. U.S. Patent No. 6,253,061, titled "Systems and Methods for Delivering Information to a Transmitting and Receiving Device," issued June 26, 2001.

23. U.S. Patent No. 6,233,430, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued May 15, 2001.

24. U.S. Patent No. 6,097,941, titled "User Interface for Voice Message Access," issued August 1, 2000.

25. U.S. Patent No. 6,087,956, titled "Paging Transceivers and Methods for Selectively Erasing Information," issued July 11, 2000.

26. U.S. Patent Application No. 13/210, 223, titled "Wireless Messaging Systems and Methods."

27. U.S. Patent Application No. 13/109,437, titled "System and Method for Delivering Information to a Transmitting and Receiving Device."

28. U.S. Patent Application No. 13/109,389, titled "System and Method for Delivering Information to a Transmitting and Receiving Device."

29. U.S. Patent Application No. 12/973,722, titled "Wireless Messaging Systems and Methods."

30. U.S. Patent Application No. 12/580,189, titled "System and Method for Delivering Information to a Transmitting and Receiving Device."

31. U.S. Patent Application No. 12/367,358, titled "Content provision to subscribers via wireless transmission."

32. U.S. Patent Application No. 12/267,436, titled "Wireless Messaging System."

33. U.S. Patent Application No. 12/167,971, titled "System and Method for Delivering Information to a Transmitting and Receiving Device."

34. U.S. Patent Application No. 11/598,832, titled "Systems and Methods for Downloading Information to a Mobile Device."

35. U.S. Patent Application No. 11/598,202, titled "Wireless Messaging System."

36. U.S. Patent Application No. 10/958,731, titled "System and Method for Integrating Audio and Visual Messaging."

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HELFERICH PATENT LICENSING, LLC, | ) | |
| an Illinois Limited Liability Company, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| | ) | |
| J.C. PENNEY COMPANY, INC., | ) | |
| a Delaware Corporation, | ) | |
| Defendant. | ) | |

## DEMAND FOR JURY TRIAL

Plaintiff hereby makes a demand for a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedures as to all issues in the above captioned lawsuit.

RESPECTFULLY SUBMITTED this 23rd day of December, 2011.

LAW OFFICES OF STEVEN G. LISA, LTD.

By:  */s/ Timothy Sperling*

Timothy D. Sperling
Attorney for Plaintiff

Steven G. Lisa (Ill. State Bar # 6187348)
Timothy Sperling (Ill. State Bar # 6283854)
Jon E. Kappes (Ill. State Bar # 6291678)
James D. Busch (Ill. State Bar # 6299217)
Mildred E. Park (Ill. State Bar # 6293523)
Donald J. Lisa (Ill. State Bar # 1673998)

23

Justin J. Lesko (Ill. State Bar # 6306428)
Law Offices of Steven G. Lisa, Ltd.
55 West Monroe Street, Suite 3210
Chicago, Illinois 60603
Tel. & Fax: (312) 752-4357