**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HELFERICH PATENT LICENSING, LLC, | ) | |
| an Illinois Limited Liability Company, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:11-cv-9143 |
| | ) | |
| v. | ) | |
| | ) | (Jury Trial Demanded) |
| J.C. PENNEY CORPORATION, INC., | ) | |
| a Delaware Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## ANSWER TO AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Defendant J.C. Penney Corporation, Inc. ("J.C. Penney") answers the Complaint filed in this action by Plaintiff Helferich Patent Licensing, LLC ("Helferich") as follows:

## NATURE OF THE ACTION

1.    This is an action for patent infringement arising under the United States Patent Act, 35 U.S.C. §§ 101-376, including 35 U.S.C. § 271.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) in that this is a civil action arising out of the patent laws of the United States of America.

**ANSWER**:    J.C. Penney admits that Helferich's allegations of patent infringement purport to arise under Title 35 of the United States Code, and admits that, if proper, a claim arising under Title 35 of the United States Code would arise within the Court's subject matter jurisdiction, but denies that there is any legal or factual basis for any such claims or that Helferich is entitled to any relief.  The remaining allegations of Paragraph 1 contain conclusions of law to which no response is required, but to the extent one is required, J.C. Penney denies those allegations.

## JURISDICTION AND VENUE

2.      This Court has personal jurisdiction over Defendant because Defendant conducts substantial and continuous business in the State of Illinois and in this District, including operating a store in the North Riverside Park Mall of Riverside, Illinois, and purposefully directing its infringing activities to residents of this State and District by causing infringing messages to be sent to residents of this State and District, as described more fully in the paragraphs hereafter.

**ANSWER**:  J.C. Penney admits that it operates a store located in the North Riverside

Park Mall of Riverside, Illinois, and admits that, for the purpose of this case only, the Court has

personal jurisdiction over J.C. Penney.  J.C. Penney denies that there is any legal or factual basis

for any of the remaining allegations of patent infringement claimed by Helferich in Paragraph 2,

and therefore denies each and every remaining allegation.

3.      Venue is appropriate pursuant to 28 U.S.C. §§ 1391(c) and 1400(b) because, among other reasons, Defendant is subject to personal jurisdiction in this District, and has caused infringing messages to be sent to residents of this State and District.

**ANSWER**:  J.C. Penney admits that, for the purpose of this case only, venue is proper as

to J.C. Penney within this judicial district.  J.C. Penney denies that it has engaged in any of the

patent infringement claimed by Helferich in Paragraph 3, and denies that there is any legal or

factual basis for any of the remaining allegations of patent infringement claimed by Helferich.

The remaining allegations of Paragraph 3 contain conclusions of law to which no response is

required, but to the extent one is required, J.C. Penney denies those allegations.

## PLAINTIFF

4.      HPL is an Illinois limited liability company with a principal place of business at 70 W. Madison St., Three First National Plaza, Suite 1400, Chicago, IL 60602.  HPL is the exclusive licensee of twenty-five (25) U.S. patents, eleven (11) pending U.S. applications, and over a dozen related foreign patents and patent applications relating to mobile wireless communication devices and the provision of media and content to such devices (collectively the "HPL Portfolio").  The HPL Portfolio includes the patents and applications listed in Exhibit A.

**ANSWER**:  J.C. Penney lacks knowledge or information sufficient to form a belief as to

the truth of the allegations in paragraph 4, and therefore denies them.

5. On November 16, 2010, the United States Patent and Trademark Office ("Patent Office") issued Patent No. 7,835,757 entitled "System and Method for Delivering Information to a Transmitting and Receiving Device" (the "'757 patent"). HPL is the exclusive licensee of all right, title, and interest in the '757 patent.

**ANSWER**: J.C. Penney admits that the face of U.S. Patent No. 7,835,757 identifies the title " System and Method for Delivering Information to a Transmitting and Receiving Device," and an issue date of November 16, 2010. J.C. Penney denies that the '757 Patent was legally issued, and lacks knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 5, and therefore denies each of those allegations.

6. On March 3, 2009, the Patent Office issued Patent No. 7,499,716 entitled "System and Method for Delivering Information to a Transmitting and Receiving Device" (the "'716 patent"). HPL is the exclusive licensee of all right, title, and interest in the '716 patent.

**ANSWER**: J.C. Penney admits that the face of U.S. Patent No. 7,499,716 identifies the title "System and Method for Delivering Information to a Transmitting and Receiving Device," and an issue date of March 3, 2009. J.C. Penney denies that the '716 Patent was legally issued, and lacks knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 6, and therefore denies each of those allegations.

7. On October 9, 2007, the Patent Office issued Patent No. 7,280,838 entitled "Paging Transceivers and Methods for Selectively Retrieving Messages" (the "'838 patent"). HPL is the exclusive licensee of all right, title, and interest in the '838 patent.

**ANSWER**: J.C. Penney admits that the face of U.S. Patent No. 7,280,838 identifies the title "Paging Transceivers and Methods for Selectively Retrieving Messages," and an issue date of October 9, 2007. J.C. Penney denies that the '838 Patent was legally issued, and lacks knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 6, and therefore denies each of those allegations.

8. The '757, '716, and '838 patents variously and in general relate to systems and methods used by content providers to create, store, and cause delivery of electronic messages and related content to mobile phones. The content provider stores its content (such as news, coupons, specials, media, etc.) on an internet accessible website and creates a short description of

the content (of the type intended for placement into an SMS or MMS message). The content provider also selects and inserts a unique identifier of the content, such as a URL "link" in the message. The content provider uses an interface with a notification system (such as various social media sites or messaging services) to disseminate its messages to its customers', followers' and fans' mobile phones via SMS or MMS. Thereafter, the content provider receives a request for the content identified by the link and delivers the requested content to the user's mobile phone. The patents also variously relate to providing or using: (1) shortened URLs received from a link shortening service; (2) URLs that identify dynamic content such as changing product prices, promotions, events, reviews, or comments; (3) information to inform the recipient of the identifier of the time that the content is available such "24 hour sale"; (4) a request for a delivery confirmation of an MMS message; and/or (5) MMS messages from which users can request—and content providers receive—commands regarding the content such as to delete, reply to, or forward the content.

**ANSWER**: J.C. Penney denies that the allegations in Paragraph 8 accurately recite the steps set forth in the claims of the '757, '716, and '838 patents.

9.      On July 14, 2010, HPL filed suit against the New York Times Company asserting infringement of the '757, '716, and '838 patents asserted herein. Approximately six months later (in late February 2011), the New York Times Company filed three *ex parte* reexaminations in the Patent Office, one for each of the '757, '716, and '838 patents. Shortly thereafter, and after consideration of all of the art and arguments presented in the *ex parte* reexaminations as well as three later-filed *inter partes* reexamination requests (discussed below), the Patent Office ***confirmed as patentable*** a total of 203 claims as a result of the *ex parte* reexaminations of the '716 and '757 patents.

(a)      With respect to the '716 patent, on December 13, 2011, the Patent Office issued a "Reexamination Certificate" ***concluding the reexamination*** and ***confirming as patentable*** 16 original claims, including claims 2, 16, 19, 20, 22, 23, 31, 34, 35, 38, 39, 43, 48, 49, 52, and 58; 53 claims with minor clarifying amendments, including claims 1, 3-15, 17, 18, 21, 24-30, 32, 33, 36, 37, 40-42, 44-47, 50, 51, 53-57, and 59-69; and 65 new claims, including claims 70-134.

(b)      With respect to the '757 patent, on December 9, 2011, the Patent Office issued a "Notice of Intent to Issue Reexamination Certificate" and ***confirmed as patentable*** 6 original claims, including claims 1, 6, 11, 18, 19, and 20; 14 claims with minor clarifying amendments (as agreed by the Examiner), including claims 2-5, 7-10, and 12-17; and 49 new claims, including claims 21-69.

(c)      With respect to the '838 patent, the Patent Office has issued a Non-Final Office Action to which HPL recently responded. HPL likewise expects additional claims to be confirmed in the '838 reexamination.

**ANSWER**:  J.C. Penney admits that Helferich filed suit against the New York Times Company on July 14, 2010 asserting infringement of the '757, '716, and '838.  J.C. Penney also admits that the Patent Office has issued a Non-Final Office Action with respect to the '838 patent, to which Helferich appears to have recently responded.  J.C Penny lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 9 and each of the subparts of Paragraph 9, and therefore denies each and every remaining allegation in Paragraph 9, Paragraph 9(a), Paragraph 9(b), and Paragraph 9(c).

10.    On September 6, 2011, *after* the Patent Office confirmed as patentable numerous infringed claims of HPL's patents and applications over the New York Times Company's *ex parte* reexamination requests, the New York Times Company joined with several other companies and filed a second round of reexamination requests—this time the New York Times Company along with several other companies filed *inter partes* reexamination requests for each of the '757, '716, and '838 patents.

(a)    On October 28, 2011, the Patent Office issued a non-appealable order denying the request for *inter partes* reexamination of the '838 patent in its entirety, stating repeatedly that "None of the above cited art [referring to the references newly asserted in the *inter partes* requests] provides any new technological teachings that were not present in the art cited in the previous reexamination."

(b)    On November 4, 2011, the Patent Office issued non-appealable orders fully denying the requests for *inter partes* reexaminations of the '757 and '716 patents for similar reasons.

(c)    Prior to the Patent Office issuing a "Reexamination Certificate" for each of the '716 and '757 patents, HPL filed IDSs in the above referenced *ex parte* reexaminations citing the art and arguments presented in the *inter partes* reexamination requests.  Consequently, in confirming the claims in the *ex parte* reexamination requests, the Patent Office also considered the art and arguments presented in the *inter partes* reexamination requests.

Thus, in less than nine months, the Patent Office disposed of 5 of 6 reexamination requests (including denying outright all three *inter partes* reexaminations) filed by the New York Times Company and its defense group against HPL's patents.

**ANSWER**:  J.C. Penney lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 and each of the subparts of Paragraph 10,

and therefore denies each and every allegation in Paragraph 10, Paragraph 10(a), Paragraph 10(b), Paragraph 10(c), and the unnumbered remainder of Paragraph 10 coming after Paragraph 10(c).

11.     Additionally, during the same period, the Patent Office allowed and re-allowed three related pending patent applications (Application Nos. 11/598,202; 12/167,971; and 12/367,358) after express consideration of the New York Times Company's *ex parte* and *inter partes* reexamination requests, art, and arguments.  These allowed applications include at least 51 additional claims that HPL believes are infringed by content providers, such as the Defendant.

**ANSWER**:  J.C. Penney lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11, and therefore denies them.

12.     To date, ninety-two (92) of the world's most sophisticated companies have acquired licenses to the HPL Portfolio.  Licensees include:   ABInBev (Anheuser Busch), Adidas/Reebok, ADT Securities, Advanced Publications (Condé Nast), Ally Bank, Amazon, American Eagle Outfitters, American Greetings, Apple, Carnival Cruise Lines, Coinstar, Dairy Queen, Dell, DIRECTV, Disney, eBay, Epitaph Records, Genesco, Glu Mobile, GSI Commerce (owned by eBay), Hair Cuttery, Hewlett-Packard (and Palm), H&R Block, KGB, Macy's, McDonald's, MGM Resorts International, Microsoft, Motorola Mobility, the National Football League, the National Hockey League, Newegg.com, PGA Tour, Qdoba Restaurants, Redbox, Research in Motion, Sears Holding Corporation, Shoptext, Starbucks, Steve Madden, Taco Bell, Walgreens, Zuffa/UFC and numerous other companies including those whose identities HPL has agreed to keep confidential.

**ANSWER**:  J.C. Penney lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12, and therefore denies them.

## **DEFENDANT**

13.     Defendant J.C. Penney Corporation, Inc. is a Delaware corporation with its principal place of business in Plano, Texas.  J.C. Penney sells apparel, home furnishings, and other retail items at over 1,100 department stores throughout the United States and Puerto Rico, including in Illinois and in this District.  In addition, J.C. Penney sells its goods through jcp.com, one of the largest apparel and home furnishing sites on the Internet, to customers in the United States including customers in Chicago, Illinois.  Moreover, J.C. Penney purposefully directs its infringing activities (described below) to residents of this State and District by causing infringing messages to be sent to residents of the State of Illinois and this District.

**ANSWER**:  J.C. Penney admits that it is a Delaware corporation with its principal place of business in Plano, Texas.  J.C. Penney admits that it sells apparel, home furnishings, and other

retail items through department stores located throughout the United States and Puerto Rico. J.C. Penney admits that it sells its goods through a website addressable as jcp.com. J.C. Penney lacks knowledge or information sufficient to form a belief as to the truth of the allegation that jcp.com is one of the "largest" apparel and home furnishing sites on the Internet, and therefore denies same. J.C. Penney admits that it has sold merchandise to customers with billing or shipping addresses in Chicago, Illinois. J.C. Penney denies that it has engaged in any of the patent infringement claimed by Helferich in Paragraph 13, and denies that there is any legal or factual basis for any of the remaining allegations of patent infringement claimed by Helferich. J.C. Penney denies each and every of the remaining allegations in Paragraph 13.

14.     Within the last six (6) years, J.C. Penney has created, initiated, and caused numerous infringing messages and identified content to be sent to its customers' mobile phones via SMS or MMS messaging, including through various short-code and social media-based marketing efforts. For example, Defendant operates several social media sites, pages, and feeds (such as those maintained with Twitter, Facebook, and Google+) that are branded by J.C. Penney and promoted by J.C. Penney on its various websites, such as www.jcp.com and www.jcpenney.com. A few of J.C. Penney's social media sites, pages, and feeds include: @jcpenney, @JCPenneyOptical, @jcpPRIDE, and @jcpportraits (as maintained with Twitter), and facebook.com/jcpenney (as maintained with Facebook). J.C. Penney drafts messages with links and submits them to these sites, pages, and feeds for dissemination to its customers, followers, and fans. J.C. Penney intentionally uses its various social media sites, pages, and feeds to create, post, and store messages and/or content intended for delivery to J.C. Penney customers, followers, and fans, with the ultimate goal of driving customers to purchase J.C. Penney merchandise. J.C. Penney also operates several short-code services, such as the "JCP Rewards" mobile service that it uses to similarly create, post, and store messages and/or content intended for delivery via SMS and/or MMS to J.C. Penney customers, followers, and fans, with the ultimate goal of driving customers to purchase J.C. Penney merchandise.

**ANSWER**:  J.C. Penney admits that it uses social media websites, including Twitter, Facebook and Google+, in marketing its products, but denies that it operates any such site. J.C. Penney denies that its Twitter accounts include @jcpPRIDE, @JCPenneyOptical or @jcpportraits. J.C. Penney denies that it has engaged in any of the patent infringement claimed by Helferich in Paragraph 14, and denies that there is any legal or factual basis for any of the

remaining allegations of patent infringement claimed by Helferich. J.C. Penney denies each and every of the remaining allegations in Paragraph 14.

15.     By its own choice, J.C. Penney specifically ensures that the aforementioned messages include specific identifiers as described and covered by HPL's claims (such as a URL or shortened link). Additionally, in many cases, the identified J.C. Penney content is changed between the time of the message and the time the content is requested, and/or is available for a limited time as indicated in the text of J.C. Penney's messages. As a result of the above, it is J.C. Penney—and not the social media websites or short code services—that performs each and every element of the asserted claims. Moreover, it is J.C. Penney that obtains the benefit from the infringing messages by increasing its sales, brand awareness, and good will with resulting financial gain to J.C. Penney.

**ANSWER**: J.C. Penney denies the allegations in Paragraph 15.

16.     On or about March 8, 2010, HPL gave written notice to Defendant of its infringement of the '716, and '838 patents. The notice letter provided Defendant with a description of the patent claims as well as infringement charts demonstrating infringement of the claims. Thereafter, on or about January 12, 2011, HPL advised Defendant of its infringement of the '757 patent (which issued after HPL's initial notice letter).

**ANSWER**: J.C. Penney admits that on or about March 8, 2010, it received a letter from

Helferich designated as a "CONFIDENTIAL – SUBJECT TO FRE 408" in which Helferich

asserted rights to numerous patents and pending patent applications and alleged that certain

services offered by J.C. Penney infringed certain patents, but J.C. Penney denies that those

allegations of infringement are true and denies that the letter put J.C. Penney on notice. J.C.

Penney admits that on or about January 12, 2011, it received a letter from Helferich designated

as a "Settlement Communication Under FRE 408" in which Helferich asserted rights to

numerous patents and pending patent applications and alleged that certain services offered by

J.C. Penney infringed certain patents, but J.C. Penney denies that those allegations of

infringement are true and denies that the letter put J.C. Penney on notice. J.C. Penney denies

each and every of the remaining allegations in Paragraph 16.

17.     For the past twenty-one months, J.C. Penney has continued to infringe HPL's patents while repeatedly refusing to accept a license on HPL's highly favorable settlement licensing terms. J.C. Penney refused a license even in the face of the Patent Office both

confirming existing claims and allowing new claims over express consideration of the art and arguments proffered by the New York Times Company and others now cooperating with the New York Times Company. More specifically:

(a) J.C. Penney Refused a License and Continued to Infringe the Patents After the New York Times Filed its Ex Parte Reexaminations: As discussed above, in late February 2011, the New York Times Company filed its three *ex parte* reexaminations on the '757, '716, '838 patents. HPL's May 24, 2011 letter advised Defendant of the reexaminations and provided Defendant with analysis explaining why HPL believed a large number of claims were likely to be confirmed. Notwithstanding, J.C. Penney refused a license on HPL's highly favorable settlement licensing terms and continued to infringe HPL' patents.

(b) J.C. Penney Refused a License and Continued to Infringe the Patents After the Patent Office Confirmed Claims: As previously mentioned, the Patent Office confirmed as patentable numerous infringed claims in two of the pending *ex parte* reexamination proceedings over express consideration of the New York Times Company's invalidity arguments, including many of the claims asserted to be infringed in this Complaint. Thereafter, on November 9, 2011, HPL wrote a letter to Defendant advising it of HPL's ongoing licensing, litigation, and patent prosecution successes, and again offered a license to Defendant on HPL's highly favorable settlement licensing terms. Notwithstanding the Patent Office confirming many of the claims asserted in this Complaint, J.C. Penney continued to refuse a license and to infringe HPL's patents.

(c) J.C. Penney Refused a License and Continued to Infringe the Patents After the Patent Office Denied Outright All Three Inter Partes Reexaminations: The Patent Office issued non-appealable orders fully denying all three of the New York Times Company's (and the defense group's) requests for *inter partes* reexamination on October 28, 2011 and November 4, 2011, respectively. Thereafter, on November 9, 2011, HPL promptly sent a letter to Defendant advising it of HPL's ongoing licensing, litigation, and patent prosecution efforts, and again offering a license to Defendant on HPL's highly favorable settlement licensing terms. Notwithstanding the outright denial of all three *inter partes* reexamination requests, J.C. Penney continued to refuse a license and to infringe HPL's patents.

(d) Defendant Refused a License and Continued to Infringe the Patents after the Patent Office Allowed Three Applications Over the Art and Arguments presented in the *Ex Parte* and *Inter Partes* Reexamination Requests: As noted above, HPL has three additional pending patent applications (Application Nos. 11/598,202; 12/167,971; and 12/367,358) that were first allowed by the Patent Office after express consideration of the New York Times Company's *ex parte* reexamination requests, art, and arguments, and then allowed again after express consideration of the *inter partes* reexamination requests. As a result, at least 51 additional claims will issue that HPL believes to be infringed by Defendant.

Notwithstanding the recent allowance of the '358, '971, and '202 applications, J.C. Penney continues to refuse a license and to infringe HPL's patents.

**ANSWER**: J.C. Penney admits that on or about May 24, 2011 and on or about November 9, 2011, it received letters designated as "CONFIDENTIAL – SUBJECT TO FRE 408" from Helferich in which Helferich asserted rights to numerous patents and pending patent applications and alleged that certain services offered by J.C. Penney infringed certain patents, but J.C. Penney denies that those allegations of infringement are true and denies that the letter put J.C. Penney on notice. J.C. Penney denies that it infringes, or has ever infringed, any valid claim of any of the patents-in-suit, denies that Helferich is entitled to a license, denies that any of the terms of the purported license are or were favorable, denies that it has engaged in any of the patent infringement claimed by Helferich in Paragraph 17, and denies that there is any legal or factual basis for any of the remaining allegations of patent infringement claimed by Helferich. J.C. Penney denies each and every of the remaining allegation in Paragraph 17, Paragraph 17(a), Paragraph 17(b), Paragraph 17(c), Paragraph (17(d), and the unnumbered remainder of Paragraph 17 coming after Paragraph 17(d).

## COUNT I
### (Infringement of United States Patent No. 7,835,757 via SMS)

18.     HPL incorporates by reference Paragraphs 1 through 17 of this Complaint and realleges them as though fully set forth herein.

**ANSWER**: J.C. Penney incorporates its answers to Paragraphs 1 through 17 as if fully set forth herein.

19.     HPL is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '757 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of claims 1-13, and 15-20 of the '757 patent. Additionally, upon the Patent Office's issuance of the forthcoming Reexamination Certificate regarding the '757 patent, Defendant likewise will be infringing one or more of claims 21-39, 41-62, and 64-69. As mentioned previously, all of these claims have been confirmed patentable by the Patent Office over the New York Times Company's *ex parte* and *inter partes* reexamination requests.

**ANSWER**: J.C. Penney denies that it is currently infringing, or has ever infringed, any valid claim of the '757 Patent under any theory. J.C. Penney further denies that any claim of the '757 patent is valid. J.C. Penney lacks knowledge or information sufficient to form a belief as to Helferich's claims of future infringement, and therefore denies that it will infringe any valid claim of the '757 Patent in the future, and denies that Helferich's allegations with regard to claims 21-39, 41-62, and 64-69 of the '757 Patent contain any basis upon which relief may be granted. J.C. Penney prays that this Court will strike or otherwise dismiss any and all speculative claims Helferich attempted to plead in Paragraph 19 and/or elsewhere in the Complaint for lack of standing and/or lack of ripeness. J.C. Penney lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 19, and therefore denies them.

20. HPL is informed and believes, and thereon alleges, that Defendant infringes the '757 patent in connection with at least the specific product offerings and services described in Paragraphs 14 and 15, above.

**ANSWER**: J.C. Penney incorporates its answers to Paragraphs 14 and 15 as if fully set forth herein, and denies the allegations in Paragraph 20.

21. In the alternative, HPL is informed and believes, and thereon alleges, that Defendant has actively induced and is currently inducing the infringement of the '757 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '757 patent in violation of 35 U.S.C. § 271(c) because numerous messages of the type described in Paragraphs 14 and 15 have been, and continue to be, sent to its subscribers' mobile devices.

**ANSWER**: J.C. Penney incorporates its answers to Paragraphs 14 and 15 as if fully set forth herein, and denies the allegations in Paragraph 21.

22. More specifically, J.C. Penney has been on notice of its infringement of the '757 patent since at least January of 2011, and since that time Defendant has offered at least some of the product offerings and services described in Paragraphs 14 and 15, above. HPL is informed and believes, and thereon alleges, that if it is not Defendant that creates and causes the infringing messages and content to be delivered as alleged in Paragraphs 14 and 15, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to the

actions of third parties to create and cause such messages and content to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '757 patent.

**ANSWER**: J.C. Penney admits that in or about January of 2011 it received a letter from Helferich in which Helferich asserted rights to numerous patents and pending patent applications and alleged that certain services offered by J.C. Penney infringed certain patents, but J.C. Penney denies that those allegations of infringement are true and denies that the letter put J.C. Penney on notice. J.C. Penney incorporates its answers to Paragraphs 14 and 15 as if fully set forth herein, and denies each and every of the remaining allegations in Paragraph 22.

23.     In addition, with J.C. Penney being on notice of infringement of the '757 patent since January of 2011, HPL is informed and believes, and thereon alleges, that Defendant's infringement of the '757 patent has been and continues to be willful.

**ANSWER**: Paragraph 23 contains conclusions of law to which no response is required, but to the extent one is required, J.C. Penney denies those allegations.

24.     As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

**ANSWER**: J.C. Penney denies the allegations in Paragraph 24.

<u>**COUNT II**</u>
<u>**(Infringement of United States Patent No. 7,499,716 via SMS)**</u>

25.     HPL incorporates by reference Paragraphs 1 through 17 of this Complaint and realleges them as though fully set forth herein.

**ANSWER**: J.C. Penney incorporates its answers to Paragraphs 1 through 17 as if fully set forth herein.

26.     HPL is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '716 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of at least claims 15, 17, 18, 21, 22, 23, 24, 25, 26, 27, 30, 32, 33, 36, 37, 38, 39, 40, 41, 83, 85, 86, 89, 90, 91, 92, 93, 94, 97, 99, 100, 103, 104, 105, 106, and 107 of the '716 patent. As mentioned previously, the Patent Office has

issued a Reexamination Certificate confirming all of these claims in connection with the New York Times Company's *ex parte* and *inter partes* reexamination requests.

**ANSWER**: J.C. Penney denies that it is currently infringing, or has ever infringed, any valid claim of the '716 Patent under any theory. J.C. Penney lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 26, and therefore denies them.

27. HPL is informed and believes, and thereon alleges, that Defendant infringes the '716 patent in connection with at least the specific product offerings and services described in Paragraphs 14 and 15, above.

**ANSWER**: J.C. Penney incorporates its answers to Paragraphs 14 and 15 as if fully set forth herein, and denies the allegations in Paragraph 27.

28. In the alternative, HPL is informed and believes, and thereon alleges, that Defendant has actively induced and is currently inducing the infringement of the '716 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '716 patent in violation of 35 U.S.C. § 271(c) because numerous messages of the type described in Paragraph 14 and 15 have been, and continue to be, sent to its subscribers' mobile devices.

**ANSWER**: J.C. Penney incorporates its answers to Paragraphs 14 and 15 as if fully set forth herein, denies that it is currently infringing, or has ever infringed, any valid claim of the '716 Patent under any theory, and denies any and all remaining allegations contained in Paragraph 28.

29. More specifically, J.C. Penney has been on notice of its infringement of the '716 patent since March of 2010, and since that time Defendant has offered at least some of the product offerings and services described in Paragraphs 14 and 15, above. HPL is informed and believes, and thereon alleges, that if it is not Defendant that creates and causes the infringing messages and content to be sent as alleged in Paragraphs 14 and 15, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to the actions of third parties to create and cause such messages and content to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '716 patent.

**ANSWER**: J.C. Penney admits that in or about March of 2010 it received a letter from Helferich in which Helferich asserted rights to numerous patents and pending patent applications

and alleged that certain services offered by J.C. Penney infringed certain patents, but J.C. Penney

denies that those allegations of infringement are true and denies that the letter put J.C. Penney on

notice. J.C. Penney incorporates its answers to Paragraphs 14 and 15 as if fully set forth herein,

and denies each and every of the remaining allegations in Paragraph 29.

30.     In addition, with J.C. Penney being on notice of infringement of the '716 patent since at least March of 2010, HPL is informed and believes, and thereon alleges, that Defendant's infringement of the '716 patent has been and continues to be willful.

**ANSWER**: Paragraph 30 contains conclusions of law to which no response is required,

but to the extent one is required, J.C. Penney denies those allegations.

31.     As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

**ANSWER**: J.C. Penney denies the allegations in Paragraph 31.

## COUNT III
### (Infringement of United States Patent No. 7,280,838 via SMS)

32.     HPL incorporates by reference Paragraphs 1 through 17 of this Complaint and realleges them as though fully set forth herein.

**ANSWER**: J.C. Penney incorporates its answers to Paragraphs 1 through 17 as if fully

set forth herein.

33.     HPL is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '838 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of at least claims 9, 10, 12, 13, 15, 16, 18, 19, and 20 of the '838 patent. HPL expects that additional claims will be asserted upon completion of the pending *ex parte* reexamination.

**ANSWER**: J.C. Penney denies that it is currently infringing, or has ever infringed, any

valid claim of the '838 Patent under any theory, and therefore denies the allegations in Paragraph

33. The remaining allegations in Paragraph 33 are speculative, do not require any answer by J.C.

Penney, and should be stricken. To the extent the remaining allegations in Paragraph 33 do require an answer, they are denied.

34.    HPL is informed and believes, and thereon alleges, that Defendant infringes the '838 patent in connection with at least the specific product offerings and services described in Paragraphs 14 and 15.

**ANSWER**: J.C. Penney incorporates its answers to Paragraphs 14 and 15 as if fully set forth herein, and denies the allegations in Paragraph 34.

35.    In the alternative, HPL is informed and believes, and thereon alleges, that Defendant has actively induced and is currently inducing the infringement of the '838 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '838 patent in violation of 35 U.S.C. § 271(c) because numerous messages of the type described in Paragraphs 14 and 15 have been, and continue to be, sent to its subscribers' mobile devices.

**ANSWER**: J.C. Penney incorporates its answers to Paragraphs 14 and 15 as if fully set forth herein, and denies the allegations in Paragraph 35.

36.    More specifically, J.C. Penney has been on notice of its infringement of the '838 patent since at least March of 2010, and since that time Defendant has offered at least some of the product offerings and services described in Paragraphs 14 and 15, above. HPL is informed and believes, and thereon alleges, that if it is not Defendant that creates and causes the infringing messages to be sent as alleged in Paragraphs 14 and 15, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to the actions of third parties to create and cause such messages and content to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '838 patent.

**ANSWER**: J.C. Penney admits that in or about March of 2010 it received a letter from Helferich in which Helferich asserted rights to numerous patents and pending patent applications and alleged that certain services offered by J.C. Penney infringed certain patents, but J.C. Penney denies that those allegations of infringement are true and denies that the letter put J.C. Penney on notice. J.C. Penney incorporates its answers to Paragraphs 14 and 15 as if fully set forth herein, and denies each and every of the remaining allegations in Paragraph 36.

37.    In addition, with J.C. Penney being on notice of infringement of the '838 patent since at least March of 2010, HPL is informed and believes, and thereon alleges that Defendant's infringement of the '838 patent has been and continues to be willful.

**ANSWER**:  Paragraph 37 contains conclusions of law to which no response is required, but to the extent one is required, J.C. Penney denies those allegations

38.     As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

**ANSWER**:  J.C. Penney denies the allegations in Paragraph 38.

### AFFIRMATIVE DEFENSES

### First Affirmative Defense
### (Failure to state a claim)

The Complaint, and/or certain portions of the Complaint, fails to state a claim upon which relief may be granted.

### Second Affirmative Defense
### (Invalidity - The '757 Patent)

Upon information and belief, the '757 Patent and each and every claim contained therein is invalid for failure to satisfy at least one of the requirements for patentability under 35 U.S.C. §§ 101, 102, 103, 112 and/or for being otherwise in violation of one or more of the sections of Parts I, II, and III of Title 35 of the United States Code.  More specifically and without limitation, the '757 Patent is invalid as anticipated pursuant to 35 U.S.C. § 102 or as obvious pursuant to 35 U.S.C. § 103 based upon prior art including but not necessarily limited to systems and methods used by content providers to create, store, and cause delivery of electronic messages and related content to mobile phones, SMS and MMS technology, link shortening, dynamic content, and internet redirection technology, and other similar internet-based and/or mobile sales, marketing, and advertising systems and methods.

### Third Affirmative Defense
### (Invalidity - The '716 Patent)

Upon information and belief, the '716 Patent and each and every claim contained therein is invalid for failure to satisfy at least one of the requirements for patentability under 35 U.S.C. §§ 101, 102, 103, 112 and/or for being otherwise in violation of one or more of the sections of Parts I, II, and III of Title 35 of the United States Code. More specifically and without limitation, the '716 Patent is invalid as anticipated pursuant to 35 U.S.C. § 102 or as obvious pursuant to 35 U.S.C. § 103 based upon prior art including but not necessarily limited to systems and methods used by content providers to create, store, and cause delivery of electronic messages and related content to mobile phones, SMS and MMS technology, link shortening, dynamic content, and internet redirection technology, and other similar internet-based and/or mobile sales, marketing, and advertising systems and methods.

### Fourth Affirmative Defense
### (Invalidity - The '838 Patent)

Upon information and belief, the '838 Patent and each and every claim contained therein is invalid for failure to satisfy at least one of the requirements for patentability under 35 U.S.C. §§ 101, 102, 103, 112 and/or for being otherwise in violation of one or more of the sections of Parts I, II, and III of Title 35 of the United States Code. More specifically and without limitation, the '838 Patent is invalid as anticipated pursuant to 35 U.S.C. § 102 or as obvious pursuant to 35 U.S.C. § 103 based upon prior art including but not necessarily limited to systems and methods used by content providers to create, store, and cause delivery of electronic messages and related content to mobile phones, SMS and MMS technology, link shortening, dynamic

content, and internet redirection technology, and other similar internet-based and/or mobile sales, marketing, and advertising systems and methods.

## Fifth Affirmative Defense
### (Non-Infringement - The '757 Patent)

Upon information and belief, J.C. Penney has not and does not infringe, directly or indirectly, any claim of the '757 Patent, either literally or under the doctrines of equivalents or divided infringement. Furthermore, J.C. Penney cannot be found to indirectly infringe the patents at least because there is no proof of actual knowledge of any valid claim of the '757 Patent or sufficient pre-suit notice of infringement prior to filing the instant suit.

## Sixth Affirmative Defense
### (Non-Infringement - The '716 Patent)

Upon information and belief, J.C. Penney has not and does not infringe, directly or indirectly, any claim of the '716 Patent, either literally or under the doctrines of equivalents or divided infringement. Furthermore, J.C. Penney cannot be found to indirectly infringe the patents at least because there is no proof of actual knowledge of any valid claim of the '716 Patent or sufficient pre-suit notice of infringement prior to filing the instant suit.

## Seventh Affirmative Defense
### (Non-Infringement - The '838 Patent)

Upon information and belief, J.C. Penney has not and does not infringe, directly or indirectly, any claim of the '838 Patent, either literally or under the doctrines of equivalents or divided infringement. Furthermore, J.C. Penney cannot be found to indirectly infringe the

patents at least because there is no proof of actual knowledge of any valid claim of the '838 Patent or sufficient pre-suit notice of infringement prior to filing the instant suit.

**Eighth Affirmative Defense**
**(Patent Marking - The '757 Patent)**

Upon information and belief, Helferich is not entitled to any pre-suit damages for alleged infringement because of its failure to comply with 35 U.S.C. § 287 and/or its failure to otherwise give proper notice that J.C. Penney's actions allegedly infringed the '757 Patent.

**Ninth Affirmative Defense**
**(Patent Marking - The '716 Patent)**

Upon information and belief, Helferich is not entitled to any pre-suit damages for alleged infringement because of its failure to comply with 35 U.S.C. § 287 and/or its failure to otherwise give proper notice that J.C. Penney's actions allegedly infringed the '716 Patent.

**Tenth Affirmative Defense**
**(Patent Marking - The '838 Patent)**

Upon information and belief, Helferich is not entitled to any pre-suit damages for alleged infringement because of its failure to comply with 35 U.S.C. § 287 and/or its failure to otherwise give proper notice that J.C. Penney's actions allegedly infringed the '838 Patent.

**Eleventh Affirmative Defense**
**(Exhaustion - The '757 Patent)**

Upon information and belief, Helferich's claims against J.C. Penney for infringement of the '757 Patent are fully or partially precluded because the accused products/instrumentalities are supplied, directly or indirectly to J.C. Penney by an entity or entities having an express or

implied license to the patent-in-suit and/or pursuant to the doctrine of patent exhaustion. By reason of the foregoing, Helferich is barred from asserting its claims for infringement of the '757 Patent against products used, sold, or offered for sale by J.C. Penney.

## Twelfth Affirmative Defense
## (Exhaustion - The '716 Patent)

Upon information and belief, Helferich's claims against J.C. Penney for infringement of the '716 Patent are fully or partially precluded because the accused products/instrumentalities are supplied, directly or indirectly to J.C. Penney by an entity or entities having an express or implied license to the patent-in-suit and/or pursuant to the doctrine of patent exhaustion. By reason of the foregoing, Helferich is barred from asserting its claims for infringement of the '716 Patent against products used, sold, or offered for sale by J.C. Penney.

## Thirteenth Affirmative Defense
## (Exhaustion - The '838 Patent)

Upon information and belief, Helferich's claims against J.C. Penney for infringement of the '838 Patent are fully or partially precluded because the accused products/instrumentalities are supplied, directly or indirectly to J.C. Penney by an entity or entities having an express or implied license to the patent-in-suit and/or pursuant to the doctrine of patent exhaustion. By reason of the foregoing, Helferich is barred from asserting its claims for infringement of the '838 Patent against products used, sold, or offered for sale by J.C. Penney.

## Fourteenth Affirmative Defense
## (Unavailability of Injunctive Relief)

Helferich is not entitled to injunctive relief, because any injury to it is not immediate or irreparable, Helferich would have an adequate remedy at law, the balance of hardships favors no injunction, and the public interest is best served by no injunction.

### Fifteenth Affirmative Defense
### (Other Affirmative Defenses Based on Later Discovered Evidence)

J.C. Penney reserves all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the Patent Laws of the United States and any other defenses, at law or in equity, that may now exist or in the future be available based on discovery and further factual investigation in this case.

### COUNTERCLAIMS

For its counterclaims against Helferich, J.C. Penney alleges as follows:

### PARTIES

1.      J.C. Penney Corporation, Inc. is a Delaware corporation with its principal place of business in Plano, Texas.

2.      According to paragraph 4 of the Complaint, Helferich Patent Licensing, LLC ("Helferich") is an Illinois limited liability company with a principal place of business at 70 W. Madison St., Three First National Plaza, Suite 1400, Chicago, IL 60602.

### JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of these Counterclaims under, without limitation, 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

4.      Venue for these counterclaims is proper within this district under at least 28 U.S.C. § 1391.

5.      This Court has personal jurisdiction over Helferich because Helferich has

submitted itself to the personal jurisdiction of this Court by commencing this action.

## COUNT ONE

## DECLARATION OF NON-INFRINGEMENT OF THE '757 PATENT

6.      J.C. Penney incorporates and realleges the allegations of paragraphs 1-5 of these

counterclaims.

7.      J.C. Penney brings this action for declaratory judgment of non-infringement of the

'757 Patent under the laws of the United States, in particular, 28 U.S.C. §§ 2201 and 2202.

8.      Helferich has alleged that J.C. Penney has infringed the '757 Patent, and J.C.

Penney has denied these allegations.

9.      Upon information and belief, J.C. Penney has not infringed, directly,

contributorily, by inducement, or otherwise, literally or under the doctrines of equivalents or

divided infringement, any valid and enforceable claim of the '757 Patent, and is not liable for any

acts of infringement of any such claim of the '757 Patent.

10.     As evidenced by Helferich's Complaint and J.C. Penney's Answer thereto, there is

an actual, substantial and continuing justiciable case or controversy between the parties

regarding infringement of the '757 Patent.

11.     J.C. Penney is entitled to a declaratory judgment pursuant to 289 U.S.C. §§ 2201

and 2202 that J.C. Penney does not infringe and has not infringed any valid claim of the '757

Patent.

## <u>COUNT TWO</u>

**DECLARATION OF NON-INFRINGEMENT OF THE '716 PATENT**

12.     J.C. Penney incorporates and realleges the allegations of paragraphs 1-5 of these counterclaims.

13.     J.C. Penney brings this action for declaratory judgment of non-infringement of the '716 Patent under the laws of the United States, in particular, 28 U.S.C. §§ 2201 and 2202.

14.     Helferich has alleged that J.C. Penney has infringed the '716 Patent, and J.C. Penney has denied these allegations.

15.     Upon information and belief, J.C. Penney has not infringed, directly, contributorily, by inducement, or otherwise, literally or under the doctrines of equivalents or divided infringement, any valid and enforceable claim of the '716 Patent, and is not liable for any acts of infringement of any such claim of the '716 Patent.

16.     As evidenced by Helferich's Complaint and J.C. Penney's Answer thereto, there is an actual, substantial and continuing justiciable case or controversy between the parties regarding infringement of the '716 Patent.

17.     J.C. Penney is entitled to a declaratory judgment pursuant to 289 U.S.C. §§ 2201 and 2202 that J.C. Penney does not infringe and has not infringed any valid claim of the '716 Patent.

## COUNT THREE

### DECLARATION OF NON-INFRINGEMENT OF THE '838 PATENT

18.     J.C. Penney incorporates and realleges the allegations of paragraphs 1-5 of these counterclaims.

19.     J.C. Penney brings this action for declaratory judgment of non-infringement of the '838 Patent under the laws of the United States, in particular, 28 U.S.C. §§ 2201 and 2202.

20.     Helferich has alleged that J.C. Penney has infringed the '838 Patent, and J.C. Penney has denied these allegations.

21.     Upon information and belief, J.C. Penney has not infringed, directly, contributorily, by inducement, or otherwise, literally or under the doctrines of equivalents or divided infringement, any valid and enforceable claim of the '838 Patent, and is not liable for any acts of infringement of any such claim of the '838 Patent.

22.     As evidenced by Helferich's Complaint and J.C. Penney's Answer thereto, there is an actual, substantial and continuing justiciable case or controversy between the parties regarding infringement of the '838 Patent.

23.     J.C. Penney is entitled to a declaratory judgment pursuant to 289 U.S.C. §§ 2201 and 2202 that J.C. Penney does not infringe and has not infringed any valid claim of the '838 Patent.

## COUNT FOUR

### DECLARATION OF INVALIDITY OF THE '757 PATENT

24.     J.C. Penney incorporates and realleges the allegations of paragraphs 1-5 of these counterclaims.

25.     J.C. Penney brings this action for declaratory judgment of invalidity of the '757 Patent under the laws of the United States, in particular, 28 U.S.C. §§ 2201 and 2202.

26.     Helferich has alleged that J.C. Penney has infringed the '757 Patent, and J.C. Penney has denied these allegations.

27.     As evidenced by Helferich's Complaint and J.C. Penney's Answer thereto, there is an actual, substantial and continuing justiciable case or controversy between the parties regarding whether the claims of the '757 Patent are invalid.

28.     One or more of the claims of the '757 Patent are invalid for failure to comply with one or more of the statutory provisions of 35 U.S.C. §§ 101, et seq., including without limitation §§ 102, 103, and/or 112.

29.     More specifically and without limitation, the '757 Patent is invalid as anticipated pursuant to 35 U.S.C. § 102 or as obvious pursuant to 35 U.S.C. § 103 based upon prior art including but not necessarily limited to systems and methods used by content providers to create, store, and cause delivery of electronic messages and related content to mobile phones, SMS and MMS technology, link shortening, dynamic content, and internet redirection technology, and other similar internet-based and/or mobile sales, marketing, and advertising systems and methods.

## COUNT FIVE

## DECLARATION OF INVALIDITY OF THE '716 PATENT

30.     J.C. Penney incorporates and realleges the allegations of paragraphs 1-5 of these counterclaims.

31.     J.C. Penney brings this action for declaratory judgment of invalidity of the '716 Patent under the laws of the United States, in particular, 28 U.S.C. §§ 2201 and 2202.

32.    Helferich has alleged that J.C. Penney has infringed the '716 Patent, and J.C. Penney has denied these allegations.

33.    As evidenced by Helferich's Complaint and J.C. Penney's Answer thereto, there is an actual, substantial and continuing justiciable case or controversy between the parties regarding whether the claims of the '716 Patent are invalid.

34.    One or more of the claims of the '716 Patent are invalid for failure to comply with one or more of the statutory provisions of 35 U.S.C. §§ 101, et seq., including without limitation §§ 102, 103, and/or 112.

35.    More specifically and without limitation, the '716 Patent is invalid as anticipated pursuant to 35 U.S.C. § 102 or as obvious pursuant to 35 U.S.C. § 103 based upon prior art including but not necessarily limited to systems and methods used by content providers to create, store, and cause delivery of electronic messages and related content to mobile phones, SMS and MMS technology, link shortening, dynamic content, and internet redirection technology, and other similar internet-based and/or mobile sales, marketing, and advertising systems and methods.

## COUNT SIX

### DECLARATION OF INVALIDITY OF THE '838 PATENT

36.    J.C. Penney incorporates and realleges the allegations of paragraphs 1-5 of these counterclaims.

37.    J.C. Penney brings this action for declaratory judgment of invalidity of the '838 Patent under the laws of the United States, in particular, 28 U.S.C. §§ 2201 and 2202.

38.    Helferich has alleged that J.C. Penney has infringed the '838 Patent, and J.C. Penney has denied these allegations.

39.     As evidenced by Helferich's Complaint and J.C. Penney's Answer thereto, there is an actual, substantial and continuing justiciable case or controversy between the parties regarding whether the claims of the '838 Patent are invalid.

40.     One or more of the claims of the '838 Patent are invalid for failure to comply with one or more of the statutory provisions of 35 U.S.C. §§ 101, et seq., including without limitation §§ 102, 103, and/or 112.

41.     More specifically and without limitation, the '838 Patent is invalid as anticipated pursuant to 35 U.S.C. § 102 or as obvious pursuant to 35 U.S.C. § 103 based upon prior art including but not necessarily limited to systems and methods used by content providers to create, store, and cause delivery of electronic messages and related content to mobile phones, SMS and MMS technology, link shortening, dynamic content, and internet redirection technology, and other similar internet-based and/or mobile sales, marketing, and advertising systems and methods.

## COUNT SEVEN

### ATTORNEYS FEES AND COSTS

42.     J.C. Penney incorporates and realleges the allegations of paragraphs 1-41 of these counterclaims.

43.     This case is an exceptional case pursuant to 35 U.S.C. § 285, and therefore J.C. Penney is entitled to an award of attorneys' fees and costs.

## PRAYER FOR JUDGMENT

WHEREFORE, J.C. Penney prays for the following relief:

A.     Dismissal of Helferich's Complaint with prejudice and entry of judgment in favor of J.C. Penney;

B.      Judgment declaring that the asserted claims of the '757 Patent have not been infringed directly, jointly, indirectly, or by equivalent by J.C. Penney;

C.      Judgment declaring that the asserted claims of the '716 Patent have not been infringed directly, jointly, indirectly, or by equivalent by J.C. Penney;

D.      Judgment declaring that the asserted claims of the '838 Patent have not been infringed directly, jointly, indirectly, or by equivalent by J.C. Penney;

E.      Judgment declaring that one or more claims of the '757 Patent are invalid and/or unenforceable pursuant to one or more statutory provisions of Title 35 of the United States Code;

F.      Judgment declaring that one or more claims of the '716 Patent are invalid and/or unenforceable pursuant to one or more statutory provisions of Title 35 of the United States Code;

G.      Judgment declaring that one or more claims of the '838 Patent are invalid and/or unenforceable pursuant to one or more statutory provisions of Title 35 of the United States Code;

H.      A judgment that this is an exceptional case pursuant to 35 U.S.C. § 285, and an award to J.C. Penney of its costs and reasonable attorneys' fees, together with interest, including prejudgment interest thereon; and

I.      Such other and further relief as may be deemed just and appropriate.


## JURY DEMAND

J.C. Penney demands a trial by jury on all issues so triable.

Dated:  February 3, 2012

Respectfully submitted,

J.C. PENNEY CORPORATION, INC.


/s Daniel L. Farris
R. David Donoghue
Daniel L. Farris
HOLLAND & KNIGHT LLP
131 South Dearborn Street, 30th floor
Chicago, IL 60603
Tel: (312) 263-3600
Fax: (312)578-6666
david.donoghue@hklaw.com
daniel.farris@hklaw.com

*Attorneys for Defendant J.C. Penney Corporation, Inc.*