**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HELFERICH PATENT LICENSING, LLC, | ) | |
| an Illinois Limited Liability Company, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:11-cv-9143 |
| | ) | |
| | ) | |
| J.C. PENNEY CORPORATION, INC., | ) | |
| a Delaware Corporation, | ) | |
| Defendant. | ) | (Jury Trial Demanded) |

## SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Helferich Patent Licensing, LLC ("Helferich"), by and through its undersigned counsel, complains against Defendant J.C. Penney Corporation, Inc. ("J.C. Penney") as follows:

## NATURE OF THE ACTION

1.     This is an action for patent infringement arising under the United States Patent Act, 35 U.S.C. §§ 101-376, including 35 U.S.C. § 271.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) in that this is a civil action arising out of the patent laws of the United States of America.

## JURISDICTION AND VENUE

2.     This Court has personal jurisdiction over Defendant because Defendant conducts substantial and continuous business in the State of Illinois and in this District, including operating a store in the North Riverside Park Mall of Riverside, Illinois, and purposefully directing its infringing activities to residents of this State and District by causing infringing

1

messages to be sent to residents of this State and District, as described more fully in the paragraphs hereafter.

3.        Venue is appropriate pursuant to 28 U.S.C. §§ 1391(c) and 1400(b) because, among other reasons, Defendant is subject to personal jurisdiction in this District, and has caused infringing messages to be sent to residents of this State and District.

## **PLAINTIFF**

4.        Helferich is an Illinois limited liability company with a principal place of business at 70 W. Madison St., Three First National Plaza, Suite 1400, Chicago, IL 60602.  Helferich is the exclusive licensee of thirty (30) U.S. patents, six (6) pending U.S. applications, and over a dozen related foreign patents and patent applications relating to mobile wireless communication devices and the provision of media and content to such devices (collectively the "Helferich Portfolio").  The Helferich Portfolio includes the patents and applications listed in Exhibit A.

5.         On November 16, 2010, the United States Patent and Trademark Office ("Patent Office") issued Patent No. 7,835,757 entitled "System and Method for Delivering Information to a Transmitting and Receiving Device" (the "'757 patent").  Helferich is the exclusive licensee of all right, title, and interest in the '757 patent.

6.        On March 3, 2009, the Patent Office issued Patent No. 7,499,716 entitled "System and Method for Delivering Information to a Transmitting and Receiving Device" (the "'716 patent").  Helferich is the exclusive licensee of all right, title, and interest in the '716 patent.

7.        On October 9, 2007, the Patent Office issued Patent No. 7,280,838 entitled "Paging Transceivers and Methods for Selectively Retrieving Messages" (the "'838 patent").  Helferich is the exclusive licensee of all right, title, and interest in the '838 patent.

2

8.      On January 31, 2012, the Patent Office issued Patent No. 8,107,601 entitled "Wireless Messaging System" (the "'601 patent"). Helferich is the exclusive licensee of all right, title, and interest in the '601 patent.

9.      On February 14, 2012, Patent Office issued Patent No. 8,116,741 entitled "System and Method for Delivering Information to a Transmitting and Receiving Device" (the "'741 patent"). Helferich is the exclusive licensee of all right, title, and interest in the '741 patent.

10.     On March 13, 2012, the United States Patent and Trademark Office ("Patent Office") issued Patent No. 8,134,450 entitled "Content Provision to Subscribers via Wireless Transmission" (the "'450 patent"). Helferich is the exclusive licensee of all right, title, and interest in the '450 patent.

11.     The '757, '716, '838, '601, '741 and '450 patents variously and in general relate to systems and methods used by content providers to create, store, and cause delivery of electronic messages and related content to mobile phones. The content provider stores its content (such as news, coupons, specials, media, etc.) on an internet accessible website and creates a short description of the content (of the type intended for placement into an SMS or MMS message). The content provider also selects and inserts a unique identifier of the content, such as a URL "link" in the message. The content provider uses an interface with a notification system (such as various social media sites or messaging services) to disseminate its messages to its customers', followers' and fans' mobile phones via SMS or MMS. Thereafter, the content provider receives a request for the content identified by the link and delivers the requested content to the user's mobile phone. The patents also variously relate to providing or using: (1) shortened URLs received from a link shortening service; (2) URLs that identify dynamic content

3

such as changing product prices, promotions, events, reviews, or comments; (3) information to inform the recipient of the identifier of the time that the content is available such "24 hour sale" information; (4) a request for a delivery confirmation of an MMS message; (5) error status information when retrieving content, and/or (6) MMS messages from which users can request— and content providers receive—commands regarding the content such as commands to delete, reply to, or forward the content.

12.     On July 14, 2010, Helferich filed suit against the New York Times Company asserting infringement of the '757, '716, and '838 patents asserted herein.  Approximately six months later (in late February 2011), the New York Times Company filed three *ex parte* reexaminations in the Patent Office, one for each of the '757, '716, and '838 patents.  Shortly thereafter, and after consideration of all of the art and arguments presented in the *ex parte* reexaminations as well as three later-filed *inter partes* reexamination requests (discussed below), the Patent Office **confirmed as patentable** a total of 313 claims as a result of the *ex parte* reexaminations of the '716,  '757 and '838 patents.

(a) With respect to the '716 patent, on December 13, 2011, the Patent Office issued a "Reexamination Certificate" **concluding the reexamination** and **confirming as patentable** 16 original claims, including claims 2, 16, 19, 20, 22, 23, 31, 34, 35, 38, 39, 43, 48, 49, 52, and 58; 53 claims with minor clarifying amendments, including claims 1, 3-15, 17, 18, 21, 24-30, 32, 33, 36, 37, 40-42, 44-47, 50, 51, 53-57, and 59-69; and  65 new claims, including claims 70-134.

(b)  With respect to the '757 patent, on December 9, 2011, the Patent Office issued a "Notice of Intent to Issue Reexamination Certificate" and **confirmed as**

4

***patentable*** <u>6 original claims</u>, including claims 1, 6, 11, 18, 19, and 20; <u>14 claims with minor clarifying amendments</u> (as agreed by the Examiner), including claims 2-5, 7-10, and 12-17; and <u>49 new claims</u>, including claims 21-69.

(c)  With respect to the '838 patent, on February 6, 2012, the Patent Office issued a "Notice of Intent to Issue Reexamination Certificate" and ***confirmed as patentable*** <u>76 original claims</u>, including claims 1-44 and 48-84; <u>20 claims with minor clarifying amendments</u>, including claims 45-47 and 85-96; and <u>14 new claims</u> including claims 97-110.

13.    On September 6, 2011, ***after*** the Patent Office confirmed as patentable numerous infringed claims of Helferich's patents and applications over the New York Times Company's *ex parte* reexamination requests, the New York Times Company joined with several other companies and filed a second round of reexamination requests—this time filing *inter partes* reexamination requests for each of the '757, '716, and '838 patents.  On October 28, 2011, the Patent Office issued a non-appealable order ***<u>denying</u>*** the request for *inter partes* reexamination of the '838 patent in its entirety, stating repeatedly: "The references set forth in the request have been considered both alone and in combination.  They fail to raise a [substantial new question] of patentability as to 9-20 of the '838 patent claims.  Accordingly, the request for reexamination is denied."   On November 4, 2011, the Patent Office issued non-appealable orders similarly denying the requests for *inter partes* reexaminations of the '757 and '716 patents.

14.    During the same period, the Patent Office issued the '450, '741, and '601 patents after express consideration of the New York Times Company's *ex parte* and *inter partes* reexamination requests, art, and arguments.  As discussed below, the '450, '741, and '601

5

patents include more than 50 additional claims that Helferich asserts are infringed by content providers, such as the Defendants.

15. On December 25, 2011 and January 6, 2012, the New York Times Company and its defense group began filing a third round of reexamination requests (in this case, *inter partes* requests) against Helferich Patent Nos. 7,155,241 (not asserted herein and not previously the subject of a reexamination request) and 7,499,716 (asserted herein and subject to two prior requests). On January 19, 2012, Helferich filed copies of these most recent requests (and the art and arguments discussed therein) with the *ex parte* reexamination Examiner of the '838 patent. Shortly thereafter, the '838 patent reexamination Examiner issued the Notice of Intent to Issue a Reexamination Certification for the '838 patent thereby confirming as patentable the claims of the '838 patent over the New York Times defense group's third round reexamination art and arguments. Helferich believes the New York Times defense group intends to continue filing intentionally staggered requests for reexamination to hamper this litigation indefinitely.

16. To date, over one hundred of the world's most sophisticated companies have acquired licenses to the Helferich Portfolio. Licensees include: ABInBev (Anheuser Busch), Adidas/Reebok, ADT Securities, Advanced Publications (Condé Nast), Ally Bank, Amazon, American Eagle Outfitters, American Greetings, Apple, Carnival Cruise Lines, Coinstar, Dairy Queen, Dell, DexOne, DIRECTV, Disney, eBay, Epitaph Records, Genesco, Glu Mobile, GSI Commerce (owned by eBay), Hair Cuttery, Hewlett-Packard (and Palm), H&R Block, KGB, Macy's, McDonald's, MGM Resorts International, Microsoft, Motorola Mobility, the National Football League, the National Hockey League, Newegg.com, PGA Tour, Qdoba Restaurants, Redbox, Research in Motion, Sears Holding Corporation, Shoptext, Starbucks, Steve Madden,

6

Taco Bell, Walgreens, Walmart, Zuffa/UFC, ValueVision (d/b/a "ShopNBC") and numerous other companies including those whose identities Helferich has agreed to keep confidential.

**DEFENDANT**

17.     Defendant J.C. Penney Corporation, Inc. is a Delaware corporation with its principal place of business in Plano, Texas.  J.C. Penney sells apparel, home furnishings, and other retail items at over 1,100 department stores throughout the United States and Puerto Rico, including in Illinois and in this District.  In addition, J.C. Penney sells its goods through jcp.com, one of the largest apparel and home furnishing sites on the Internet, to customers in the United States including customers in Chicago, Illinois.  Moreover, J.C. Penney purposefully directs its infringing activities (described below) to residents of this State and District by causing infringing messages to be sent to residents of the State of Illinois and this District.

18.     Within the last six (6) years, J.C. Penney has created, initiated, and caused numerous infringing messages and identified content to be sent to its customers' mobile phones via SMS or MMS messaging, including through various short-code and social media-based marketing efforts.  For example, Defendant operates several social media sites, pages, and feeds (such as those maintained with Twitter, Facebook, and Google+) that are branded by J.C. Penney and promoted by J.C. Penney on its various websites, such as www.jcp.com and www.jcpenney.com.   A few of J.C. Penney's social media sites, pages, and feeds include: @jcpenney, @JCPenneyOptical, @jcpPRIDE, and @jcpportraits (as maintained with Twitter), and facebook.com/jcpenney (as maintained with Facebook).  J.C. Penney drafts messages with links and submits them to these sites, pages, and feeds for dissemination to its customers, followers, and fans.  J.C. Penney intentionally uses its various social media sites, pages, and

7

feeds to create, post, and store messages and/or content intended for delivery to J.C. Penney customers, followers, and fans, with the ultimate goal of driving customers to purchase J.C. Penney merchandise. J.C. Penney also operates several short-code services, such as the "JCP Rewards" mobile service that it uses to similarly create, post, and store messages and/or content intended for delivery via SMS and/or MMS to J.C. Penney customers, followers, and fans, with the ultimate goal of driving customers to purchase J.C. Penney merchandise.

19.     By its own choice, J.C. Penney specifically ensures that the aforementioned messages include specific identifiers as described and covered by Helferich's claims (such as a URL). In addition, some of Defendant's messages include shortened URLs which rely on error status information to be used when requesting the content. Additionally, in many cases, the identified J.C. Penney content is changed between the time of the message and the time the content is requested, and/or is available for a limited time as indicated in the text of J.C. Penney's messages. As a result of the above, it is J.C. Penney—and not the social media websites or short code services—that performs each and every element of the asserted claims. Moreover, it is J.C. Penney that obtains the benefit from the infringing messages by increasing its sales, brand awareness, and good will with resulting financial gain to J.C. Penney.

20.     On or about March 8, 2010, Helferich gave written notice to Defendant of its infringement of the '716 and '838 patents. Thereafter, on or about January 12, 2011, Helferich advised Defendant of its infringement of the '757 patent (which issued after Helferich's initial notice to J.C. Penney). Helferich also placed J.C. Penney on notice that U.S. Patent Application Nos. 11/598,202, 12/167,971, and 12/367,358 (now the '601, '741, and '450 patents) would likely be infringed once issued as patents.

21.     For the past twenty-one months, J.C. Penney has continued to infringe Helferich's patents.  J.C. Penney remains unlicensed even in the face of the Patent Office both confirming existing claims and allowing new claims over express consideration of the art and arguments proffered by the New York Times Company and others now cooperating with the New York Times Company.  More specifically:

(a)     <u>J.C. Penney Continued to Infringe the Patents After the Patent Office Confirmed the '757, '716, and '838 Patent Claims</u>:  As previously mentioned, the Patent Office confirmed as patentable numerous infringed claims in all three of the *ex parte* reexamination proceedings over express consideration of the New York Times Company's invalidity arguments, including many of the claims asserted to be infringed in this Complaint.  Notwithstanding the Patent Office confirming many of the claims asserted in this Complaint, J.C. Penney remained unlicensed and continued to infringe Helferich's patents.

(b)     <u>J.C. Penney Continued to Infringe the Patents After the Patent Office Denied Outright All Three *Inter Partes* Reexaminations</u>:  The Patent Office issued non-appealable orders fully denying all three of the New York Times Company's (and the defense group's) requests for *inter partes* reexamination of the '757, '716, and '838 patents on October 28, 2011 and November 4, 2011, respectively.  Notwithstanding the outright denial of all three *inter partes* reexamination requests, J.C. Penney remained unlicensed and continued to infringe Helferich's patents.

(c)     <u>J.C. Penney Continued to Infringe the Patents After the Patent Office Issued Helferich Several New Patents</u>: As discussed above, the Patent Office has allowed

and issued Helferich several new patents over express consideration of the *ex parte* and first *inter partes* reexamination requests (including all of the art and arguments proffered by New York Times and its defense group members in those requests). Notwithstanding, J.C. Penney remained unlicensed and continued to infringe Helferich's patents.

## COUNT I
### (Infringement of United States Patent No. 7,835,757)

22.     Helferich incorporates by reference Paragraphs 1 through 21 of this Complaint and realleges them as though fully set forth herein.

23.     Helferich is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '757 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of claims 1-13, and 15-39, 41-62 and 64-69 of the '757 patent.     As mentioned previously, the Patent Office has issued a Reexamination Certificate confirming patentability of these claims in connection with the New York Times Company's *ex parte* and *inter partes* reexamination requests.

24.     Helferich is informed and believes, and thereon alleges that J.C. Penney infringes the '757 patent in connection with at least the product offerings and services described in Paragraphs 18 and 19, above.

25.     In the alternative, Helferich is informed and believes, and thereon alleges, that Defendant has actively induced and is currently inducing the infringement of the '757 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '757 patent in violation of 35 U.S.C. § 271(c) because numerous messages of the type described in Paragraphs 18 and 19 have been, and continue to be, sent to its subscribers'

mobile devices.

26.    More specifically, J.C. Penney has been on notice of its infringement of the '757 patent since at least January of 2011, and since that time Defendant has offered at least some of the product offerings and services described in Paragraphs 18 and 19, above.    Helferich is informed and believes, and thereon alleges, that if it is not Defendant that creates and causes the infringing messages and content to be delivered as alleged in Paragraphs 18 and 19, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to the actions of third parties to create and cause such messages and content to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '757 patent.

27.    In addition, with J.C. Penney being on notice of infringement of the '757 patent since January of 2011, Helferich is informed and believes, and thereon alleges, that Defendant's infringement of the '757 patent has been and continues to be willful.

28.    As a direct and proximate result of Defendant's conduct, Helferich has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. Helferich has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## <u>COUNT II</u><br>(<u>Infringement of United States Patent No. 7,499,716</u>)

29.    Helferich incorporates by reference Paragraphs 1 through 21 of this Complaint and realleges them as though fully set forth herein.

30.     Helferich is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '716 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of at least claims 15, 17, 18, 21, 22, 23, 24, 25, 26, 27, 30, 32, 33, 36, 37, 38, 39, 40, 41, 83, 85, 86, 89, 90, 91, 92, 93, 94, 97, 99, 100, 103, 104, 105, 106, and 107 of the '716 patent.  As mentioned previously, the Patent Office has issued a Reexamination Certificate confirming all of these claims in connection with the New York Times Company's *ex parte* and *inter partes* reexamination requests.

31.     Helferich is informed and believes, and thereon alleges, that J.C. Penney infringes the '716 patent in connection with at least the product offerings and services described in Paragraphs 18 and 19, above.

32.     In the alternative, Helferich is informed and believes, and thereon alleges, that Defendant has actively induced and is currently inducing the infringement of the '716 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '716 patent in violation of 35 U.S.C. § 271(c) because numerous messages of the type described in Paragraphs 18 and 19 have been, and continue to be, sent to its subscribers' mobile devices.

33.     More specifically, J.C. Penney has been on notice of its infringement of the '716 patent since March  of 2010, and since that time Defendant has offered at least some of the product offerings and services described in Paragraphs 18 and 19, above.  Helferich is informed and believes, and thereon alleges, that if it is not Defendant that creates and causes the infringing messages and content to be sent as alleged in Paragraphs 18 and 19, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to the actions of third

12

parties to create and cause such messages and content to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '716 patent.

34.     In addition, with J.C. Penney being on notice of infringement of the '716 patent since at least March of 2010, Helferich is informed and believes, and thereon alleges, that Defendant's infringement of the '716 patent has been and continues to be willful.

35.     As a direct and proximate result of Defendant's conduct, Helferich has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. Helferich has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## COUNT III
### (Infringement of United States Patent No. 7,280,838)

36.     Helferich incorporates by reference Paragraphs 1 through 21 of this Complaint and realleges them as though fully set forth herein.

37.     Helferich is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '838 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of at least claims 9, 10, 12, 13, 15, 16, 18, 19,  20, 97-101, and 105-110 of the '838 patent .   As mentioned previously, the Patent Office has issued a Reexamination Certificate confirming patentability all of these claims in connection with the New York Times Company's *ex parte* and *inter partes* reexamination requests.

38.     Helferich is informed and believes, and thereon alleges, that J.C. Penney infringes the '838 patent in connection with at least the product offerings and services described in Paragraphs 18 and 19, above.

39.     In the alternative, Helferich is informed and believes, and thereon alleges, that Defendant has actively induced and is currently inducing the infringement of the '838 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '838 patent in violation of 35 U.S.C. § 271(c) because numerous messages of the type described in Paragraphs 18 and 19 have been, and continue to be, sent to its subscribers' mobile devices.

40.     More specifically, J.C. Penney has been on notice of its infringement of the '838 patent since at least March of 2010, and since that time Defendant has offered at least some of the product offerings and services described in Paragraphs 18 and 19, above.  Helferich is informed and believes, and thereon alleges, that if it is not Defendant that creates and causes the infringing messages to be sent as alleged in Paragraphs 18 and 19, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to the actions of third parties to create and cause such messages and content to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '838 patent.

41.     In addition, with J.C. Penney being on notice of infringement of the '838 patent since at least March of 2010, Helferich is informed and believes, and thereon alleges that Defendant's infringement of the '838 patent has been and continues to be willful.

42.     As a direct and proximate result of Defendant's conduct, Helferich has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law.

Helferich has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

### COUNT IV
### (Infringement of United States Patent No. 8,107,601)

43.     Helferich incorporates by reference Paragraphs 1 through 21 of this Complaint and realleges them as though fully set forth herein.

44.     Helferich is informed and believes, and thereon alleges, that J.C. Penney has been and is currently infringing the '601 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of claims 1, 3, 4, 9-11, 16, and 17 of the '601 patent.

45.     Helferich is informed and believes, and thereon alleges that J.C. Penney infringes the '601 patent in connection with at least the product offerings and services described in Paragraphs 18 and 19, above.

46.     In the alternative, Helferich is informed and believes, and thereon alleges, that J.C. Penney has actively induced and are currently inducing the infringement of the '601 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '601 patent in violation of 35 U.S.C. § 271(c) because numerous SMS notifications of the type described in Paragraphs 18 and 19 have been, and continue to be, sent to its subscribers' mobile devices.

47.     More specifically, J.C. Penney has been on notice of its infringement of the '601 patent since at least January 31, 2012, the issue date of the '601 patent, and since that time numerous infringing SMS messages as described in Paragraphs 18 and 19 have been, and

continue to be, sent to J.C. Penney's subscribers along with links to J.C. Penney's content. Helferich is informed and believes, and thereon alleges, that if it is not J.C. Penney causing the infringing messages to be sent as alleged in Paragraphs 18 and 19, then J.C. Penney has actively induced or contributed to, and is currently actively inducing or contributing to, the actions of third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '601 Patent.

48.     In addition, with J.C. Penney being on notice of infringement of the '601 patent since at least January 31, 2012, Helferich is informed and believes, and thereon alleges, that J.C. Penney's infringement of the '601 patent has been and continues to be willful.

49.     As a direct and proximate result of J.C. Penney's conduct, Helferich has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. Helferich has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## COUNT V
### (Infringement of United States Patent No. 8,116,741)

50.     Helferich incorporates by reference Paragraphs 1 through 21 of this Complaint and realleges them as though fully set forth herein.

51.     Helferich is informed and believes, and thereon alleges, that J.C. Penney has been and is currently infringing the '741 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of claims 1-9, 11-18, 20, 21, 23, 24, 26, and 27 of the '741 patent.

16

52.     Helferich is informed and believes, and thereon alleges that J.C. Penney infringes the '741 patent in connection with at least the product offerings and services described in Paragraphs 18 and 19, above.

53.     In the alternative, Helferich is informed and believes, and thereon alleges, that J.C. Penney has actively induced and are currently inducing the infringement of the '741 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '741 patent in violation of 35 U.S.C. § 271(c) because numerous SMS notifications of the type described in Paragraphs 18 and 19 have been, and continue to be, sent to its subscribers' mobile devices.

54.     More specifically, J.C. Penney has been on notice of its infringement of the '741 patent since at least February 14, 2012, the issue date of the '741 patent, and since that time numerous infringing SMS messages as described in Paragraphs 18 and 19 have been, and continue to be, sent to J.C. Penney's subscribers along with links to J.C. Penney's content. Helferich is informed and believes, and thereon alleges, that if it is not J.C. Penney causing the infringing messages to be sent as alleged in Paragraphs 18 and 19, then J.C. Penney has actively induced or contributed to, and is currently actively inducing or contributing to, the actions of third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '741 Patent.

55.     In addition, with J.C. Penney being on notice of infringement of the '741 patent since at least February 14, 2012, Helferich is informed and believes, and thereon alleges, that J.C. Penney's infringement of the '741 patent has been and continues to be willful.

17

56.     As a direct and proximate result of J.C. Penney's conduct, Helferich has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. Helferich has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## COUNT VI
### (Infringement of United States Patent No. 8,134,450)

57.     Helferich incorporates by reference Paragraphs 1 through 21 of this Complaint and realleges them as though fully set forth herein.

58.     Helferich is informed and believes, and thereon alleges, that J.C. Penney has been and is currently infringing the '450 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of claims 1, 3-8, 10, 13-15, 17-23, and 27-28 of the '450 patent.

59.     Helferich is informed and believes, and thereon alleges that J.C. Penney infringes the '450 patent in connection with at least the product offerings and services described in Paragraphs 18 and 19, above.

60.     In the alternative, Helferich is informed and believes, and thereon alleges, that J.C. Penney has actively induced and are currently inducing the infringement of the '450 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '450 patent in violation of 35 U.S.C. § 271(c) because numerous SMS notifications of the type described in Paragraphs 18 and 19 have been, and continue to be, sent to its subscribers' mobile devices.

61.     More specifically, J.C. Penney has been on notice of its infringement of the '450 patent since at least the issuance of the patent on March 13, 2012, and since that time numerous infringing SMS messages as described in Paragraphs 18 and 19 have been, and continue to be, sent to J.C. Penney's subscribers along with links to J.C. Penney's content.  Helferich is informed and believes, and thereon alleges, that if it is not J.C. Penney causing the infringing messages to be sent as alleged in Paragraphs 18 and 19, then J.C. Penney has actively induced or contributed to, and is currently actively inducing or contributing to, the actions of third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '450 Patent.

62.     In addition, with J.C. Penney being on notice of infringement of the '450 patent since at least March 13, 2012, Helferich is informed and believes, and thereon alleges, that J.C. Penney's infringement of the '450 patent has been and continues to be willful.

63.     As a direct and proximate result of J.C. Penney's conduct, Helferich has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. Helferich has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

WHEREFORE, for the foregoing reasons, Helferich Patent Licensing, LLC, prays for:

(a)     Judgment that Defendant has infringed, actively induced others to infringe, or contributed to the infringement by others of one or more of the claims of the '757, '716, '838, '601, '741, and '450 patents;

(b)     A permanent injunction to be issued enjoining and restraining Defendant and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors,

assigns, and those in active concert and participation with them, and each of them, from making, using, selling, offering for sale, or importing any products, systems or methods which fall within the scope of one or more of the claims of the '757, '716, '838, '601, '741, and '450 patents and from inducing or contributing to infringement of any such claims by others;

(c)  An award of damages against Defendant adequate to compensate Helferich for past infringement of one or more of the claims of the '757, '716, '838, '601, '741, and '450 patents together with interest and costs as fixed by the Court, such damages to be trebled because of the willful and deliberate character of the infringement;

(d)  Judgment that this case is "exceptional" under 35 U.S.C. § 285, and that Helferich is entitled to an award of its reasonable attorneys' fees in the prosecution of this action; and

(e)  Such other and further relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED this 13th day of March, 2012.


By:/s/ *Victoria Curtin*
Victoria Curtin (NDIL ID #010897)
Victoria Gruver Curtin, P.L.C.
14555 N. Scottsdale Rd., Ste. 160
Scottsdale, Arizona 85254
Tel.: (480) 998-3547
Fax:(480)596-7956


Steven G. Lisa (Ill. State Bar # 6187348)
Timothy Sperling (Ill. State Bar # 6283854)
Jon E. Kappes (Ill. State Bar # 6291678)
Law Offices of Steven G. Lisa, Ltd.
55 West Monroe Street, Suite 3210
Chicago, Illinois 60603
Tel. & Fax: (312) 752-4357

Gerald D. Hosier (Ill. State Bar # 7059)
Law Offices Of Gerald D. Hosier, Ltd.
P.O. Box 12354
Aspen, CO 81612
Tel: (970) 920- 3475
Off: (970) 920-3475

## **Exhibit A**

1. U.S. Patent No. 8,134,450, titled "Content Provision to Subscribers via Wireless Transmission," issued March 13, 2012.

2. U.S. Patent No. 8,116,743, titled "Systems and Methods for Downloading Information to a Mobile Device," issued February 14, 2012.

3. U.S. Patent No. 8,116,741, titled "System and Method for Delivering Information to a Transmitting and Receiving Device," issued February 14, 2012.

4. U.S. Patent No. 8,107,601, titled "Wireless Messaging System," issued January 31, 2012.

5. U.S. Patent No. 8,099,046, titled "Method for Integrating Audio and Visual Messaging

6. U.S. Patent No. 7,957,695, titled "Method for Integrating Audio And Visual Messaging;" issued June 7, 2011.

7. U.S. Patent No. 7,843,314, titled "Paging Transceivers and Methods for Selectively Retrieving Messages;" issued November 30, 2010.

8. U.S. Patent No. 7,835,757 titled "System and Method for Delivering Information to a Transmitting and Receiving Device,"  issued November 16, 2010.

9. U.S. Patent No. 7,627,305, titled "Systems and Methods for Adding Information to a Directory Stored in a Mobile Device" issued December 1, 2009.

10. U.S. Patent No. 7,499,716, titled "System and Method for Delivering Information to a Transmitting and Receiving Device" issued March 3, 2009.

11. U.S. Patent No. 7,403,787, titled "Paging Transceivers and Methods for Selectively Retrieving Messages" issued July 22, 2008.

12. U.S. Patent No. 7,376,432, titled "Paging Transceivers and Methods for Selectively Retrieving Messages" issued May 20, 2008.

13. U.S. Patent No. 7,280,838, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued October 9, 2007.

14. U.S. Patent No. 7,277,716, titled "Systems and Methods for Delivering Information to a Communication Device," issued October 2, 2007.

15. U.S. Patent No. 7,242,951, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued July 10, 2007.

16. U.S. Patent No. 7,155,241, titled "Systems and Methods for Enabling a User of a Communication Device to Manage Remote Information," issued December 26, 2006.

17. U.S. Patent No. 7,146,157, titled "Systems and Methods for Downloading Audio Information to a Mobile Device," issued December 5, 2006.

18. U.S. Patent No. 7,039,428, titled "System and Method for Delivering Information to a Transmitting and Receiving Device," issued May 2, 2006.

19. U.S. Patent No. 7,003,304, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued February 21, 2006.

20. U.S. Patent No. 6,983,138, titled "User Interface for Message Access," issued January 3, 2006.

21. U.S. Patent No. 6,826,407, titled "System and Method for Integrating Audio and Visual Messaging," issued November 30, 2004.

22. U.S. Patent No. 6,696,921, titled "Transmitting and Receiving Devices and Methods for Transmitting Data to and Receiving Data from a Communications System," issued February 24, 2004.

23. U.S. Patent No. 6,636,733, titled "Wireless Messaging Method," issued October 21, 2003.

24. U.S. Patent No. 6,462,646, titled "Transmitting and Receiving Devices and Methods for Transmitting Data to and Receiving Data from a Communication System," issued October 8, 2002.

25. U.S. Patent No. 6,459,360, titled "Networks, Communication Systems, Transmitting and Receiving Devices and Methods for Transmitting, Receiving, and Erasing Stored Information," issued October 1, 2002.

26. U.S. Patent No. 6,259,892, titled "Pager Transceivers and Methods for Performing Action on Information at Desired Times," issued July 10, 2001.

27. U.S. Patent No. 6,253,061, titled "Systems and Methods for Delivering Information to a Transmitting and Receiving Device," issued June 26, 2001.

28. U.S. Patent No. 6,233,430, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued May 15, 2001.

29. U.S. Patent No. 6,097,941, titled "User Interface for Voice Message Access," issued August 1, 2000.

30. U.S. Patent No. 6,087,956, titled "Paging Transceivers and Methods for Selectively Erasing Information," issued July 11, 2000.

31. U.S. Patent Application No. 13/210, 223, titled "Wireless Messaging Systems and Methods."

32. U.S. Patent Application No. 13/109,437, titled "System and Method for Delivering Information to a Transmitting and Receiving Device."

33. U.S. Patent Application No. 13/109,389, titled "System and Method for Delivering Information to a Transmitting and Receiving Device."

34. U.S. Patent Application No. 12/973,722, titled "Wireless Messaging Systems and Methods."

35. U.S. Patent Application No. 12/580,189, titled "System and Method for Delivering Information to a Transmitting and Receiving Device."

36. U.S. Patent Application No. 12/267,436, titled "Wireless Messaging System."

**<u>CERTIFICATE OF SERVICE</u>**

I Laura Keller certify that on March 14, 2012, I personally caused to be served, by

electronic filing, a true and correct copy of "SECOND AMENDED COMPLAINT FOR

PATENT INFRINGEMENT" to:


Daniel L. Farris
daniel.farris@hklaw.com
R. David Donoghue
david.donoghue@hklaw.com
Holland & Knight LLP
131 S. Dearborn Street, 30th Floor
Chicago, IL 60603

*/s/ Laura Keller* _____
Laura Keller