**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HELFERICH PATENT LICENSING, LLC, | ) | |
| | ) | No. 11-cv-9143 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Hon. Rebecca Pallmeyer |
| | ) | |
| J.C. PENNEY CORPORATION, INC., | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |

**ANSWER TO SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Defendant J.C. Penney Corporation, Inc. ("J.C. Penney") answers the Second Amended Complaint filed in this action by Plaintiff Helferich Patent Licensing, LLC ("Helferich") as follows:

**NATURE OF THE ACTION**

1. This is an action for patent infringement arising under the United States Patent Act, 35 U.S.C. §§ 101-376, including 35 U.S.C. § 271. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) in that this is a civil action arising out of the patent laws of the United States of America.

**ANSWER**: J.C. Penney admits that Helferich's allegations of patent infringement purport to arise under Title 35 of the United States Code, and admits that, if proper, a claim arising under Title 35 of the United States Code would arise within the Court's subject matter jurisdiction, but denies that there is any legal or factual basis for any such claims or that Helferich is entitled to any relief. The remaining allegations of Paragraph 1 contain conclusions of law to which no response is required, but to the extent one is required, J.C. Penney denies those allegations.

**JURISDICTION AND VENUE**

2. This Court has personal jurisdiction over Defendant because Defendant conducts substantial and continuous business in the State of Illinois and in this District, including

operating a store in the North Riverside Park Mall of Riverside, Illinois, and purposefully directing its infringing activities to residents of this State and District by causing infringing messages to be sent to residents of this State and District, as described more fully in the paragraphs hereafter.

**ANSWER**: J.C. Penney admits that it operates a store located in the North Riverside Park Mall of Riverside, Illinois, and admits that, for the purpose of this case only, the Court has personal jurisdiction over J.C. Penney. J.C. Penney denies that there is any legal or factual basis for any of the remaining allegations of patent infringement claimed by Helferich in Paragraph 2, and therefore denies each and every remaining allegation.

3. Venue is appropriate pursuant to 28 U.S.C. §§ 1391(c) and 1400(b) because, among other reasons, Defendant is subject to personal jurisdiction in this District, and has caused infringing messages to be sent to residents of this State and District.

**ANSWER**: J.C. Penney admits that, for the purpose of this case only, venue is proper as to J.C. Penney within this judicial district. J.C. Penney denies that it has engaged in any of the patent infringement claimed by Helferich in Paragraph 3, and denies that there is any legal or factual basis for any of the remaining allegations of patent infringement claimed by Helferich. The remaining allegations of Paragraph 3 contain conclusions of law to which no response is required, but to the extent one is required, J.C. Penney denies those allegations.

## PLAINTIFF

4. Helferich is an Illinois limited liability company with a principal place of business at 70 W. Madison St., Three First National Plaza, Suite 1400, Chicago, IL 60602. Helferich is the exclusive licensee of thirty (30) U.S. patents, six (6) pending U.S. applications, and over a dozen related foreign patents and patent applications relating to mobile wireless communication devices and the provision of media and content to such devices (collectively the "Helferich Portfolio"). The Helferich Portfolio includes the patents and applications listed in Exhibit A.

**ANSWER**: J.C. Penney lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4, and therefore denies them.

5. On November 16, 2010, the United States Patent and Trademark Office ("Patent Office") issued Patent No. 7,835,757 entitled "System and Method for Delivering Information to

a Transmitting and Receiving Device" (the '"757 patent"). Helferich is the exclusive licensee of all right, title, and interest in the '757 patent.

**ANSWER**: J.C. Penney admits that the face of U.S. Patent No. 7,835,757 identifies the title "System and Method for Delivering Information to a Transmitting and Receiving Device," and an issue date of November 16, 2010. J.C. Penney denies that the '757 Patent was legally issued, and lacks knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 5, and therefore denies each of those allegations.

6. On March 3, 2009, the Patent Office issued Patent No. 7,499,716 entitled "System and Method for Delivering Information to a Transmitting and Receiving Device" (the '"716 patent"). Helferich is the exclusive licensee of all right, title, and interest in the '716 patent.

**ANSWER**: J.C. Penney admits that the face of U.S. Patent No. 7,499,716 identifies the title "System and Method for Delivering Information to a Transmitting and Receiving Device," and an issue date of March 3, 2009. J.C. Penney denies that the '716 Patent was legally issued, and lacks knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 6, and therefore denies each of those allegations.

7. On October 9, 2007, the Patent Office issued Patent No. 7,280,838 entitled "Paging Transceivers and Methods for Selectively Retrieving Messages" (the '"838 patent"). Helferich is the exclusive licensee of all right, title, and interest in the '838 patent.

**ANSWER**: J.C. Penney admits that the face of U.S. Patent No. 7,280,838 identifies the title "Paging Transceivers and Methods for Selectively Retrieving Messages," and an issue date of October 9, 2007. J.C. Penney denies that the '838 Patent was legally issued, and lacks knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 7, and therefore denies each of those allegations.

8. On January 31, 2012, the Patent Office issued Patent No. 8,107,601 entitled "Wireless Messaging System" (the '"601 patent"). Helferich is the exclusive licensee of all right, title, and interest in the '601 patent.

**ANSWER**: J.C. Penney admits that the face of U.S. Patent No. 8,107,601 identifies the title "Wireless Messaging System," and an issue date of January 31, 2012. J.C. Penney denies that the '601 Patent was legally issued, and lacks knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 8, and therefore denies each of those allegations.

9. On February 14, 2012, Patent Office issued Patent No. 8,116,741 entitled "System and Method for Delivering Information to a Transmitting and Receiving Device" (the '"741 patent"). Helferich is the exclusive licensee of all right, title, and interest in the '741 patent.

**ANSWER**: J.C. Penney admits that the face of U.S. Patent No. 8,116,741 identifies the title "System and Method for Delivering Information to a Transmitting and Receiving Device," and an issue date of February 14, 2012. J.C. Penney denies that the '741 Patent was legally issued, and lacks knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 9, and therefore denies each of those allegations.

10. On March 13, 2012, the United States Patent and Trademark Office ("Patent Office") issued Patent No. 8,134,450 entitled "Content Provision to Subscribers via Wireless Transmission" (the '"450 patent"). Helferich is the exclusive licensee of all right, title, and interest in the '450 patent.

**ANSWER**: J.C. Penney admits that the face of U.S. Patent No. 8,134,450 identifies the title "Content Provision to Subscribers via Wireless Transmission," and an issue date of March 13, 2012. J.C. Penney denies that the '450 Patent was legally issued, and lacks knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 10, and therefore denies each of those allegations.

11. The '757, '716, '838, '601, '741 and '450 patents variously and in general relate to systems and methods used by content providers to create, store, and cause delivery of electronic messages and related content to mobile phones. The content provider stores its content (such as news, coupons, specials, media, etc.) on an internet accessible website and creates a short description of the content (of the type intended for placement into an SMS or MMS message). The content provider also selects and inserts a unique identifier of the content, such as a URL "link" in the message. The content provider uses an interface with a notification system (such as various social media sites or messaging services) to disseminate its messages to its

customers', followers' and fans' mobile phones via SMS or MMS. Thereafter, the content provider receives a request for the content identified by the link and delivers the requested content to the user's mobile phone. The patents also variously relate to providing or using: (1) shortened URLs received from a link shortening service; (2) URLs that identify dynamic content such as changing product prices, promotions, events, reviews, or comments; (3) information to inform the recipient of the identifier of the time that the content is available such "24 hour sale" information; (4) a request for a delivery confirmation of an MMS message; (5) error status information when retrieving content, and/or (6) MMS messages from which users can request--and content providers receive--commands regarding the content such as commands to delete, reply to, or forward the content.

**ANSWER**: J.C. Penney denies that the allegations in Paragraph 11 accurately recite the steps set forth in the claims of the '757, '716, '838, '601, '741 and '450 patents

12. On July 14, 2010, Helferich filed suit against the New York Times Company asserting infringement of the '757, '716, and '838 patents asserted herein. Approximately six months later (in late February 2011), the New York Times Company filed three *ex parte* reexaminations in the Patent Office, one for each of the '757, '716, and '838 patents. Shortly thereafter, and after consideration of all of the art and arguments presented in the *ex parte* reexaminations as well as three later-filed *inter partes* reexamination requests (discussed below), the Patent Office ***confirmed as patentable*** a total of 313 claims as a result of the ex parte reexaminations of the '716, '757 and '838 patents.

(a) With respect to the '716 patent, on December 13, 2011, the Patent Office issued a "Reexamination Certificate" ***concluding the reexamination*** and ***confirming as patentable*** 16 original claims, including claims 2, 16, 19, 20, 22, 23, 31, 34, 35, 38, 39, 43, 48, 49, 52, and 58; 53 claims with minor clarifying amendments, including claims 1, 3-15, 17, 18, 21, 24-30, 32, 33, 36, 37, 40-42, 44-47, 50, 51, 53-57, and 59-69; and 65 new claims, including claims 70-134.

(b) With respect to the '757 patent, on December 9, 2011, the Patent Office issued a "Notice of Intent to Issue Reexamination Certificate" and ***confirmed as patentable*** 6 original claims, including claims 1, 6, 11, 18, 19, and 20; 14 claims with minor clarifying amendments (as agreed by the Examiner), including claims 2-5, 7-10, and 12-17; and 49 new claims, including claims 21-69.

(c) With respect to the '838 patent, on February 6, 2012, the Patent Office issued a "Notice of Intent to Issue Reexamination Certificate" and ***confirmed as patentable*** 76 original claims, including claims 1-44 and 48-84; 20 claims with minor clarifying amendments, including claims 45-47 and 85-96; and 14 new claims including claims 97-110.

**ANSWER**: J.C. Penney admits that Helferich filed suit against the New York Times Company on July 14, 2010 asserting infringement of the '757, '716, and '838. J.C. Penney

denies that the United States Patent and Trademark Office ("USPTO") confirmed as patentable "a total of 313 claims as a result of the ex parte reexaminations of the ‘716, ‘757 and ‘838 patents." J.C. Penney lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in non-enumerated Paragraph 12.

(a) J.C. Penney admits that the USPTO issued a Reexamination Certificate with respect to the '716 Patent on or about December 13, 2011. J.C. Penney admits that claims 1, 15, 30, 44, and 51 of the '716 Patent were amended, and that the other claims identified in Paragraph 12(a) are dependent claims which depend from amended claims. J.C. Penney denies that the amendments to the identified claims of the ‘716 Patent were “minor clarifying amendments,” as alleged in Paragraphs 12(a). J.C. Penney admits that 65 new claims were added to the '716 Patent, but denies that any of the claims of the '716 Patent, including the new claims, are valid, patentable, and/or enforceable against J.C. Penney. J.C. Penney lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 12(a), and therefore denies each and every remaining allegation in Paragraph 12(a).

(b) J.C. Penney admits that the USPTO has issued a “Notice of Intent to Issue Reexamination Certificate,” but denies that such notice constitutes a final confirmation “as patentable" any of the claims of the '757 Patent. J.C. Penney denies that the pending amendments to certain of the claims of the ‘757 Patent are “minor clarifying amendments,” as alleged in Paragraphs 12(b). J.C. Penney admits that the Notice of Intent to Issue Reexamination Certificate indicates that 49 new claims are to be added to the '757 Patent, but denies that any of the claims of the '757 Patent, including any of the possible new claims, are valid, patentable, and/or enforceable against J.C. Penney. J.C. Penney lacks knowledge or information sufficient

to form a belief as to the truth of the remaining allegations contained in Paragraph 12(b), and therefore denies each and every remaining allegation in Paragraph 12(b).

(c) J.C. Penney admits that, as of the time of filing of Helferich's Second Amended Complaint, the USPTO had issued a "Notice of Intent to Issue Reexamination Certificate," but denies that such notice constitutes a final confirmation "as patentable" any of the claims of the '838 Patent. J.C. Penney admits that, since the filing of Helferich's Second Amended Complaint, the USPTO has issued a Reexamination Certificate with respect to the '838 Patent on or about March 21, 2011. J.C. Penney denies that 76 original claims were confirmed as patentable, as described in Paragraph 12(c). J.C. Penney denies that that the 20 claims identified in Paragraph 12(c) were amended, or that the amendments to certain of the claims of the '838 Patent are "minor clarifying amendments," as alleged in Paragraphs 12(c). J.C. Penney admits that 14 new claims were added to the '838 Patent, but denies that any of the claims of the '838 Patent, including the new claims, are valid, patentable, and/or enforceable against J.C. Penney. J.C. Penney lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 12(c), and therefore denies each and every remaining allegation in Paragraph 12(c).

13. On September 6, 2011, ***after*** the Patent Office confirmed as patentable numerous infringed claims of Helferich's patents and applications over the New York Times Company's *ex parte* reexamination requests, the New York Times Company joined with several other companies and filed a second round of reexamination requests—this time filing *inter partes* reexamination requests for each of the '757, '716, and '838 patents. On October 28, 2011, the Patent Office issued a non-appealable order ***<u>denying</u>*** the request for *inter partes* reexamination of the '838 patent in its entirety, stating repeatedly: "The references set forth in the request have been considered both alone and in combination. They fail to raise a [substantial new question] of patentability as to 9-20 of the '838 patent claims. Accordingly, the request for reexamination is denied." On November 4, 2011, the Patent Office issued non-appealable orders similarly denying the requests for *inter partes* reexaminations of the '757 and '716 patents.

**ANSWER**: J.C. Penney lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 and each of the subparts of Paragraph 13, and therefore denies each and every allegation in Paragraph 13.

14. During the same period, the Patent Office issued the '450, '741, and '601 patents after express consideration of the New York Times Company's *ex parte* and *inter partes* reexamination requests, art, and arguments. As discussed below, the '450, '741, and '601 patents include more than 50 additional claims that Helferich asserts are infringed by content providers, such as the Defendants.

**ANSWER**: J.C. Pennney denies that the '450, '741, and '601 patents were issued during the period of time described in Paragraph 13, denies that the '450, '741, and '601 patents were legally issued, denies that there is any legal or factual basis for any of the allegations of patent infringement claimed by Helferich, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 14, and therefore denies them.

15. On December 25, 2011 and January 6, 2012, the New York Times Company and its defense group began filing a third round of reexamination requests (in this case, *inter partes* requests) against Helferich Patent Nos. 7,155,241 (not asserted herein and not previously the subject of a reexamination request) and 7,499,716 (asserted herein and subject to two prior requests). On January 19, 2012, Helferich filed copies of these most recent requests (and the art and arguments discussed therein) with the *ex parte* reexamination Examiner of the '838 patent. Shortly thereafter, the '838 patent reexamination Examiner issued the Notice of Intent to Issue a Reexamination Certification for the '838 patent thereby confirming as patentable the claims of the '838 patent over the New York Times defense group's third round reexamination art and arguments. Helferich believes the New York Times defense group intends to continue filing intentionally staggered requests for reexamination to hamper this litigation indefinitely.

**ANSWER**: J.C. Penney lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15, and therefore denies them.

16. To date, over one hundred of the world's most sophisticated companies have acquired licenses to the Helferich Portfolio. Licensees include: ABInBev (Anheuser Busch), Adidas/Reebok, ADT Securities, Advanced Publications (Condé Nast), Ally Bank, Amazon, American Eagle Outfitters, American Greetings, Apple, Carnival Cruise Lines, Coinstar, Dairy Queen, Dell, DexOne, DIRECTV, Disney, eBay, Epitaph Records, Genesco, Glu Mobile, GSI Commerce (owned by eBay), Hair Cuttery, Hewlett-Packard (and Palm), H&R Block, KGB, Macy's, McDonald's, MGM Resorts International, Microsoft, Motorola Mobility, the National

Football League, the National Hockey League, Newegg.com, PGA Tour, Qdoba Restaurants, Redbox, Research in Motion, Sears Holding Corporation, Shoptext, Starbucks, Steve Madden, Taco Bell, Walgreens, Walmart, Zuffa/UFC, ValueVision (d/b/a "ShopNBC") and numerous other companies including those whose identities Helferich has agreed to keep confidential.

**ANSWER**: J.C. Penney lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16, and therefore denies them.

**DEFENDANT**

17. Defendant J.C. Penney Corporation, Inc. is a Delaware corporation with its principal place of business in Piano, Texas. J.C. Penney sells apparel, home furnishings, and other retail items at over 1,100 department stores throughout the United States and Puerto Rico, including in Illinois and in this District. In addition, J.C. Penney sells its goods through jcp.com, one of the largest apparel and home furnishing sites on the Internet, to customers in the United States including customers in Chicago, Illinois. Moreover, J.C. Penney purposefully directs its infringing activities (described below) to residents of this State and District by causing infringing messages to be sent to residents of the State of Illinois and this District.

**ANSWER**: J.C. Penney admits that it is a Delaware corporation with its principal place of business in Plano, Texas. J.C. Penney admits that it sells apparel, home furnishings, and other retail items through department stores located throughout the United States and Puerto Rico. J.C. Penney admits that it sells its goods through a website addressable as jcp.com. J.C. Penney lacks knowledge or information sufficient to form a belief as to the truth of the allegation that jcp.com is one of the "largest" apparel and home furnishing sites on the Internet, and therefore denies same. J.C. Penney admits that it has sold merchandise to customers with billing or shipping addresses in Chicago, Illinois. J.C. Penney denies that it has engaged in any of the patent infringement claimed by Helferich in Paragraph 17, and denies that there is any legal or factual basis for any of the remaining allegations of patent infringement claimed by Helferich. J.C. Penney denies each and every of the remaining allegations in Paragraph 17.

18. Within the last six (6) years, J.C. Penney has created, initiated, and caused numerous infringing messages and identified content to be sent to its customers' mobile phones via SMS or MMS messaging, including through various short-code and social media-based marketing efforts. For example, Defendant operates several social media sites, pages, and feeds (such as those maintained with Twitter, Facebook, and Google+) that are branded by J.C. Penney

and promoted by J.C. Penney on its various websites, such as www.jcp.com and www.jcpenney.com. A few of J.C. Penney's social media sites, pages, and feeds include: @jcpenney, @JCPenneyOptical, @jcpPRIDE, and @jcpportraits (as maintained with Twitter), and facebook.com/jcpenney (as maintained with Facebook). J.C. Penney drafts messages with links and submits them to these sites, pages, and feeds for dissemination to its customers, followers, and fans. J.C. Penney intentionally uses its various social media sites, pages, and feeds to create, post, and store messages and/or content intended for delivery to J.C. Penney customers, followers, and fans, with the ultimate goal of driving customers to purchase J.C. Penney merchandise. J.C. Penney also operates several short-code services, such as the "JCP Rewards" mobile service that it uses to similarly create, post, and store messages and/or content intended for delivery via SMS and/or MMS to J.C. Penney customers, followers, and fans, with the ultimate goal of driving customers to purchase J.C. Penney merchandise.

**ANSWER**: J.C. Penney admits that it uses social media websites, including Twitter, Facebook and Google+, in marketing its products, but denies that it operates any such site. J.C. Penney denies that its Twitter accounts include @jcpPRIDE, @JCPenneyOptical or @jcpportraits. J.C. Penney denies that it has engaged in any of the patent infringement claimed by Helferich in Paragraph 18, and denies that there is any legal or factual basis for any of the remaining allegations of patent infringement claimed by Helferich. J.C. Penney denies each and every of the remaining allegations in Paragraph 18.

19. By its own choice, J.C. Penney specifically ensures that the aforementioned messages include specific identifiers as described and covered by Helferich's claims (such as a URL). In addition, some of Defendant's messages include shortened URLs which rely on error status information to be used when requesting the content. Additionally, in many cases, the identified J.C. Penney content is changed between the time of the message and the time the content is requested, and/or is available for a limited time as indicated in the text of J.C. Penney's messages. As a result of the above, it is J.C. Penney—and not the social media websites or short code services—that performs each and every element of the asserted claims. Moreover, it is J.C. Penney that obtains the benefit from the infringing messages by increasing its sales, brand awareness, and good will with resulting financial gain to J.C. Penney.

**ANSWER**: J.C. Penney denies the allegations in Paragraph 19.

20. On or about March 8, 2010, Helferich gave written notice to Defendant of its infringement of the '716 and '838 patents. Thereafter, on or about January 12, 2011, Helferich advised Defendant of its infringement of the '757 patent (which issued after Helferich's initial notice to J.C. Penney). Helferich also placed J.C. Penney on notice that U.S. Patent Application Nos. 11/598,202, 12/167,971, and 12/367,358 (now the '601, '741, and '450 patents) would likely be infringed once issued as patents.

**ANSWER:** J.C. Penney admits that on or about March 8, 2010, it received a letter from Helferich in which Helferich asserted rights to numerous patents and pending patent applications and alleged that certain services offered by J.C. Penney infringed certain patents, but J.C. Penney denies that those allegations of infringement are true and denies that the letter put J.C. Penney on notice. J.C. Penney admits that on or about January 12, 2011, it received a letter from Helferich in which Helferich asserted rights to numerous patents and pending patent applications and alleged that certain services offered by J.C. Penney infringed certain patents, but J.C. Penney denies that those allegations of infringement are true and denies that the letter put J.C. Penney on notice. J.C. Penney denies each and every of the remaining allegations in Paragraph 20.

21. For the past twenty-one months, J.C. Penney has continued to infringe Helferich's patents. J.C. Penney remains unlicensed even in the face of the Patent Office both confirming existing claims and allowing new claims over express consideration of the art and arguments proffered by the New York Times Company and others now cooperating with the New York Times Company. More specifically:

(a) J.C. Penney Continued to Infringe the Patents After the Patent Office Confirmed the '757, '716, and '838 Patent Claims: As previously mentioned, the Patent Office confirmed as patentable numerous infringed claims in all three of the ex parte reexamination proceedings over express consideration of the New York Times Company's invalidity arguments, including many of the claims asserted to be infringed in this Complaint. Notwithstanding the Patent Office confirming many of the claims asserted in this Complaint, J.C. Penney remained unlicensed and continued to infringe Helferich's patents.

(b) J.C. Penney Continued to Infringe the Patents After the Patent Office Denied Outright All Three *Inter Partes* Reexaminations: The Patent Office issued non-appealable orders fully denying all three of the New York Times Company's (and the defense group's) requests for *inter partes* reexamination of the '757, '716, and '838 patents on October 28, 2011 and November 4, 2011, respectively. Notwithstanding the outright denial of all three *inter partes* reexamination requests, J.C. Penney remained unlicensed and continued to infringe Helferich's patents.

(c) J.C. Penney Continued to Infringe the Patents After the Patent Office Issued Helferich Several New Patents: As discussed above, the Patent Office has allowed and issued Helferich several new patents over express consideration of the *ex parte* and first *inter partes* reexamination requests (including all of the art and arguments proffered

by New York Times and its defense group members in those requests). Notwithstanding, J.C. Penney remained unlicensed and continued to infringe Helferich's patents.

**ANSWER**: J.C. Penney denies that it infringes, or has ever infringed, any valid claim of any of the patents-in-suit, denies that Helferich is entitled to a license, denies that it has engaged in any of the patent infringement claimed by Helferich in Paragraph 22, and denies that there is any legal or factual basis for any of the remaining allegations of patent infringement claimed by Helferich. J.C. Penney denies each and every of the remaining allegation in Paragraph 22, Paragraph 22(a), Paragraph 22(b), and Paragraph 22 (c).

**COUNT I**
**(Infringement of United States Patent No. 7,835,757)**

22. Helferich incorporates by reference Paragraphs 1 through 21 of this Complaint and realleges them as though fully set forth herein.

**ANSWER**: J.C. Penney incorporates its answers to Paragraphs 1 through 21 as if fully set forth herein.

23. Helferich is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '757 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of claims 1-13, and 15-39, 41-62 and 64-69 of the '757 patent. As mentioned previously, the Patent Office has issued a Reexamination Certificate confirming patentability of these claims in connection with the New York Times Company's *ex parte* and *inter partes* reexamination requests.

**ANSWER**: J.C. Penney denies that it is currently infringing, or has ever infringed, any valid claim of the '757 Patent under any theory. J.C. Penney further denies that any claim of the '757 patent is valid, and denies that Helferich's allegations with regard to claims 21-39, 41-62, and 64-69 of the '757 Patent contain any basis upon which relief may be granted. J.C. Penney denies that the United States Patent & Trademark Office ("USPTO") confirmed any claims of the '838 patent in connection with any *inter partes* reexamination request. J.C. Penney lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 23, and therefore denies them.

24. Helferich is informed and believes, and thereon alleges that J.C. Penney infringes the '757 patent in connection with at least the product offerings and services described in Paragraphs 18 and 19, above.

**ANSWER**: J.C. Penney incorporates its answers to Paragraphs 18 and 19 as if fully set forth herein, and denies the allegations in Paragraph 24.

25. In the alternative, Helferich is informed and believes, and thereon alleges, that Defendant has actively induced and is currently inducing the infringement of the '757 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '757 patent in violation of 35 U.S.C. § 271(c) because numerous messages of the type described in Paragraphs 18 and 19 have been, and continue to be, sent to its subscribers' mobile devices.

**ANSWER**: J.C. Penney incorporates its answers to Paragraphs 18 and 19 as if fully set forth herein, and denies the allegations in Paragraph 25.

26. More specifically, J.C. Penney has been on notice of its infringement of the '757 patent since at least January of 2011, and since that time Defendant has offered at least some of the product offerings and services described in Paragraphs 18 and 19, above. Helferich is informed and believes, and thereon alleges, that if it is not Defendant that creates and causes the infringing messages and content to be delivered as alleged in Paragraphs 18 and 19, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to the actions of third parties to create and cause such messages and content to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '757 patent.

**ANSWER**: J.C. Penney admits that in or about January of 2011 it received a letter from Helferich in which Helferich asserted certain allegations, but J.C. Penney denies that those allegations are true and denies that the letter put J.C. Penney on notice. Furthermore, Helferich's only proof of the alleged notice is a letter Helferich designated as confidential and subject to Rule 408 of the Federal Rules of Evidence, such that it is inadmissible to prove the disputed claim of notice and cannot be properly used before the Court or at trial. J.C. Penney incorporates its answers to Paragraphs 18 and 19 as if fully set forth herein, and denies each and every of the remaining allegations in Paragraph 26.

27. In addition, with J.C. Penney being on notice of infringement of the ‘757 patent since January of 2011, Helferich is informed and believes, and thereon alleges, that Defendant’s infringement of the ‘757 patent has been and continues to be willful.

**ANSWER**: Paragraph 27 contains conclusions of law to which no response is required, but to the extent one is required, J.C. Penney denies those allegations.

28. As a direct and proximate result of Defendant’s conduct, Helferich has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. Helferich has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

**ANSWER**: J.C. Penney denies the allegations in Paragraph 28.

**COUNT II**
**(Infringement of United States Patent No. 7.499,716)**

29. Helferich incorporates by reference Paragraphs 1 through 21 of this Complaint and realleges them as though fully set forth herein.

**ANSWER**: J.C. Penney incorporates its answers to Paragraphs 1 through 21 as if fully set forth herein.

30. Helferich is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the ‘716 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of at least claims 15, 17, 18, 21, 22, 23, 24, 25, 26, 27, 30, 32, 33, 36, 37, 38, 39, 40, 41, 83, 85, 86, 89, 90, 91, 92, 93, 94, 97, 99, 100, 103, 104, 105, 106, and 107 of the ‘716 patent. As mentioned previously, the Patent Office has issued a Reexamination Certificate confirming all of these claims in connection with the New York Times Company’s *ex parte* and *inter partes* reexamination requests.

**ANSWER**: J.C. Penney denies that it is currently infringing, or has ever infringed, any valid claim of the '716 Patent under any theory. J.C. Penney denies that the USPTO confirmed any claims of the ‘838 patent in connection with any *inter partes* reexamination request. J.C. Penney lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 30, and therefore denies them.

31. Helferich is informed and believes, and thereon alleges, that J.C. Penney infringes the ‘716 patent in connection with at least the product offerings and services described in Paragraphs 18 and 19, above.

**ANSWER**: J.C. Penney incorporates its answers to Paragraphs 18 and 19 as if fully set forth herein, and denies the allegations in Paragraph 31.

32. In the alternative, Helferich is informed and believes, and thereon alleges, that Defendant has actively induced and is currently inducing the infringement of the '716 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '716 patent in violation of 35 U.S.C. § 271(c) because numerous messages of the type described in Paragraphs 18 and 19 have been, and continue to be, sent to its subscribers' mobile devices.

**ANSWER**: J.C. Penney incorporates its answers to Paragraphs 18 and 19 as if fully set forth herein, denies that it is currently infringing, or has ever infringed, any valid claim of the '716 Patent under any theory, and denies any and all remaining allegations contained in Paragraph 32.

33. More specifically, J.C. Penney has been on notice of its infringement of the '716 patent since March of 2010, and since that time Defendant has offered at least some of the product offerings and services described in Paragraphs 18 and 19, above. Helferich is informed and believes, and thereon alleges, that if it is not Defendant that creates and causes the infringing messages and content to be sent as alleged in Paragraphs 18 and 19, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to the actions of third parties to create and cause such messages and content to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '716 patent.

**ANSWER**: J.C. Penney admits that in or about March of 2010 it received a letter from Helferich in which Helferich asserted certain allegations, but J.C. Penney denies that those allegations are true and denies that the letter put J.C. Penney on notice. Furthermore, Helferich's only proof of the alleged notice is a letter Helferich designated as confidential and subject to Rule 408 of the Federal Rules of Evidence, such that it is inadmissible to prove the disputed claim of notice and cannot be properly used before the Court or at trial. J.C. Penney incorporates its answers to Paragraphs 18 and 19 as if fully set forth herein, and denies each and every of the remaining allegations in Paragraph 33.

34. In addition, with J.C. Penney being on notice of infringement of the '716 patent since at least March of 2010, Helferich is informed and believes, and thereon alleges, that Defendant's infringement of the '716 patent has been and continues to be willful.

**ANSWER**: Paragraph 34 contains conclusions of law to which no response is required, but to the extent one is required, J.C. Penney denies those allegations.

35. As a direct and proximate result of Defendant's conduct, Helferich has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. Helferich has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

**ANSWER**: J.C. Penney denies the allegations in Paragraph 35.

**COUNT III**
**(Infringement of United States Patent No. 7,280,838)**

36. Helferich incorporates by reference Paragraphs 1 through 21 of this Complaint and realleges them as though fully set forth herein.

**ANSWER**: J.C. Penney incorporates its answers to Paragraphs 1 through 21 as if fully set forth herein.

37. Helferich is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '838 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of at least claims 9, 10, 12, 13, 15, 16, 18, 19, 20, 97-101, and 105-110 of the '838 patent. As mentioned previously, the Patent Office has issued a Reexamination Certificate confirming patentability all of these claims in connection with the New York Times Company's *ex parte* and *inter partes* reexamination requests.

**ANSWER**: J.C. Penney denies that it is currently infringing, or has ever infringed, any valid claim of the '838 Patent under any theory. J.C. Penney denies that the USPTO confirmed any claims of the '838 patent in connection with any *inter partes* reexamination request. J.C. Penney lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 37, and therefore denies them.

38. Helferich is informed and believes, and thereon alleges, that J.C. Penney infringes the '838 patent in connection with at least the product offerings and services described in Paragraphs 18 and 19, above.

**ANSWER**: J.C. Penney incorporates its answers to Paragraphs 18 and 19 as if fully set forth herein, and denies the allegations in Paragraph 38.

39. In the alternative, Helferich is informed and believes, and thereon alleges, that Defendant has actively induced and is currently inducing the infringement of the '838 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '838 patent in violation of 35 U.S.C. § 271(c) because numerous messages of the type described in Paragraphs 18 and 19 have been, and continue to be, sent to its subscribers' mobile devices.

**ANSWER**: J.C. Penney incorporates its answers to Paragraphs 18 and 19 as if fully set forth herein, and denies the allegations in Paragraph 39.

40. More specifically, J.C. Penney has been on notice of its infringement of the '838 patent since at least March of 2010, and since that time Defendant has offered at least some of the product offerings and services described in Paragraphs 18 and 19, above. Helferich is informed and believes, and thereon alleges, that if it is not Defendant that creates and causes the infringing messages to be sent as alleged in Paragraphs 18 and 19, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to the actions of third parties to create and cause such messages and content to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '838 patent.

**ANSWER**: J.C. Penney admits that in or about March of 2010 it received a letter from Helferich in which Helferich asserted certain allegations, but J.C. Penney denies that those allegations are true and denies that the letter put J.C. Penney on notice. Furthermore, Helferich's only proof of the alleged notice is a letter Helferich designated as confidential and subject to Rule 408 of the Federal Rules of Evidence, such that it is inadmissible to prove the disputed claim of notice and cannot be properly used before the Court or at trial. J.C. Penney incorporates its answers to Paragraphs 18 and 19 as if fully set forth herein, and denies each and every of the remaining allegations in Paragraph 40.

41. In addition, with J.C. Penney being on notice of infringement of the '838 patent since at least March of 2010, Helferich is informed and believes, and thereon alleges that Defendant's infringement of the '838 patent has been and continues to be willful.

**ANSWER**: Paragraph 41 contains conclusions of law to which no response is required, but to the extent one is required, J.C. Penney denies those allegations.

42. As a direct and proximate result of Defendant's conduct, Helferich has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law.

Helferich has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

**ANSWER**: J.C. Penney denies the allegations in Paragraph 42.

**COUNT IV**
**(Infringement of United States Patent No. 8,107,601)**

43. Helferich incorporates by reference Paragraphs 1 through 21 of this Complaint and realleges them as though fully set forth herein.

**ANSWER**: J.C. Penney incorporates its answers to Paragraphs 1 through 21 as if fully set forth herein.

44. Helferich is informed and believes, and thereon alleges, that J.C. Penney has been and is currently infringing the ‘601 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of claims 1, 3, 4, 9-11, 16, and 17 of the ‘601 patent.

**ANSWER**: J.C. Penney denies that it is currently infringing, or has ever infringed, any valid claim of the '601 Patent under any theory.

45. Helferich is informed and believes, and thereon alleges that J.C. Penney infringes the ‘601 patent in connection with at least the product offerings and services described in Paragraphs 18 and 19, above.

**ANSWER**: J.C. Penney incorporates its answers to Paragraphs 18 and 19 as if fully set forth herein, and denies the allegations in Paragraph 45.

46. In the alternative, Helferich is informed and believes, and thereon alleges, that J.C. Penney has actively induced and are currently inducing the infringement of the ‘601 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the ‘601 patent in violation of 35 U.S.C. § 271(c) because numerous SMS notifications of the type described in Paragraphs 18 and 19 have been, and continue to be, sent to its subscribers’ mobile devices.

**ANSWER**: J.C. Penney incorporates its answers to Paragraphs 18 and 19 as if fully set forth herein, denies that it is currently infringing, or has ever infringed, any valid claim of the '601 Patent under any theory, and denies any and all remaining allegations contained in Paragraph 46.

47. More specifically, J.C. Penney has been on notice of its infringement of the '601 patent since at least January 31, 2012, the issue date of the '601 patent, and since that time numerous infringing SMS messages as described in Paragraphs 18 and 19 have been, and continue to be, sent to J.C. Penney's subscribers along with links to J.C. Penney's content. Helferich is informed and believes, and thereon alleges, that if it is not J.C. Penney causing the infringing messages to be sent as alleged in Paragraphs 18 and 19, then J.C. Penney has actively induced or contributed to, and is currently actively inducing or contributing to, the actions of third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '601 Patent.

**ANSWER**: J.C. Penney denies that it was on notice of the '601 Patent at any time prior to the filing of this Second Amended Complaint. J.C. Penney incorporates its answers to Paragraphs 18 and 19 as if fully set forth herein, denies that it is currently infringing, or has ever infringed, any valid claim of the '601 Patent under any theory, and denies any and all remaining allegations contained in Paragraph 47.

48. In addition, with J.C. Penney being on notice of infringement of the '601 patent since at least January 31, 2012, Helferich is informed and believes, and thereon alleges, that J.C. Penney's infringement of the '601 patent has been and continues to be willful.

**ANSWER**: Paragraph 48 contains conclusions of law to which no response is required, but to the extent one is required, J.C. Penney denies those allegations.

49. As a direct and proximate result of J.C. Penney's conduct, Helferich has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. Helferich has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

**ANSWER**: J.C. Penney denies the allegations in Paragraph 49.

**COUNT V**
**(Infringement of United States Patent No. 8.116.741)**

50. Helferich incorporates by reference Paragraphs 1 through 21 of this Complaint and realleges them as though fully set forth herein.

**ANSWER**: J.C. Penney incorporates its answers to Paragraphs 1 through 21 as if fully set forth herein.

51. Helferich is informed and believes, and thereon alleges, that J.C. Penney has been and is currently infringing the '741 patent in violation of 35 U.S.C. § 271(a) by, among other

things, using and practicing methods that embody one or more of claims 1-9, 11-18, 20, 21, 23, 24, 26, and 27 of the ‘741 patent.

**ANSWER**: J.C. Penney denies that it is currently infringing, or has ever infringed, any valid claim of the '741 Patent under any theory.

52. Helferich is informed and believes, and thereon alleges that J.C. Penney infringes the ‘741 patent in connection with at least the product offerings and services described in Paragraphs 18 and 19, above.

**ANSWER**: J.C. Penney incorporates its answers to Paragraphs 18 and 19 as if fully set forth herein, and denies the allegations in Paragraph 52.

53. In the alternative, Helferich is informed and believes, and thereon alleges, that J.C. Penney has actively induced and are currently inducing the infringement of the ‘741 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the ‘741 patent in violation of 35 U.S.C. § 271(c) because numerous SMS notifications of the type described in Paragraphs 18 and 19 have been, and continue to be, sent to its subscribers’ mobile devices.

**ANSWER**: J.C. Penney incorporates its answers to Paragraphs 18 and 19 as if fully set forth herein, denies that it is currently infringing, or has ever infringed, any valid claim of the '741 Patent under any theory, and denies any and all remaining allegations contained in Paragraph 53.

54. More specifically, J.C. Penney has been on notice of its infringement of the ‘741 patent since at least February 14, 2012, the issue date of the ‘741 patent, and since that time numerous infringing SMS messages as described in Paragraphs 18 and 19 have been, and continue to be, sent to J.C. Penney’s subscribers along with links to J.C. Penney’s content. Helferich is informed and believes, and thereon alleges, that if it is not J.C. Penney causing the infringing messages to be sent as alleged in Paragraphs 18 and 19, then J.C. Penney has actively induced or contributed to, and is currently actively inducing or contributing to, the actions of third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the ‘741 Patent.

**ANSWER**: J.C. Penney denies that it was on notice of the '741 Patent at any time prior to the filing of this Second Amended Complaint. J.C. Penney incorporates its answers to Paragraphs 18 and 19 as if fully set forth herein, denies that it is currently infringing, or has ever

infringed, any valid claim of the '741 Patent under any theory, and denies any and all remaining allegations contained in Paragraph 54.

55. In addition, with J.C. Penney being on notice of infringement of the '741 patent since at least February 14, 2012, Helferich is informed and believes, and thereon alleges, that J.C. Penney's infringement of the '741 patent has been and continues to be willful.

**ANSWER**: Paragraph 55 contains conclusions of law to which no response is required, but to the extent one is required, J.C. Penney denies those allegations.

56. As a direct and proximate result of J.C. Penney's conduct, Helferich has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. Helferich has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

**ANSWER**: J.C. Penney denies the allegations in Paragraph 56.

**COUNT VI**
**(Infringement of United States Patent No. 8,134,450)**

57. Helferich incorporates by reference Paragraphs 1 through 21 of this Complaint and realleges them as though fully set forth herein.

**ANSWER**: J.C. Penney incorporates its answers to Paragraphs 1 through 21 as if fully set forth herein.

58. Helferich is informed and believes, and thereon alleges, that J.C. Penney has been and is currently infringing the '450 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of claims 1, 3-8, 10, 13-15, 17-23, and 27-28 of the '450 patent.

**ANSWER**: J.C. Penney denies that it is currently infringing, or has ever infringed, any valid claim of the '450 Patent under any theory.

59. Helferich is informed and believes, and thereon alleges that J.C. Penney infringes the '450 patent in connection with at least the product offerings and services described in Paragraphs 18 and 19, above.

**ANSWER**: J.C. Penney incorporates its answers to Paragraphs 18 and 19 as if fully set forth herein, and denies the allegations in Paragraph 59.

60. In the alternative, Helferich is informed and believes, and thereon alleges, that J.C. Penney has actively induced and are currently inducing the infringement of the '450 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '450 patent in violation of 35 U.S.C. § 271(c) because numerous SMS notifications of the type described in Paragraphs 18 and 19 have been, and continue to be, sent to its subscribers' mobile devices.

**ANSWER**: J.C. Penney incorporates its answers to Paragraphs 18 and 19 as if fully set forth herein, denies that it is currently infringing, or has ever infringed, any valid claim of the '450 Patent under any theory, and denies any and all remaining allegations contained in Paragraph 60.

61. More specifically, J.C. Penney has been on notice of its infringement of the '450 patent since at least the issuance of the patent on March 13, 2012, and since that time numerous infringing SMS messages as described in Paragraphs 18 and 19 have been, and continue to be, sent to J.C. Penney's subscribers along with links to J.C. Penney's content. Helferich is informed and believes, and thereon alleges, that if it is not J.C. Penney causing the infringing messages to be sent as alleged in Paragraphs 18 and 19, then J.C. Penney has actively induced or contributed to, and is currently actively inducing or contributing to, the actions of third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '450 Patent.

**ANSWER**: J.C. Penney denies that it was on notice of the '450 Patent at any time prior to the filing of this Second Amended Complaint. J.C. Penney incorporates its answers to Paragraphs 18 and 19 as if fully set forth herein, denies that it is currently infringing, or has ever infringed, any valid claim of the '450 Patent under any theory, and denies any and all remaining allegations contained in Paragraph 61.

62. In addition, with J.C. Penney being on notice of infringement of the '450 patent since at least March 13, 2012, Helferich is informed and believes, and thereon alleges, that J.C. Penney's infringement of the '450 patent has been and continues to be willful.

**ANSWER**: Paragraph 62 contains conclusions of law to which no response is required, but to the extent one is required, J.C. Penney denies those allegations.

63. As a direct and proximate result of J.C. Penney's conduct, Helferich has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. Helferich has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

**ANSWER**: J.C. Penney denies the allegations in Paragraph 63.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense (Failure to state a claim)

The Complaint, and/or certain portions of the Complaint, fails to state a claim upon which relief may be granted.

### Second Affirmative Defense (Invalidity - The '757 Patent)

Upon information and belief, the '757 Patent and each and every claim contained therein is invalid for failure to satisfy at least one of the requirements for patentability under 35 U.S.C. §§ 101, 102, 103, 112 and/or for being otherwise in violation of one or more of the sections of Parts I, II, and III of Title 35 of the United States Code. More specifically and without limitation, the '757 Patent is invalid as anticipated pursuant to 35 U.S.C. § 102 or as obvious pursuant to 35 U.S.C. § 103 based upon prior art including but not necessarily limited to systems and methods used by content providers to create, store, and cause delivery of electronic messages and related content to mobile phones, SMS and MMS technology, link shortening, dynamic content, and internet redirection technology, and other similar internet-based and/or mobile sales, marketing, and advertising systems and methods.

### Third Affirmative Defense (Invalidity - The '716 Patent)

Upon information and belief, the '716 Patent and each and every claim contained therein is invalid for failure to satisfy at least one of the requirements for patentability under 35 U.S.C. §§ 101, 102, 103, 112 and/or for being otherwise in violation of one or more of the sections of

Parts I, II, and III of Title 35 of the United States Code. More specifically and without limitation, the '716 Patent is invalid as anticipated pursuant to 35 U.S.C. § 102 or as obvious pursuant to 35 U.S.C. § 103 based upon prior art including but not necessarily limited to systems and methods used by content providers to create, store, and cause delivery of electronic messages and related content to mobile phones, SMS and MMS technology, link shortening, dynamic content, and internet redirection technology, and other similar internet-based and/or mobile sales, marketing, and advertising systems and methods.

**Fourth Affirmative Defense**
**(Invalidity - The '838 Patent)**

Upon information and belief, the '838 Patent and each and every claim contained therein is invalid for failure to satisfy at least one of the requirements for patentability under 35 U.S.C. §§ 101, 102, 103, 112 and/or for being otherwise in violation of one or more of the sections of Parts I, II, and III of Title 35 of the United States Code. More specifically and without limitation, the '838 Patent is invalid as anticipated pursuant to 35 U.S.C. § 102 or as obvious pursuant to 35 U.S.C. § 103 based upon prior art including but not necessarily limited to systems and methods used by content providers to create, store, and cause delivery of electronic messages and related content to mobile phones, SMS and MMS technology, link shortening, dynamic content, and internet redirection technology, and other similar internet-based and/or mobile sales, marketing, and advertising systems and methods.

**Fifth Affirmative Defense**
**(Invalidity - The '601 Patent)**

Upon information and belief, the '601 Patent and each and every claim contained therein is invalid for failure to satisfy at least one of the requirements for patentability under 35 U.S.C.

§§ 101, 102, 103, 112 and/or for being otherwise in violation of one or more of the sections of Parts I, II, and III of Title 35 of the United States Code. More specifically and without limitation, the '838 Patent is invalid as anticipated pursuant to 35 U.S.C. § 102 or as obvious pursuant to 35 U.S.C. § 103 based upon prior art including but not necessarily limited to systems and methods used by content providers to create, store, and cause delivery of electronic messages and related content to mobile phones, SMS and MMS technology, link shortening, dynamic content, and internet redirection technology, and other similar internet-based and/or mobile sales, marketing, and advertising systems and methods.

**Sixth Affirmative Defense**
**(Invalidity - The '741 Patent)**

Upon information and belief, the '741 Patent and each and every claim contained therein is invalid for failure to satisfy at least one of the requirements for patentability under 35 U.S.C. §§ 101, 102, 103, 112 and/or for being otherwise in violation of one or more of the sections of Parts I, II, and III of Title 35 of the United States Code. More specifically and without limitation, the '838 Patent is invalid as anticipated pursuant to 35 U.S.C. § 102 or as obvious pursuant to 35 U.S.C. § 103 based upon prior art including but not necessarily limited to systems and methods used by content providers to create, store, and cause delivery of electronic messages and related content to mobile phones, SMS and MMS technology, link shortening, dynamic content, and internet redirection technology, and other similar internet-based and/or mobile sales, marketing, and advertising systems and methods.

**Seventh Affirmative Defense**
**(Invalidity - The '450 Patent)**

Upon information and belief, the '450 Patent and each and every claim contained therein is invalid for failure to satisfy at least one of the requirements for patentability under 35 U.S.C. §§ 101, 102, 103, 112 and/or for being otherwise in violation of one or more of the sections of Parts I, II, and III of Title 35 of the United States Code. More specifically and without limitation, the '838 Patent is invalid as anticipated pursuant to 35 U.S.C. § 102 or as obvious pursuant to 35 U.S.C. § 103 based upon prior art including but not necessarily limited to systems and methods used by content providers to create, store, and cause delivery of electronic messages and related content to mobile phones, SMS and MMS technology, link shortening, dynamic content, and internet redirection technology, and other similar internet-based and/or mobile sales, marketing, and advertising systems and methods.

**Eighth Affirmative Defense**
**(Non-Infringement - The '757 Patent)**

Upon information and belief, J.C. Penney has not and does not infringe, directly or indirectly, any claim of the '757 Patent, either literally or under the doctrines of equivalents or divided infringement. Furthermore, J.C. Penney cannot be found to indirectly infringe the patents at least because there is no proof of actual knowledge of any valid claim of the '757 Patent or sufficient pre-suit notice of infringement prior to filing the instant suit.

**Ninth Affirmative Defense**
**(Non-Infringement - The '716 Patent)**

Upon information and belief, J.C. Penney has not and does not infringe, directly or indirectly, any claim of the '716 Patent, either literally or under the doctrines of equivalents or divided infringement. Furthermore, J.C. Penney cannot be found to indirectly infringe the

patents at least because there is no proof of actual knowledge of any valid claim of the '716 Patent or sufficient pre-suit notice of infringement prior to filing the instant suit.

**Tenth Affirmative Defense**
**(Non-Infringement - The '838 Patent)**

Upon information and belief, J.C. Penney has not and does not infringe, directly or indirectly, any claim of the '838 Patent, either literally or under the doctrines of equivalents or divided infringement. Furthermore, J.C. Penney cannot be found to indirectly infringe the patents at least because there is no proof of actual knowledge of any valid claim of the '838 Patent or sufficient pre-suit notice of infringement prior to filing the instant suit.

**Eleventh Affirmative Defense**
**(Non-Infringement - The '601 Patent)**

Upon information and belief, J.C. Penney has not and does not infringe, directly or indirectly, any claim of the '601 Patent, either literally or under the doctrines of equivalents or divided infringement. Furthermore, J.C. Penney cannot be found to indirectly infringe the patents at least because there is no proof of actual knowledge of any valid claim of the '601 Patent or sufficient pre-suit notice of infringement prior to filing the instant suit.

**Twelfth Affirmative Defense**
**(Non-Infringement - The '741 Patent)**

Upon information and belief, J.C. Penney has not and does not infringe, directly or indirectly, any claim of the '741 Patent, either literally or under the doctrines of equivalents or divided infringement. Furthermore, J.C. Penney cannot be found to indirectly infringe the patents at least because there is no proof of actual knowledge of any valid claim of the '741 Patent or sufficient pre-suit notice of infringement prior to filing the instant suit.

**Thirteenth Affirmative Defense**
**(Non-Infringement - The '450 Patent)**

Upon information and belief, J.C. Penney has not and does not infringe, directly or indirectly, any claim of the '450 Patent, either literally or under the doctrines of equivalents or divided infringement. Furthermore, J.C. Penney cannot be found to indirectly infringe the patents at least because there is no proof of actual knowledge of any valid claim of the '450 Patent or sufficient pre-suit notice of infringement prior to filing the instant suit.

**Fourteenth Affirmative Defense**
**(Patent Marking - The '757 Patent)**

Upon information and belief, Helferich is not entitled to any pre-suit damages for alleged infringement because of its failure to comply with 35 U.S.C. § 287 and/or its failure to otherwise give proper notice that J.C. Penney's actions allegedly infringed the '757 Patent.

**Fifteenth Affirmative Defense**
**(Patent Marking - The '716 Patent)**

Upon information and belief, Helferich is not entitled to any pre-suit damages for alleged infringement because of its failure to comply with 35 U.S.C. § 287 and/or its failure to otherwise give proper notice that J.C. Penney's actions allegedly infringed the '716 Patent.

**Sixteenth Affirmative Defense**
**(Patent Marking - The '838 Patent)**

Upon information and belief, Helferich is not entitled to any pre-suit damages for alleged infringement because of its failure to comply with 35 U.S.C. § 287 and/or its failure to otherwise give proper notice that J.C. Penney's actions allegedly infringed the '838 Patent.

**Seventeenth Affirmative Defense**
**(Patent Marking - The '601 Patent)**

Upon information and belief, Helferich is not entitled to any pre-suit damages for alleged infringement because of its failure to comply with 35 U.S.C. § 287 and/or its failure to otherwise give proper notice that J.C. Penney's actions allegedly infringed the '601 Patent.

**Eighteenth Affirmative Defense**
**(Patent Marking - The '741 Patent)**

Upon information and belief, Helferich is not entitled to any pre-suit damages for alleged infringement because of its failure to comply with 35 U.S.C. § 287 and/or its failure to otherwise give proper notice that J.C. Penney's actions allegedly infringed the '741 Patent.

**Nineteenth Affirmative Defense**
**(Patent Marking - The '450 Patent)**

Upon information and belief, Helferich is not entitled to any pre-suit damages for alleged infringement because of its failure to comply with 35 U.S.C. § 287 and/or its failure to otherwise give proper notice that J.C. Penney's actions allegedly infringed the '450 Patent.

**Twentieth Affirmative Defense**
**(Exhaustion - The '757 Patent)**

Upon information and belief, Helferich's claims against J.C. Penney for infringement of the '757 Patent are fully or partially precluded because the accused products/instrumentalities are supplied, directly or indirectly to J.C. Penney by an entity or entities having an express or implied license to the patent-in-suit and/or pursuant to the doctrine of patent exhaustion. By reason of the foregoing, Helferich is barred from asserting its claims for infringement of the '757 Patent against products used, sold, or offered for sale by J.C. Penney.

**Twenty First Affirmative Defense**
**(Exhaustion - The '716 Patent)**

Upon information and belief, Helferich's claims against J.C. Penney for infringement of the '716 Patent are fully or partially precluded because the accused products/instrumentalities are supplied, directly or indirectly to J.C. Penney by an entity or entities having an express or implied license to the patent-in-suit and/or pursuant to the doctrine of patent exhaustion. By reason of the foregoing, Helferich is barred from asserting its claims for infringement of the '716 Patent against products used, sold, or offered for sale by J.C. Penney.

**Twenty Second Affirmative Defense**
**(Exhaustion - The '838 Patent)**

Upon information and belief, Helferich's claims against J.C. Penney for infringement of the '838 Patent are fully or partially precluded because the accused products/instrumentalities are supplied, directly or indirectly to J.C. Penney by an entity or entities having an express or implied license to the patent-in-suit and/or pursuant to the doctrine of patent exhaustion. By reason of the foregoing, Helferich is barred from asserting its claims for infringement of the '838 Patent against products used, sold, or offered for sale by J.C. Penney.

**Twenty Third Affirmative Defense**
**(Exhaustion - The '601 Patent)**

Upon information and belief, Helferich's claims against J.C. Penney for infringement of the '601 Patent are fully or partially precluded because the accused products/instrumentalities are supplied, directly or indirectly to J.C. Penney by an entity or entities having an express or implied license to the patent-in-suit and/or pursuant to the doctrine of patent exhaustion. By reason of the foregoing, Helferich is barred from asserting its claims for infringement of the '601 Patent against products used, sold, or offered for sale by J.C. Penney.

**Twenty Fourth Affirmative Defense**
**(Exhaustion - The '741 Patent)**

Upon information and belief, Helferich's claims against J.C. Penney for infringement of the '741 Patent are fully or partially precluded because the accused products/instrumentalities are supplied, directly or indirectly to J.C. Penney by an entity or entities having an express or implied license to the patent-in-suit and/or pursuant to the doctrine of patent exhaustion. By reason of the foregoing, Helferich is barred from asserting its claims for infringement of the '741 Patent against products used, sold, or offered for sale by J.C. Penney.

**Twenty Fifth Affirmative Defense**
**(Exhaustion - The '450 Patent)**

Upon information and belief, Helferich's claims against J.C. Penney for infringement of the '450 Patent are fully or partially precluded because the accused products/instrumentalities are supplied, directly or indirectly to J.C. Penney by an entity or entities having an express or implied license to the patent-in-suit and/or pursuant to the doctrine of patent exhaustion. By reason of the foregoing, Helferich is barred from asserting its claims for infringement of the '450 Patent against products used, sold, or offered for sale by J.C. Penney.

**Twenty Sixth Affirmative Defense**
**(Unavailability of Injunctive Relief)**

Helferich is not entitled to injunctive relief, because any injury to it is not immediate or irreparable, Helferich would have an adequate remedy at law, the balance of hardships favors no injunction, and the public interest is best served by no injunction.

**Twenty Seventh Affirmative Defense**
**(Intervening Rights)**

J.C. Penney's intervening rights, pursuant to 35 U.S.C. § 252, preclude Helferich from any relief sought in the Complaint with respect to the '716, '757 or '838 patents and with respect to any claims of the patents in suit that may be amended as a result of any subsequent action of the USPTO.

**Twenty Eighth Affirmative Defense**
**(Other Affirmative Defenses Based on Later Discovered Evidence)**

J.C. Penney reserves all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the Patent Laws of the United States and any other defenses, at law or in equity, that may now exist or in the future be available based on discovery and further factual investigation in this case.

## COUNTERCLAIMS

For its counterclaims against Helferich, J.C. Penney alleges as follows:

### PARTIES

1. J.C. Penney Corporation, Inc. is a Delaware corporation with its principal place of business in Plano, Texas.

2. According to paragraph 4 of the Complaint, Helferich Patent Licensing, LLC ("Helferich") is an Illinois limited liability company with a principal place of business at 70 W. Madison St., Three First National Plaza, Suite 1400, Chicago, IL 60602.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of these Counterclaims under, without limitation, 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

4. Venue for these counterclaims is proper within this district under at least 28 U.S.C. § 1391.

5. This Court has personal jurisdiction over Helferich because Helferich has submitted itself to the personal jurisdiction of this Court by commencing this action.

## COUNT ONE

## DECLARATION OF NON-INFRINGEMENT OF THE '757 PATENT

6. J.C. Penney incorporates and realleges the allegations of paragraphs 1-5 of these counterclaims.

7. J.C. Penney brings this action for declaratory judgment of non-infringement of the '757 Patent under the laws of the United States, in particular, 28 U.S.C. §§ 2201 and 2202.

8. Helferich has alleged that J.C. Penney has infringed the '757 Patent, and J.C. Penney has denied these allegations.

9. Upon information and belief, J.C. Penney has not infringed, directly, contributorily, by inducement, or otherwise, literally or under the doctrines of equivalents or divided infringement, any valid and enforceable claim of the '757 Patent, and is not liable for any acts of infringement of any such claim of the '757 Patent.

10. As evidenced by Helferich's Second Amended Complaint and J.C. Penney's Answer thereto, there is an actual, substantial and continuing justiciable case or controversy between the parties regarding infringement of the '757 Patent.

11. J.C. Penney is entitled to a declaratory judgment pursuant to 289 U.S.C. §§ 2201 and 2202 that J.C. Penney does not infringe and has not infringed any valid claim of the '757 Patent.

## COUNT TWO

## DECLARATION OF NON-INFRINGEMENT OF THE '716 PATENT

12. J.C. Penney incorporates and realleges the allegations of paragraphs 1-5 of these counterclaims.

13. J.C. Penney brings this action for declaratory judgment of non-infringement of the '716 Patent under the laws of the United States, in particular, 28 U.S.C. §§ 2201 and 2202.

14. Helferich has alleged that J.C. Penney has infringed the '716 Patent, and J.C. Penney has denied these allegations.

15. Upon information and belief, J.C. Penney has not infringed, directly, contributorily, by inducement, or otherwise, literally or under the doctrines of equivalents or divided infringement, any valid and enforceable claim of the '716 Patent, and is not liable for any acts of infringement of any such claim of the '716 Patent.

16. As evidenced by Helferich's Second Amended Complaint and J.C. Penney's Answer thereto, there is an actual, substantial and continuing justiciable case or controversy between the parties regarding infringement of the '716 Patent.

17. J.C. Penney is entitled to a declaratory judgment pursuant to 289 U.S.C. §§ 2201 and 2202 that J.C. Penney does not infringe and has not infringed any valid claim of the '716 Patent.

## COUNT THREE

## DECLARATION OF NON-INFRINGEMENT OF THE '838 PATENT

18. J.C. Penney incorporates and realleges the allegations of paragraphs 1-5 of these counterclaims.

19. J.C. Penney brings this action for declaratory judgment of non-infringement of the '838 Patent under the laws of the United States, in particular, 28 U.S.C. §§ 2201 and 2202.

20. Helferich has alleged that J.C. Penney has infringed the '838 Patent, and J.C. Penney has denied these allegations.

21. Upon information and belief, J.C. Penney has not infringed, directly, contributorily, by inducement, or otherwise, literally or under the doctrines of equivalents or divided infringement, any valid and enforceable claim of the '838 Patent, and is not liable for any acts of infringement of any such claim of the '838 Patent.

22. As evidenced by Helferich's Second Amended Complaint and J.C. Penney's Answer thereto, there is an actual, substantial and continuing justiciable case or controversy between the parties regarding infringement of the '838 Patent.

23. J.C. Penney is entitled to a declaratory judgment pursuant to 289 U.S.C. §§ 2201 and 2202 that J.C. Penney does not infringe and has not infringed any valid claim of the '838 Patent.

## COUNT FOUR

## DECLARATION OF NON-INFRINGEMENT OF THE '601 PATENT

24. J.C. Penney incorporates and realleges the allegations of paragraphs 1-5 of these counterclaims.

25. J.C. Penney brings this action for declaratory judgment of non-infringement of the '601 Patent under the laws of the United States, in particular, 28 U.S.C. §§ 2201 and 2202.

26. Helferich has alleged that J.C. Penney has infringed the '601 Patent, and J.C. Penney has denied these allegations.

27. Upon information and belief, J.C. Penney has not infringed, directly, contributorily, by inducement, or otherwise, literally or under the doctrines of equivalents or divided infringement, any valid and enforceable claim of the '601 Patent, and is not liable for any acts of infringement of any such claim of the '601 Patent.

28. As evidenced by Helferich's Second Amended Complaint and J.C. Penney's Answer thereto, there is an actual, substantial and continuing justiciable case or controversy between the parties regarding infringement of the '601 Patent.

29. J.C. Penney is entitled to a declaratory judgment pursuant to 289 U.S.C. §§ 2201 and 2202 that J.C. Penney does not infringe and has not infringed any valid claim of the '601 Patent.

## COUNT FIVE

## DECLARATION OF NON-INFRINGEMENT OF THE '741 PATENT

30. J.C. Penney incorporates and realleges the allegations of paragraphs 1-5 of these counterclaims.

31. J.C. Penney brings this action for declaratory judgment of non-infringement of the '741 Patent under the laws of the United States, in particular, 28 U.S.C. §§ 2201 and 2202.

32. Helferich has alleged that J.C. Penney has infringed the '741 Patent, and J.C. Penney has denied these allegations.

33. Upon information and belief, J.C. Penney has not infringed, directly, contributorily, by inducement, or otherwise, literally or under the doctrines of equivalents or divided infringement, any valid and enforceable claim of the '741 Patent, and is not liable for any acts of infringement of any such claim of the '741 Patent.

34. As evidenced by Helferich's Second Amended Complaint and J.C. Penney's Answer thereto, there is an actual, substantial and continuing justiciable case or controversy between the parties regarding infringement of the '741 Patent.

35. J.C. Penney is entitled to a declaratory judgment pursuant to 289 U.S.C. §§ 2201 and 2202 that J.C. Penney does not infringe and has not infringed any valid claim of the '741 Patent.

## COUNT SIX

## DECLARATION OF NON-INFRINGEMENT OF THE '450 PATENT

36. J.C. Penney incorporates and realleges the allegations of paragraphs 1-5 of these counterclaims.

37. J.C. Penney brings this action for declaratory judgment of non-infringement of the '450 Patent under the laws of the United States, in particular, 28 U.S.C. §§ 2201 and 2202.

38. Helferich has alleged that J.C. Penney has infringed the '450 Patent, and J.C. Penney has denied these allegations.

39. Upon information and belief, J.C. Penney has not infringed, directly, contributorily, by inducement, or otherwise, literally or under the doctrines of equivalents or divided infringement, any valid and enforceable claim of the '450 Patent, and is not liable for any acts of infringement of any such claim of the '450 Patent.

40. As evidenced by Helferich's Second Amended Complaint and J.C. Penney's Answer thereto, there is an actual, substantial and continuing justiciable case or controversy between the parties regarding infringement of the '450 Patent.

41. J.C. Penney is entitled to a declaratory judgment pursuant to 289 U.S.C. §§ 2201 and 2202 that J.C. Penney does not infringe and has not infringed any valid claim of the '450 Patent.

**COUNT SEVEN**

**DECLARATION OF INVALIDITY OF THE '757 PATENT**

42. J.C. Penney incorporates and realleges the allegations of paragraphs 1-5 of these counterclaims.

43. J.C. Penney brings this action for declaratory judgment of invalidity of the '757 Patent under the laws of the United States, in particular, 28 U.S.C. §§ 2201 and 2202.

44. Helferich has alleged that J.C. Penney has infringed the '757 Patent, and J.C. Penney has denied these allegations.

45. As evidenced by Helferich's Complaint and J.C. Penney's Answer thereto, there is an actual, substantial and continuing justiciable case or controversy between the parties regarding whether the claims of the '757 Patent are invalid.

46. One or more of the claims of the '757 Patent are invalid for failure to comply with one or more of the statutory provisions of 35 U.S.C. §§ 101, et seq., including without limitation §§ 102, 103, and/or 112.

47. More specifically and without limitation, the '757 Patent is invalid as anticipated pursuant to 35 U.S.C. § 102 or as obvious pursuant to 35 U.S.C. § 103 based upon prior art including but not necessarily limited to systems and methods used by content providers to create,

store, and cause delivery of electronic messages and related content to mobile phones, SMS and MMS technology, link shortening, dynamic content, and internet redirection technology, and other similar internet-based and/or mobile sales, marketing, and advertising systems and methods.

48. For example, and without limitation, upon information and belief the patents-in-suit are invalid pursuant to 35 U.S.C. sections 102 and 103 based upon some or all of the prior art cited in the following *ex partes* and *inter partes* reexamination proceedings: 90/009,800, 95/001,738, 90/009,882, 95/001,739, 90/009,883, and 95/001,740. This case is only at the pleading stage, and J.C. Penney's investigation of the prior art is ongoing. J.C. Penney reserves the right to rely upon additional prior art, consistent with the Local Patent Rules of the Northern District of Illinois.

**COUNT EIGHT**

**DECLARATION OF INVALIDITY OF THE '716 PATENT**

49. J.C. Penney incorporates and realleges the allegations of paragraphs 1-5 of these counterclaims.

50. J.C. Penney brings this action for declaratory judgment of invalidity of the '716 Patent under the laws of the United States, in particular, 28 U.S.C. §§ 2201 and 2202.

51. Helferich has alleged that J.C. Penney has infringed the '716 Patent, and J.C. Penney has denied these allegations.

52. As evidenced by Helferich's Complaint and J.C. Penney's Answer thereto, there is an actual, substantial and continuing justiciable case or controversy between the parties regarding whether the claims of the '716 Patent are invalid.

53. One or more of the claims of the '716 Patent are invalid for failure to comply with one or more of the statutory provisions of 35 U.S.C. §§ 101, et seq., including without limitation §§ 102, 103, and/or 112.

54. More specifically and without limitation, the '716 Patent is invalid as anticipated pursuant to 35 U.S.C. § 102 or as obvious pursuant to 35 U.S.C. § 103 based upon prior art including but not necessarily limited to systems and methods used by content providers to create, store, and cause delivery of electronic messages and related content to mobile phones, SMS and MMS technology, link shortening, dynamic content, and internet redirection technology, and other similar internet-based and/or mobile sales, marketing, and advertising systems and methods.

55. For example, and without limitation, upon information and belief the patents-in-suit are invalid pursuant to 35 U.S.C. sections 102 and 103 based upon some or all of the prior art cited in the following *ex partes* and *inter partes* reexamination proceedings: 90/009,800, 95/001,738, 90/009,882, 95/001,739, 90/009,883, and 95/001,740. This case is only at the pleading stage, and J.C. Penney's investigation of the prior art is ongoing. J.C. Penney reserves the right to rely upon additional prior art, consistent with the Local Patent Rules of the Northern District of Illinois.

## COUNT NINE

## DECLARATION OF INVALIDITY OF THE '838 PATENT

56. J.C. Penney incorporates and realleges the allegations of paragraphs 1-5 of these counterclaims.

57. J.C. Penney brings this action for declaratory judgment of invalidity of the '838 Patent under the laws of the United States, in particular, 28 U.S.C. §§ 2201 and 2202.

58. Helferich has alleged that J.C. Penney has infringed the '838 Patent, and J.C. Penney has denied these allegations.

59. As evidenced by Helferich's Complaint and J.C. Penney's Answer thereto, there is an actual, substantial and continuing justiciable case or controversy between the parties regarding whether the claims of the '838 Patent are invalid.

60. One or more of the claims of the '838 Patent are invalid for failure to comply with one or more of the statutory provisions of 35 U.S.C. §§ 101, et seq., including without limitation §§ 102, 103, and/or 112.

61. More specifically and without limitation, the '838 Patent is invalid as anticipated pursuant to 35 U.S.C. § 102 or as obvious pursuant to 35 U.S.C. § 103 based upon prior art including but not necessarily limited to systems and methods used by content providers to create, store, and cause delivery of electronic messages and related content to mobile phones, SMS and MMS technology, link shortening, dynamic content, and internet redirection technology, and other similar internet-based and/or mobile sales, marketing, and advertising systems and methods.

62. For example, and without limitation, upon information and belief the patents-in-suit are invalid pursuant to 35 U.S.C. sections 102 and 103 based upon some or all of the prior art cited in the following *ex partes* and *inter partes* reexamination proceedings: 90/009,800, 95/001,738, 90/009,882, 95/001,739, 90/009,883, and 95/001,740. This case is only at the pleading stage, and J.C. Penney's investigation of the prior art is ongoing. J.C. Penney reserves the right to rely upon additional prior art, consistent with the Local Patent Rules of the Northern District of Illinois.

## COUNT TEN

## DECLARATION OF INVALIDITY OF THE '601 PATENT

63. J.C. Penney incorporates and realleges the allegations of paragraphs 1-5 of these counterclaims.

64. J.C. Penney brings this action for declaratory judgment of invalidity of the '601 Patent under the laws of the United States, in particular, 28 U.S.C. §§ 2201 and 2202.

65. Helferich has alleged that J.C. Penney has infringed the '601 Patent, and J.C. Penney has denied these allegations.

66. As evidenced by Helferich's Complaint and J.C. Penney's Answer thereto, there is an actual, substantial and continuing justiciable case or controversy between the parties regarding whether the claims of the '601 Patent are invalid.

67. One or more of the claims of the '601 Patent are invalid for failure to comply with one or more of the statutory provisions of 35 U.S.C. §§ 101, et seq., including without limitation §§ 102, 103, and/or 112.

68. More specifically and without limitation, the '601 Patent is invalid as anticipated pursuant to 35 U.S.C. § 102 or as obvious pursuant to 35 U.S.C. § 103 based upon prior art including but not necessarily limited to systems and methods used by content providers to create, store, and cause delivery of electronic messages and related content to mobile phones, SMS and MMS technology, link shortening, dynamic content, and internet redirection technology, and other similar internet-based and/or mobile sales, marketing, and advertising systems and methods.

69. For example, and without limitation, upon information and belief the patents-in-suit are invalid pursuant to 35 U.S.C. sections 102 and 103 based upon some or all of the prior

art cited in the following *ex partes* and *inter partes* reexamination proceedings: 90/009,800, 95/001,738, 90/009,882, 95/001,739, 90/009,883, and 95/001,740. This case is only at the pleading stage, and J.C. Penney's investigation of the prior art is ongoing. J.C. Penney reserves the right to rely upon additional prior art, consistent with the Local Patent Rules of the Northern District of Illinois.

## COUNT ELEVEN

## DECLARATION OF INVALIDITY OF THE '741 PATENT

70. J.C. Penney incorporates and realleges the allegations of paragraphs 1-5 of these counterclaims.

71. J.C. Penney brings this action for declaratory judgment of invalidity of the '741 Patent under the laws of the United States, in particular, 28 U.S.C. §§ 2201 and 2202.

72. Helferich has alleged that J.C. Penney has infringed the '741 Patent, and J.C. Penney has denied these allegations.

73. As evidenced by Helferich's Complaint and J.C. Penney's Answer thereto, there is an actual, substantial and continuing justiciable case or controversy between the parties regarding whether the claims of the '741 Patent are invalid.

74. One or more of the claims of the '741 Patent are invalid for failure to comply with one or more of the statutory provisions of 35 U.S.C. §§ 101, et seq., including without limitation §§ 102, 103, and/or 112.

75. More specifically and without limitation, the '741 Patent is invalid as anticipated pursuant to 35 U.S.C. § 102 or as obvious pursuant to 35 U.S.C. § 103 based upon prior art including but not necessarily limited to systems and methods used by content providers to create, store, and cause delivery of electronic messages and related content to mobile phones, SMS and

MMS technology, link shortening, dynamic content, and internet redirection technology, and other similar internet-based and/or mobile sales, marketing, and advertising systems and methods.

76. For example, and without limitation, upon information and belief the patents-in-suit are invalid pursuant to 35 U.S.C. sections 102 and 103 based upon some or all of the prior art cited in the following *ex partes* and *inter partes* reexamination proceedings: 90/009,800, 95/001,738, 90/009,882, 95/001,739, 90/009,883, and 95/001,740. This case is only at the pleading stage, and J.C. Penney's investigation of the prior art is ongoing. J.C. Penney reserves the right to rely upon additional prior art, consistent with the Local Patent Rules of the Northern District of Illinois.

## **COUNT TWELVE**

## **DECLARATION OF INVALIDITY OF THE '450 PATENT**

77. J.C. Penney incorporates and realleges the allegations of paragraphs 1-5 of these counterclaims.

78. J.C. Penney brings this action for declaratory judgment of invalidity of the '450 Patent under the laws of the United States, in particular, 28 U.S.C. §§ 2201 and 2202.

79. Helferich has alleged that J.C. Penney has infringed the '450 Patent, and J.C. Penney has denied these allegations.

80. As evidenced by Helferich's Complaint and J.C. Penney's Answer thereto, there is an actual, substantial and continuing justiciable case or controversy between the parties regarding whether the claims of the '450 Patent are invalid.

81. One or more of the claims of the '450 Patent are invalid for failure to comply with one or more of the statutory provisions of 35 U.S.C. §§ 101, et seq., including without limitation §§ 102, 103, and/or 112.

82. More specifically and without limitation, the '450 Patent is invalid as anticipated pursuant to 35 U.S.C. § 102 or as obvious pursuant to 35 U.S.C. § 103 based upon prior art including but not necessarily limited to systems and methods used by content providers to create, store, and cause delivery of electronic messages and related content to mobile phones, SMS and MMS technology, link shortening, dynamic content, and internet redirection technology, and other similar internet-based and/or mobile sales, marketing, and advertising systems and methods.

83. For example, and without limitation, upon information and belief the patents-in-suit are invalid pursuant to 35 U.S.C. sections 102 and 103 based upon some or all of the prior art cited in the following *ex partes* and *inter partes* reexamination proceedings: 90/009,800, 95/001,738, 90/009,882, 95/001,739, 90/009,883, and 95/001,740. This case is only at the pleading stage, and J.C. Penney's investigation of the prior art is ongoing. J.C. Penney reserves the right to rely upon additional prior art, consistent with the Local Patent Rules of the Northern District of Illinois.

**<u>COUNT THIRTEEN</u>**

**ATTORNEYS FEES AND COSTS**

84. J.C. Penney incorporates and realleges the allegations of paragraphs 1-83 of these counterclaims.

85. This case is an exceptional case pursuant to 35 U.S.C. § 285, and therefore J.C. Penney is entitled to an award of attorneys' fees and costs.

## PRAYER FOR JUDGMENT

WHEREFORE, J.C. Penney prays for the following relief:

A. Dismissal of Helferich's Complaint with prejudice and entry of judgment in favor of J.C. Penney;

B. Judgment declaring that the asserted claims of the '757 Patent have not been infringed directly, jointly, indirectly, or by equivalent by J.C. Penney;

C. Judgment declaring that the asserted claims of the '716 Patent have not been infringed directly, jointly, indirectly, or by equivalent by J.C. Penney;

D. Judgment declaring that the asserted claims of the '838 Patent have not been infringed directly, jointly, indirectly, or by equivalent by J.C. Penney;

E. Judgment declaring that the asserted claims of the '601 Patent have not been infringed directly, jointly, indirectly, or by equivalent by J.C. Penney;

F. Judgment declaring that the asserted claims of the '741 Patent have not been infringed directly, jointly, indirectly, or by equivalent by J.C. Penney;

G. Judgment declaring that the asserted claims of the '450 Patent have not been infringed directly, jointly, indirectly, or by equivalent by J.C. Penney;

H. Judgment declaring that one or more claims of the '757 Patent are invalid and/or unenforceable pursuant to one or more statutory provisions of Title 35 of the United States Code;

I. Judgment declaring that one or more claims of the '716 Patent are invalid and/or unenforceable pursuant to one or more statutory provisions of Title 35 of the United States Code;

J. Judgment declaring that one or more claims of the '838 Patent are invalid and/or unenforceable pursuant to one or more statutory provisions of Title 35 of the United States Code;

K. Judgment declaring that one or more claims of the '601 Patent are invalid and/or unenforceable pursuant to one or more statutory provisions of Title 35 of the United States Code;

L. Judgment declaring that one or more claims of the '741 Patent are invalid and/or unenforceable pursuant to one or more statutory provisions of Title 35 of the United States Code;

M. Judgment declaring that one or more claims of the '450 Patent are invalid and/or unenforceable pursuant to one or more statutory provisions of Title 35 of the United States Code;

N. A judgment that this is an exceptional case pursuant to 35 U.S.C. § 285, and an award to J.C. Penney of its costs and reasonable attorneys' fees, together with interest, including prejudgment interest thereon; and

O. Such other and further relief as may be deemed just and appropriate.

**JURY DEMAND**

J.C. Penney demands a trial by jury on all issues so triable.

Dated: March 28, 2012

Respectfully submitted,

J.C. PENNEY CORPORATION, INC.

/s/ Daniel L. Farris
R. David Donoghue
Daniel L. Farris
HOLLAND & KNIGHT LLP
131 South Dearborn Street, 30th floor
Chicago, IL 60603
Tel: (312) 263-3600
Fax: (312)578-6666
david.donoghue@hklaw.com
daniel.farris@hklaw.com

*Attorneys for Defendant J.C. Penney Corporation, Inc.*