**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HELFERICH PATENT LICENSING, LLC, | ) | |
| an Illinois Limited Liability Company, | ) | |
| | ) | No: 1:11-cv-9143 |
| Plaintiff, | ) | |
| | ) | Judge John W. Darrah |
| v. | ) | |
| | ) | Magistrate Judge Jeffrey T. Gilbert |
| J.C. PENNEY CORPORATION, INC., | ) | |
| a Delaware Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT J.C. PENNEY CORPORATION, INC.'S
MOTION FOR EXPEDITED EXHAUSTION BRIEFING**

In order to streamline and expedite these proceedings, defendant J.C. Penney Corporation, Inc. ("J.C. Penney") seeks a modified scheduling order limiting discovery to matters related to J.C. Penney's case-dispositive patent exhaustion defense and setting a briefing schedule for J.C. Penney's motion for summary judgment of patent exhaustion. J.C. Penney's proposal will allow the Court to consider a potentially case-dispositive legal issue after limited fact discovery easing the burden on both parties as well as the Court.

**BACKGROUND**

Plaintiff Helferich Patent Licensing, LLC ("Helferich") initiated this case on December 23, 2011. (Dkt. No. 1). A scheduling order was entered by Judge Pallmeyer on March 23, 2012, (Dkt. No. 32), but that order was vacated by this Court in April upon reassignment. (Dkt. No. 37). On June 28, 2012, this Court entered an Amended Scheduling Order governing discovery in this case. (Dkt. No. 50). On July 20, 2012, Helferich filed a motion seeking to modify the Amended Scheduling Order to allow for expedited claims construction. (Dkt. No. 52). That motion is currently noticed for hearing on August 22, 2012.

Prior to filing its motion for expedited claims construction, Helferich and J.C. Penney met and conferred regarding discovery and case scheduling. During that meeting, J.C. Penney proposed an expedited schedule for discovery and briefing related to its case-dispositive exhaustion defense. Helferich refused J.C. Penney's proposal, instead seeking the non-dispositive approach of expedited claims construction briefing. Unlike Helferich's proposal, which would be costly, time consuming, and would most likely have to be repeated, J.C. Penney offers a case-dispositive proposal regarding a question of law, with the need for only limited discovery.

## PATENT EXHAUSTION STANDARD

The longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented item terminates all patent rights to that item. *Quanta Computer, Inc. v. LG Elec., Inc.*, 553 U.S. 617, 625 (2008); 35 U.S.C. § 273(d). For nearly 100 years, the Supreme Court has rejected attempts by patentees to use post-sale restrictions to limit the use of their products in order to secure market control of related, unpatented items. *See, e.g., Motion Picture Patents Co. v. Universal Film Mfg. Co.,* 243 U.S. 502, 518 (1917). In 2008, the Supreme Court clarified that "the traditional bar on patent restrictions following the sale of an item applies when the item sufficiently embodies the patent—even if it does not completely practice the patent—such that its only and intended use is to be finished under the terms of the patent." *Quanta*, 553 U.S. at 628. The facts of *Quanta*, as well as the cases relied upon by the Supreme Court in its opinion, demonstrate why an early decision on J.C. Penney's patent exhaustion defense will likely conserve substantial resources of both the parties and this Court.

For example, as the Federal Circuit recently summarized:

In *Quanta*, patent holder LG licensed a portfolio of patents to Intel. Under the License Agreement, Intel could sell its own products practicing the LG patents.

2

The License Agreement did not, however, grant Intel the right to practice the patents in conjunction with non-Intel products. Quanta purchased, from Intel, products substantially embodying the LG patents and combined them with non-Intel products to practice the licensed patents.

The Supreme Court held that LG's patent rights were exhausted upon Intel's authorized sale to Quanta. … Indeed, the [patent license] agreement "authorized Intel to sell products that practiced the [asserted patents]. No conditions limited Intel's authority to sell products substantially embodying the patents. Because Intel was authorized to sell its products to Quanta, the doctrine of patent exhaustion prevented LG from further asserting its patent rights against those products purchased from Intel.

*Tessera, Inc. v. International Trade Com'n*, 646 F.3d 1357, 1369 (Fed. Cir. 2011) (internal citations omitted).

The Supreme Court's decision in *Quanta* relied on *U.S. v. Univis Lens Co.*, 316 U.S. 241, 244 (1942), in which a patentee's attempts to parse out the performance of patented methods – which constituted various steps in the manufacture of patented lenses – was held invalid and unenforceable under the doctrine of exhaustion. In short, Univis attempted first to license its bi-focal and tri-focal lens patents to a manufacturer that Univis authorized only to fuse together different lens segments to create Univis lens blanks, and then to sell those lens blanks only to Univis licensed wholesalers or retailers. *See, e.g., Quanta*, 553 U.S. at 627 (citing *Univis Lens Co.*, 316 U.S. at 244). Univis wholesalers were licensed to grind the blanks into lenses that fell within the scope of Univis' patents. Univis retailers were similarly licensed to grind the lenses to match a consumer's prescription, which also resulted in the creation of a patented lens. *Id.*

The Supreme Court "assumed that the Univis patents containing claims for finished lenses were practiced in part by the wholesalers and finishing retailers who ground the blanks into lenses, [but] held that the sale of the lens blanks [by the manufacturer] exhausted the patents on the finished lenses." *Quanta*, 553 U.S. at 627 (citing *Univis Lens Co.,* 316 U.S. at 248-49). Because the lens blanks created by the manufacturer "embodi[ed] [the] essential features of the

3

patented device and [were] without utility until ... ground and polished as the finished lens of the patent," the patents were exhausted upon a sale by the manufacturer. *Id.* at 627-28 (citing *Univis Lens Co.,* 316 U.S. at 249) (holding also that "where one has sold an uncompleted article which, because it embodies essential features of his patented invention, is within the protection of his patent, and has destined the article to be finished by the purchaser in conformity to the patent, he has sold his invention so far as it is or may be embodied in that particular article").

The *Quanta* decision is also consistent with *Ethyl Gasoline Corp. v. U.S.,* 309 U.S. 436, 446, 457-59 (1940), in which "the [Supreme] Court held that the sale of a motor fuel produced under one patent also exhausted the patent for a method of using the fuel in combustion motors." *Quanta*, 553 U.S. at 629. In *Ethyl Gasoline Corp.*:

> The patentee held patents for (1) a fluid additive increasing gasoline efficiency, (2) motor fuel produced by mixing gasoline with the patented fluid, and (3) a method of using fuel containing the patented fluid in combustion motors. The patentee sold only the fluid, but attempted to control sales of the treated fuel. The Court held that the sale of the fluid to refiners relinquished the patentee's exclusive rights to sell the treated fuel.

*Id.* at 629, n. 4 (internal citations omitted) (citing *Ethyl Gasoline Corp.*, 309 U.S. at 446, 457-59).

## ARGUMENT

Helferich's case is a classic example of patent exhaustion. Helferich alleges that its patents cover methods "to create, store, and cause delivery of electronic messages and related content to mobile phones." *See, e.g.,* Helferich's Sec. Amend. Compl., Dkt. No. 28, ¶ 11. Helferich also touts the fact that it has licensed its patents to every major cellular phone manufacturer in the world, including, for example, Apple, Motorola Mobility, Research In Motion, and others. *See, e.g.,* Dkt. No. 28, ¶ 16. In other words, Helferich has licensed its patents to cellular phone makers, allowing them to manufacture and sell devices which are

4

capable of requesting, sending, and receiving content to and from content providers (e.g., retailers like J.C. Penney), which send or have others send messages to cellular phones. Once a cellular phone manufacturer sells one of its mobile devices to a consumer, the doctrine of patent exhaustion is triggered and the consumer's use of the device to request or retrieve content on the phone is a non-infringing or exhausted downstream use.

Despite the Supreme Court's guidance to the contrary, Helferich is attempting to acquire licenses from entities at multiple tiers of the supply chain. Just as LGE attempted to stop a purchaser of a licensed Intel product from combining it with non-licensed material, Helferich is attempting to enforce its patents against the use by a purchaser of a licensed cell phone to receive "non-licensed" content. *See, e.g., Quanta*, 553 U.S. at 628. J.C. Penney will argue, for example, that Helferich's claims of infringement resulting from a consumer's use of a cellular phone to retrieve a message posted by J.C. Penney to the internet website twitter.com is essentially no different than the attempts by Ethyl Gasoline Corp. to enforce its method patents for using its fuel additive in an internal combustion engine after first licensing its patents to refiners to make and sell the fuel additive. *See, e.g., Ethyl Gasoline Corp.*, 309 U.S. at 446, 457-59.

While Helferich has indicated that it will oppose J.C. Penney's exhaustion motion, arguing that a patentee may license only certain claims of a patent, not the patent itself, to avoid the application of the doctrine of patent exhaustion, any decision on this and other similar arguments will be a question of law that can be made using minimal facts identified through limited discovery, and without the need to do extensive and complex technical briefing related to claims construction or patent validity.

Accordingly, J.C. Penney asks that this Court limit all discovery to issues related to patent exhaustion and hold all other deadlines in abeyance, until the Court decides the patent

exhaustion defense.  Helferich would still provide its LPR 2.2 initial infringement contentions on

September 7, 2012 as currently scheduled in order to understand the scope of Helferich's claims

and ensure that J.C. Penney's summary judgment motion fully address the exhaustion issues.[1]

The parties, however, could forego their respective LPR 2.3 & 2.4 obligations to provide and

respond to initial invalidity and unenforceability contentions.  And discovery would otherwise

proceed on an expedited basis only as to exhaustion issues, followed by summary judgment

briefing on the issue of patent exhaustion, as set forth below:

| Event | Deadline |
|---|---|
| Helferich to serve LPR 2.2 Initial Infringement Contentions | September 7, 2012 |
| J.C. Penney to serve LPR 2.3 Initial Non-Infringement Contentions, but not Invalidity or Unenforceability Contentions | September 28, 2012 |
| Deadline for Helferich to Serve All Licenses Agreements Covering/Relating to the Patents-In-Suit | October 1, 2012 |
| Limited Discovery Related to Patent Exhaustion Closes | January 15, 2013 |
| J.C. Penney's Motion for Summary Judgment of Exhaustion is Due | February 12, 2013 |
| Helferich's Response in Opposition to Summary Judgment of Exhaustion is Due | March 12, 2013 |
| J.C. Penney's Reply in Support of Summary Judgment of Exhaustion Due | April 2, 2013 |
| Proposed Status Hearing | April 9, 2013 at 9:30 AM |

---

[1] While J.C. Penney's LPR 2.3 initial non-infringement contentions are not strictly relevant to the exhaustion defense, J.C. Penney proposes providing them to maintain balance and fairness in the discovery process.

This schedule is not simply a speeding up of a single portion of the case, after which the parties will necessarily be required to conduct additional discovery, file summary judgment motions and hold a trial on a variety of liability and damages issues. J.C. Penney offers both parties and the Court the opportunity to resolve a single, case-dispositive legal issue at the outset of the case. To the extent that J.C. Penney's analysis of the patent exhaustion issue is correct, the issue would be case dispositive. And deciding the issue at the outset would avoid significant and unnecessary fact and expert discovery, as well as complex claims construction proceedings, all of which would later be rendered moot when the Court considered J.C. Penney's patent exhaustion motion late in the case.

### CONCLUSION

For the foregoing reasons, J.C. Penney respectfully requests that this Court enter a modified scheduling order as outlined above, limiting discovery to matters related to J.C. Penney's case-dispositive patent exhaustion defense and setting a briefing schedule for J.C. Penney's motion for summary judgment of patent exhaustion.

Dated: August 9, 2012     Respectfully submitted,

             J.C. PENNEY CORPORATION, INC.

             /s/ Daniel L. Farris
             R. David Donoghue
             Daniel L. Farris
             HOLLAND & KNIGHT LLP
             131 South Dearborn Street, 30th floor
             Chicago, IL 60603
             Tel: (312) 263-3600
             Fax: (312)578-6666
             david.donoghue@hklaw.com
             daniel.farris@hklaw.com

             *Attorneys for Defendant J.C. Penney Corporation, Inc.*