**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HELFERICH PATENT LICENSING, LLC, | ) | |
| an Illinois Limited Liability Company, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:11-cv-9143 |
| | ) | |
| | ) | Hon. John W. Darrah |
| J.C. PENNEY CORPORATION, INC., | ) | |
| a Delaware Corporation, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO EXPEDITE**
**CLAIM CONSTRUCTION**

There are no fewer than five good reasons for granting Helferich's motion to expedite the

*Markman* hearing and a trial of all common invalidity and unenforceability defenses, including

the exhaustion defense.

**1.  The Case is Well Developed and Ready for Claim Construction**.

This case is well developed as a result of five years of extensive licensing, litigation and

Patent Office proceedings, including multiple rounds of reexamination.  The New York Times

("NYT") correctly noted when it sought (and obtained) its stay of proceedings that, even if

Helferich had claims confirmed in the reexamination proceedings, the case could be thereafter

streamlined due to the Patent Office's review of Helferich's claim construction:

> Even in the unlikely event that the claims of the patents-in-suit survive the
> reexamination process unchanged – which they will not – the reexamination
> process nevertheless will streamline this litigation. For example, characterizations
> of the claims made by HPL during the reexamination process become part of the
> prosecution history, a source of intrinsic evidence that must be considered during
> claim construction. *See E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*,
> 849 F.2d 1430, 1439 (Fed. Cir. 1988). Granting a stay would allow this Court,
> when later conducting its own claim construction analysis, to benefit from HPL's

clarifications as to the scope of its claims during reexamination. *See, e.g.*, *In re Cygnus Telecomm. Tech., LLC, Patent Litig.*, 385 F. Supp. 2d 1022, 1024 (N.D. Cal. 2005) (granting a stay pending reexamination in part due to the benefits of a "richer prosecution history upon which to base necessary claim construction determinations"). Finally, a stay pending reexamination would allow the Court in later proceedings to benefit from the expertise of the PTO as brought to bear in the reexamination. *See, e.g.*, *Pass & Seymour, Inc. v. Hubbell Inc.*, 532 F. Supp. 2d 418, 436 (N.D.N.Y. 2007) ("An important factor figuring into the stay question is the desirability of drawing upon the expertise of the PTO regarding the complex areas of patentability implicated in this action… [T]he parties and the court could benefit immensely from the expertise of the PTO.").

NYT Motion to Stay Pending Reexaminations, No. 1:10-cv-04387 (Dkt. 72) at 16-17.

That is exactly what occurred. During the reexamination proceedings, Helferich submitted "Glossaries of Terms" for claim construction. In addition, Helferich submitted expert declarations confirming and supporting its glossary of construed claim terms. Contrary to JC Penney's assertions that these documents are lengthy and complex, Helferich's glossary of defined claim terms is only three pages long and Dr. Grindon's expert opinion relating to claim construction is only 17 pages in length. *See* Declaration of Mr. Kappes in Support of Motion to Expedite, Exhibits A and B, respectively, served and filed herewith. Still further, notwithstanding 13 reexamination requests totaling nearly 8,000 pages, the NYT Defense Group has identified only three "claim construction" issues. *See* Declaration of Mr. Kappes ¶ 4. As predicted by the NYT Defense Group, the case is now ready to be streamlined as proposed by Helferich. Despite JC Penney's dire predictions, there will be no problem reaching the ten term limit of LPR 4.1 on the expedited schedule proposed.

Because of the rich history here, the Local Patent Rules' "ordinary" schedule should not control. The Local Patent Rules provide for claim construction after exchange of two rounds of infringement and validity contentions, as well as extensive discovery on all issues including willfulness and damages, to ensure that the parties "had had sufficient time, via the discovery

process, to ascertain what claim terms really matter and why and can identify (as the Rules

require) which are outcome determinative." Local Patent Rules ("LPR") Preamble. That is

clearly not required in this case, which is no longer "ordinary." Helferich proposes that the

parties exchange one round of infringement and validity contentions, and take discovery focused

on the "outcome determinative" claim construction issues.

### 2.  The Case is Ready for a Trial of Common Defenses.

As with claim construction, the invalidity defenses were fully developed over the last five

years. Specifically, all six of the patents asserted herein were approved after presentation to the

Patent Office of the invalidity positions developed and provided by:

1. Apple (now a licensee);
2. Motorola (now a licensee);
3. Best Buy (now a licensee);
4. Toyota (now a licensee);
5. HP (now a licensee);
6. Palm (now a licensee);
7. NYT in its invalidity contentions, under LPR 2.3;
8. the NYT Defense Group in its first round *ex parte* reexamination requests;
9. the NYT Defense Group in its second round *inter partes* reexamination requests.

In addition, the '838 Patent was confirmed over *eight* NYT Defense Group reexamination

requests, including consideration of at least some of the NYT Defense Group's most recent third

round (*inter partes*) reexaminations. Similarly, Application No. 12/580,189 (issued as U.S.

Patent No. 8,224,294) and Application No. 12/267,436 were allowed after the Patent Office

considered *twelve of the thirteen total* NYT Defense Group reexaminations.[1]

After years of presenting scores of invalidity arguments, the NYT Defense Group's latest

round of reexaminations now relies on only four primary references, and does so almost entirely

---

[1] The issue fees were paid before the thirteenth request was filed, so it was not considered.

in obviousness arguments.[2]  Thus, as with claim construction, the invalidity defenses are also

well focused and, subject to the Court's claim construction, ready for an early resolution.[3]

### 3.  A *Markman* Hearing is the First, Necessary Step Towards a Final Resolution.

 If the Defendants have their way, Helferich and the Court will face a never-ending series

of "potentially dispositive" defenses presented serially one after another over a period of many

years.  Indeed, JC Penney's companion motion to expedite the exhaustion defense to an "early"

decision in April (the same date Helferich proposes for a joint trial of common defenses) is

nothing more than a disguised motion to stay everything except the exhaustion defense.  To be

clear, Helferich has no problem addressing *all* of the common invalidity and unenforceability

defenses next April – including exhaustion.  However, Helferich suggests that the Court do so in

an orderly and accepted manner – after claim construction.

Not only is the claim construction issue already well-developed (therefore the hearing

will be efficient), but completing the *Markman* hearing puts one of the main foundational issues

to bed with finality, and is a necessary step for resolving the invalidity and unenforceability

defenses.  "Because the claims of a patent measure the invention at issue, the claims must be

interpreted and given the same meaning for purposes of both validity and infringement

analyses."  *Sterner Lighting, Inc. v. Allied Elec. Supply, Inc.,* 431 F.2d 539, 544 (5th Cir. 1970).

---

[2] Of the 173 invalidity arguments presented, only one anticipation argument was made, based on one reference against 3 claims of the '838 patent; that reexamination request was recently denied a filing date by the Patent Office

[3] Helferich proposes that the parties conduct validity discovery after the *Markman* hearing with those defendants that remain.  However, given the significant focus provided by inordinately rich Patent Office history, Helferich has no objection to conducting validity discovery in parallel with the claim construction discovery, to enable the validity trial to proceed promptly after the claim construction ruling.

"The court must properly interpret the claims, because an improper claim construction may distort both the infringement and validity analyses." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.,* 239 F.3d 1343, 1351 (Fed. Cir. 2001).[4]

Thus, for example, in addressing the exhaustion defense, the Court will hear arguments regarding the scope of the content claims versus those claims separately licensed to the handset companies. In other words, and unlike every case cited by JC Penney, the only "claims" licensed to the handset companies were those defining separate and distinct inventions infringed ***by the handsets***. The claims at issue in this case, which claim separate and distinct inventions infringed ***by the content providers***, were expressly excluded from the "handset" licenses. No case applies exhaustion where there are distinctly different inventions in different technical fields that were in fact properly and separately licensed in those distinct fields.

Helferich submits it would only result in further delay and expense to yet again stay all proceedings to allow JC Penney to present a single defense, particularly when that defense clearly depends on the scope of the claims asserted against the content providers.

### 4. JC Penney's Cited Cases Do Not Apply to a Well-Developed Case.

Unlike the cases relied on by JC Penney in its opposition, Helferich is not proposing an interim claim construction or a mini-*Markman*. *Cf. Sofamor Danek Group, Inc. v. DePuy-Motech, Inc.*, 74 F.3d 1216, 1221 (Fed. Cir. 1996) (claim construction for preliminary injunction not binding); *Parallel Networks, LLC v. Abercrombie & Fitch*, 2011 WL 3609292 (E.D. Tex. 2011)(mini-*Markman* on three claim terms). Nor is this a case in which the facts and theories are

---

[4] JC Penney's argument that its "strong anticipation, obviousness, indefiniteness, exhaustion, divided infringement, non-infringement, and other defenses" do not require claim construction is contrary to Federal Circuit law. *See* Response at 7.

unknown, and require discovery for the parties to properly choose and present the dispositive

claim terms for construction. *See S.S. White Burs, Inc. v. Neo-Flo, Inc.*, 2003 WL 21250553

(E.D.Pa. May 2, 2003) (appropriate to require infringement charts before claim construction);

*Moore U.S.A., Inc. v. The Standard Register Co.*, 2000 WL 876884 *4 (W.D.N.Y. May 26,

2000) (delaying discovery of proposed constructions until other discovery completed); *Conopco,

Inc. v. Warner-Lambert Co.*, 2000 WL 342872 (D.N.J. Jan. 26, 2000) (requiring infringement

charts, but not specific range of "effective" material recited in claim).[5]

Rather, this case is more like *Magna Carta Holdings, LLC v. Nextgen Healthcare

Information Systems, Inc.*, 2012 WL 787505 *1 (N.D. Ill. 2012), also cited by JC Penney, in

which the court agreed to an early construction of ***only one term*** after the dispositive nature of

that phrase became apparent during reexamination proceedings. Here, given the extensive record

in the reexaminations, it is appropriate to accelerate the *Markman* hearing, concentrating on the

now well-developed and relatively few claim construction issues.[6] Following the exchange of

infringement and validity contentions, as Helferich proposes, the parties should be in a position

"to focus upon out-come determinative or otherwise significant disputes" and choose the

appropriate ten terms for construction. *See* LPR 4.1, Comment; *see also* Local Patent Rule 4-

---

[5] *SS White Burs* and *Moore* both cite *Conopco* for the proposition that courts should delay
*Markman* until after the close of discovery. Interestingly, the case relied on in *Conopco* for that
proposition actually holds that the parties need *enough* discovery to enable them to identify claim
terms for construction. *See Toter Inc. v. Visalia*, 1997 WL 715459 *3 (E.D. Cal. 1997) (in
denying motion for early *Markman*, the court "sympathizes with Plaintiff that the parties don't
yet know the terms in dispute") (*cited in Conopco*, 2000 WL 342872 at *4).

[6] JC Penney's reliance on *Thomson Consumer Electric, Inc. v. Innovatron, S.A.*, 43 F. Supp.2d 26
(D.D.C. 1999) is misplaced. In this early post-*Markman* opinion, the issue was not the timing of
the *Markman*; rather, the court was concerned that deciding claim construction in a separate
proceeding, without also determining infringement, would be an advisory opinion in violation of
the Constitution's case or controversy requirement. *Id.*, n. 2.

1(b) (N.D. Cal.) ("parties shall also jointly identify the 10 terms likely to be most significant to resolving the parties' dispute, including those terms for which construction may be case or claim dispositive"). Doing so provides the parties and the Court with "construction of outcome-determinative or otherwise significant claim terms [that] may lead to settlement or entry of summary judgment." LPR 4.1, Comment; *see also Delta Frangible Ammunition, LLC v. Sinterfire, Inc.*, 2008 WL 1847701 * 1 n.1 (W.D. Pa. 2008) (implicit goal of *Markman* was promoting settlement).

### **5. JC Penney's Motion to Expedite Exhaustion is a Disguised Motion to Stay**.

As noted above, the end result sought by JC Penney (and the other defendants) is a stay of all proceedings (including claim construction) except for those relating to one defense (exhaustion). In its motion, it proposes skipping the potentially dispositive claim construction hearing, and completing briefing of the sole defense of exhaustion in April, 2013, eight months from now. Helferich likewise suggests that the exhaustion defense can be resolved in April 2013. The difference is that Helferich believes the claim construction and validity issues are well developed, that a 1-2 day *Markman* hearing can be completed in January or February, and *all common validity and unenforceability defenses* (including exhaustion) can be resolved in April 2013. The timing is the same, but the results are drastically different.

The issue of a stay was resolved by the Court months ago. The Court left no doubt as to its reasons for not continuing a stay in these related cases:

> [E]ven after the third round of reexamination is completed, it is possible some or most claims will remain, though perhaps amended, in the litigation before this Court. ([Helferich's] Motion to Lift Stay at 10). To permit a continued stay in the New York Times case and grant stays in the Other Defendants' cases would cause undue delay and create additional expense and hardship for [Helferich]. Permitting stays in these cases would serve only to prejudice the plaintiff,

7

[Helferich], and the stays sought by the Defendants are, at best, strategic delay tactics. The Motions to Stay in the Other Defendants' cases are denied, and the Motion to Lift the Stay in the New York Times case is granted.[7]

Notwithstanding the Court's decision, the NYT Defense Group ***thereafter*** filed ***five more*** reexaminations. Defendants proved the Court correct.

Further, while JC Penney continually reminds us that it did not file the reexamination requests, it was placed on notice years ago and declined a license repeatedly while it watched the reexaminations proceed. Now, JC Penney's disguised motion to stay is yet another "strategic delay tactic" that would "serve only to prejudice plaintiff."

Helferich seeks a cost effective, prompt and final resolution of this matter. The proposed expedited Markman hearing and trial of common invalidity defenses accomplishes that goal. Helferich submits that it is time for the parties to get to work and bring this matter to a close.

RESPECTFULLY SUBMITTED this 17th day of August, 2012.

LAW OFFICES OF STEVEN G. LISA, LTD.

By: __/s/ Steven G. Lisa_____
    Steven G. Lisa
    Attorney for Plaintiff/Counterdefendant

Steven G. Lisa (Ill. State Bar # 6187348)
Timothy Sperling (Ill. State Bar # 6283854)
Jon E. Kappes (Ill. State Bar # 6291678)
Law Offices of Steven G. Lisa, Ltd.
55 West Monroe Street, Suite 3210
Chicago, Illinois 60603
Tel. & Fax: (312) 752-4357

---

[7] *See Helferich Patent Licensing, L.L.C. v. New York Times Co.*, No. 1:10-cv-04387 (Dkt. 149), 2012 WL 1813665 (N.D. Ill. 2012).

Victoria Curtin (NDIL ID #010897)
Victoria Gruver Curtin, P.L.C.
14555 N. Scottsdale Rd., Ste. 160
Scottsdale, Arizona  85254
Tel.:  (480) 998-3547

Gerald D. Hosier (Ill. State Bar # 7059)
Law Offices Of Gerald D. Hosier, Ltd.
P.O. BOX 12354
ASPEN, CO 81612
Tel: (970) 920- 3475
Off: (970) 920-3475

## **CERTIFICATE OF SERVICE**

I Laura Keller certify that on August 17, 2012, I personally caused to be served, by

CM/ECF filing, a true and correct copy of "Plaintiff's Reply in Support of Motion to Expedite

Claim Construction":


*/s/ Laura Keller*
Laura Keller